BRYAN H. HECKENLIVELY (State Bar No. 279140)
bryan.heckenlively@mto.com
SKYLAR B. GROVE (State Bar No. 310707)
skylar.grove@mto.com
MILES W. UNTERREINER (State Bar No. 347959)
miles.unterreiner@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street Twenty-Seventh Floor
San Francisco, California 94105
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Defendants The Regents of the
University of California, Sam Hawgood,
Catherine Lucey, Robert Wachter, Won Ha,
Tracey Tsugawa, and Brian Alldredge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUPA MARYA, M.D.,<br><br>                    Plaintiff,<br><br>          vs.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA; SAM HAWGOOD; CATHERINE LUCEY; ROBERT WACHTER; TRACY TSUGAWA; BRIAN ALLDREDGE; WAN HA; AND DOES 1-20,<br><br>                    Defendants. | Case No. 3:25-cv-04716-MMC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date:          January 30, 2026<br>Time:          9:00 a.m.<br>Judge:         Hon. Maxine M. Chesney<br>Courtroom:     7 |

1

# TABLE OF AUTHORITIES

2

**Page(s)**

**FEDERAL CASES**

*Abdulhadi v. Wong*,
No. 18-cv-4662, 2022 WL 842588 (N.D. Cal. Mar. 4, 2022)....................................13

*Alexander v. United States*,
509 U.S. 544 (1993) .........................................................................................................8

*Applied Underwriters, Inc. v. Lara*,
37 F.4th 579 (9th Cir. 2022).........................................................................................10

*Armstrong v. Meyers*,
964 F.2d 948 (1992) .........................................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .........................................................................................................5

*Bauer v. Sampson*,
261 F.3d 775 (9th Cir. 2001).........................................................................................14

*Bayer v. Neiman Marcus Grp., Inc.*,
861 F.3d 853 (9th Cir. 2017)...........................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................5, 17

*Burch v. City of Chubbuck*,
146 F.4th 822 (9th Cir. 2025)..................................................................................13, 18

*Chapman v. Pier 1 Imports (U.S.)*,
631 F.3d 939 (9th Cir. 2011)...........................................................................................7

*Choudry v. Regents of the Univ. of Cal.*,
No. 16-cv-5281, 2016 WL 6611067 (N.D. Cal. Nov. 9, 2016) ................................11

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ......................................................................................................9, 10

*Connick v. Myers*,
461 U.S. 138 (1983) ..................................................................................................13, 15

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018)...........................................................................................9

*Davis v. FEC,*
    554 U.S. 724 (2008) ...................................................................................................7

*Davis v. Folsom Cordova Unified Sch. Dist.,*
    674 F. App'x 715 (9th Cir. 2017)............................................................................18

*Demers v. Austin,*
    746 F.3d 402 (9th Cir. 2014)............................................................... *passim*

*Doe v. Regents of the Univ. of Cal.,*
    891 F.3d 1147 (9th Cir. 2018)................................................................................11

*Doe v. Univ. of Kentucky,*
    860 F.3d 365 (6th Cir. 2017)................................................................................11

*Espino v. Regents of the Univ. of Cal.,*
    666 F. Supp. 3d 1065 (C.D. Cal. 2023)..................................................................7

*Foley v. Univ. of Hou. Sys.,*
    355 F.3d 333 (5th Cir. 2003)................................................................................13

*Gilbertson v. Albright,*
    381 F.3d 965 (9th Cir. 2004) (en banc)...........................................................10, 11

*Gonzales v. Gorsuch,*
    688 F.2d 1263 (9th Cir. 1982)................................................................................8

*Green v. Mansour,*
    474 U.S. 64 (1985).................................................................................................8

*Hernandez v. City of Phx.,*
    43 F.4th 966 (9th Cir. 2022)................................................................. *passim*

*Holgate v. Baldwin,*
    425 F.3d 671 (9th Cir. 2005)................................................................................17

*Jensen v. Brown,*
    131 F.4th 677 (9th Cir. 2025)..........................................................................13, 14

*Jones v. Williams,*
    297 F.3d 930 (9th Cir. 2002)................................................................................17

*Karim-Panahi v. L.A. Police Dep't,*
    839 F.2d 621 (9th Cir. 1988)................................................................................17

*Kentucky v. Graham,*
    473 U.S. 159 (1985)...............................................................................................6

*Leite v. Crane Co.,*
    749 F.3d 1117 (9th Cir. 2014)............................................................................5, 9

NOTICE OF MOTION AND MOTION TO DISMISS

*Locurto v. Giuliani*,
    447 F.3d 159 (2d Cir. 2006) ................................................................. 16

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................. 7

*Mayfield v. United States*,
    599 F.3d 964 (9th Cir. 2010) ............................................................... 7

*McCarthy v. United States*,
    850 F.2d 558, 560 (9th Cir. 1988) ....................................................... 5

*O'Handley v. Weber*,
    62 F.4th 1145 (9th Cir. 2023) ............................................................. 18

*Peck v. Montoya*,
    51 F.4th 877 (9th Cir. 2022) ............................................................... 17

*Phillips v. U.S. Customs and Border Prot.*,
    74 F.4th 986 (9th Cir. 2023) ............................................................... 7

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968) ..................................................................... 12, 14

*Platt v. Moore*,
    15 F.4th 895 (9th Cir. 2021) ............................................................... 6

*Price v. Akaka*,
    928 F.2d 824 (9th Cir. 1990) ............................................................... 7

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
    754 F.3d 754 (9th Cir. 2014) ............................................................. 10

*Regents of the Univ. of Cal. v. Doe*,
    519 U.S. 425 (1997) ............................................................................. 6

*Samuels v. Mackell*,
    401 U.S. 66 (1971) ............................................................................. 10

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013) ............................................................................. 11

*Stockton v. Brown*,
    --- F.4th ---, 2025 WL 2656631 (9th Cir. Sept. 17, 2025) ............... 10, 11

*Thornton v. City of St. Helens*,
    425 F.3d 1158 (9th Cir. 2005) ........................................................... 16

*Washington v. L.A. Cnty. Sheriff's Dep't*,
    833 F.3d 1048 (9th Cir. 2016) ............................................................. 6

*Waters v. Churchill*,
  511 U.S. 661 (1994) ...................................................................................14

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) .....................................................................5

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) .......................................................................................6

*Wright v. Serv. Emps. Int'l Union Loc. 503*,
  48 F.4th 1112 (9th Cir. 2022) ......................................................................9

*Yelp Inc. v. Paxton*,
  137 F.4th 944 (9th Cir. 2025) ....................................................................10

*Younger v. Harris*,
  401 U.S. 37 (1971) ............................................................................. *passim*

STATE CASES

*Shah v. Regents of the Univ. of Cal.*,
  2015 WL 3902341 (Cal. Ct. App. June 25, 2015) ....................................11

FEDERAL STATUTES

42 U.S.C. § 1983 ................................................................................. *passim*

42 U.S.C. § 1985(3) ....................................................................................16

FEDERAL RULES

Rule 12(b)(1) ....................................................................................... *passim*

Rule 12(b)(6) ....................................................................................... *passim*

OTHER AUTHORITIES

U.S. Dep't of Educ., Off. of the Assistant Sec'y for C.R., *Dear Colleague Letter*
  (2024), https://www.ed.gov/media/document/colleague-202405-shared-
  ancestrypdf-35100.pdf..............................................................................16

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on January 30, 2026, at 9:00 a.m., Defendants will and hereby do move for an order dismissing Plaintiff's Complaint (the "Complaint").

This motion seeks dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for failure to establish jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. It is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice, and the Declarations of Bryan H. Heckenlively and Claire Grote, all pleadings and papers on file, and such other matters as may be presented to this Court.

**STATEMENT OF RELIEF SOUGHT**

Defendants seek an order pursuant to Rules 12(b)(1) and/or 12(b)(6) dismissing the Complaint and each of its causes of action for lack of subject matter jurisdiction and/or failure to state a claim for relief.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

In September 2024, Dr. Rupa Marya, then a Professor of Medicine at University of California, San Francisco ("UCSF"), asked her followers on social media how they would "address[]" the "concern" that one of the newest medical students at UCSF had "just come from Israel." Compl. ¶¶ 48–50; *see* Declaration of Bryan H. Heckenlively in Support of Request for Judicial Notice ("Heckenlively Decl."), Ex. B, at 2. According to Marya, because this student was from Israel, several UCSF medical students were concerned that he "may have been directly involved in the ongoing genocide of the Palestinian people." Compl. ¶ 48. This was not the first time that Marya had posted content that UCSF viewed as a "racist . . . conspiracy theory." *Id.* ¶ 42. In response, UCSF placed her on administrative leave and initiated a disciplinary proceeding. Marya was not a tenured professor, but UC policy still entitled her to various procedural protections, including an evidentiary hearing. After a formal investigation, Marya was dismissed from her faculty position.

These events led Marya to sue. The lawsuit does not challenge her termination, which the

Complaint inexplicably fails to mention, but instead claims that her First Amendment rights were violated by the rest of the University's response to her social media activity.  For a number of reasons, this case does not belong in federal court, and the claims Marya has asserted are technically deficient.  First, The Regents is an arm of the State of California that cannot be sued under § 1983.  Similarly, sovereign immunity bars Marya's claims for nominal damages.  And while Marya requests broad declaratory and injunctive relief, she lacks standing to seek those remedies because she no longer works at UCSF.  Alternatively, if she had standing, pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), this Court would have to abstain from adjudicating her challenge to UCSF's decision to initiate disciplinary proceedings.

Marya's Complaint is equally deficient on the merits and fails to allege a constitutional violation.  The First Amendment does not prohibit the government from disciplining a public employee for her speech when that speech threatens substantial disruption or otherwise undermines legitimate government interests.  UCSF reasonably believed Marya's statements would make students feel unwelcome and undermine patients' confidence in their care and that taking action was consistent with Department of Education guidance on UCSF's responsibilities under civil rights laws.  Marya, of course, has the right to express herself on matters of public concern.  But that guarantee is not limitless and must be balanced against UCSF's obligations to its students and patients.  Here, those obligations outweighed Marya's right to speculate about whether a UCSF student "from Israel" has "participated in genocide" and whether "Zionist doctors" can be competent clinicians.  As a result, the Complaint must be dismissed in its entirety.

## II.    BACKGROUND

The University of California system, which includes UCSF, is deeply committed to principles of academic freedom.  UC's mission is to "promote discovery and create and disseminate knowledge, to expand opportunities for all, and to educate a civil populace of the next generation of leaders."  Heckenlively Decl., Ex. F, at 1.  To further that vision, UC "strives to foster an environment" where "dissenting viewpoints are not only tolerated but encouraged."  *Id.* At the same time, UC is also devoted to ensuring that "all are given an equal opportunity to learn and explore."  *Id.*  As a result, UC's campuses do not abide "[a]cts of hatred and other intolerant

conduct." *Id.*

Marya joined the UCSF faculty in 2007. Compl. ¶ 20. The Complaint alleges that Marya's academic scholarship "focuses on how history and dynamics of power impact health through the structures of society." *Id.* She "researches, writes, and teaches about the health impacts of colonialism, racial capitalism, racism and state violence." *Id.* In addition to more traditional forms of academic writing, Marya often shares her thoughts on these topics on social media. *Id.* ¶ 26.

Marya describes her social media presence as "deeply critical of Israel state policy and Israeli government leadership." Compl. ¶ 29. After the attacks against Israel on October 7, 2023, she claims to have regularly taken issue with the "policies, actions, and political ideologies of the Israeli government" and "sp[oken] out against the genocidal campaign waged by Israel in Gaza." *Id.* ¶¶ 30–31. As a result, Marya allegedly received threats to her UCSF email, *id.* ¶ 32, and was subjected to other "hate mail, defamatory statements, and baseless accusations" by members of the public, *id.* ¶ 42. She also alleges that California State Senator Scott Wiener routinely condemned her social media posts. *Id.* ¶¶ 39, 50.

During 2024, two of Marya's social media threads, in particular, sent shockwaves through the UCSF community. In January 2024, she posted what she describes as a "thread . . . examining the racist and supremacist ideologies embedded in Zionism's project of colonization and its possible negative impacts on health outcomes." Compl. ¶ 38. The thread's opening post called for "examin[ation]" of the "presence of Zionism in US medicine" and accused "Zionist doctors" of "justifying the genocide of Palestinians." Heckenlively Decl., Ex. A, at 1. Her thread triggered a significant backlash online. Compl. ¶¶ 39–42. At least partly in response, UCSF issued a statement of its own on social media, denouncing the "tired and familiar racist conspiracy theory . . . that 'Zionist' doctors are a threat to Arab, Palestinian, South Asian, Muslim, and Black patients, as well as the US health system." Heckenlively Decl., Ex. C, at 1; *id.*, Ex. D, at 2.

Second, in September 2024, Marya shared a post on social media expressing concern— without any apparent basis—that a UCSF medical student from Israel may have "participated in the genocide of Palestinians." Heckenlively Decl., Ex. B, at 2. She alleges that, in August and

1  September 2024, she was approached by UCSF medical students who were "concerned for their

2  safety around a new classmate who told them he had just come from Israel."  Compl. ¶ 48.

3  Because Israel has mandatory military service, the students allegedly speculated that this

4  individual "may have been directly involved in the ongoing genocide of the Palestinian people."

5  *Id.*  On September 21, Marya "posted about the medical students' concern on social media" and

6  asked her followers "how this concern should be addressed."  *Id.* ¶ 50; *see* Heckenlively Decl., Ex.

7  B, at 2.

8          The next day, UCSF placed Marya on leave pending an investigation.  Compl. ¶ 51–52;

9  Declaration of Claire Grote ("Grote Decl."), Ex. J, at 1.  This was the first step in faculty

10  disciplinary proceedings, which are conducted to determine whether "good cause"—such as

11  "misconduct, unsatisfactory work performance, dereliction of duty, or violation of University

12  policy"—exists to support corrective action or dismissal.  Grote Decl., Ex. E, at 1.[1]  Several days

13  later, on October 1, 2024, UCSF's Executive Medical Board also suspended Marya's clinical

14  privileges, citing the concern that she posed a "possible imminent danger."  Compl. ¶ 54.  Marya's

15  privileges were reinstated two weeks later.  *Id.*  Marya alleges that the investigation into her

16  conduct continued "[o]ver the course of 2025."  *Id.* ¶ 57.

17          Though that is where the Complaint's allegations end, Marya's story continued.[2]  The

18  disciplinary case proceeded against her over the next several months.  Grote Decl. ¶¶ 15–22.  The

19  UCSF Vice Provost of Academic Affairs conducted a formal investigation and recommended to

20  UCSF's Chancellor that Marya be dismissed from her faculty position.  *Id.* at ¶¶ 16–18.  The

21  Chancellor adopted that recommendation and, on April 28, 2025, the Chancellor sent Marya a

22  notice of UCSF's intent to dismiss her.  *Id.* at ¶ 19; *id.*, Ex. K, at 1.  University policy gave her the

23  opportunity to challenge her dismissal, which would have entitled her to request an evidentiary

24  hearing, but Marya declined that option.  *Id.* at ¶¶ 19–20; *see id.*, Ex. E, at 4.  Her termination

25  from her faculty position took effect May 20, 2025.  *Id.* at ¶ 21; *see id.*, Ex. L, at 1.

26  _____

27  [1] This policy applied to Marya because she was a non-Senate academic appointee.

28  [2] These additional facts are relevant to Defendants' factual challenge to standing.

1    Two weeks later, on June 4, 2025, Marya filed this lawsuit.  The action names the "Board

2  of Regents of the University of California"[3] and six UCSF officials: Chancellor Sam Hawgood,

3  Executive Vice Chancellor and Provost Catherine Lucey, Chair of the Department of Medicine

4  Robert Wachter, Vice Chancellor of Communications Won Ha, Associate Vice Chancellor Tracey

5  Tsugawa, and Vice Provost of Academic Affairs Brian Alldredge.  Compl. ¶¶ 7–12.  Marya brings

6  claims for First Amendment retaliation under § 1983 and conspiracy to violate her constitutional

7  rights under § 1985.  She seeks nominal damages and declaratory and injunctive relief.  Prayer for

8  Relief ("Prayer") ¶¶ 1–4.[4]

9  **III.    LEGAL STANDARD**

10    To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

11  Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim

12  to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

13  *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

14    The same standard governs a facial motion to dismiss under Rule 12(b)(1) for failure to

15  allege facts sufficient to support standing.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir.

16  2014).  However, the Court may consider evidence outside the pleadings and need not assume the

17  truth of the complaint's allegations where a defendant makes a factual challenge to subject matter

18  jurisdiction under Rule 12(b)(1).  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  The Court

19  may consider "any evidence, such as affidavits and testimony, to resolve factual disputes

20  concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.

21  1988).

22

23  ---

[3] Although sued as "Board of Regents of the University of California," the correct name of this
24  Defendant is The Regents of the University of California—the entity that directs and operates the
UC system.  UCSF is an operating entity of The Regents.
25

[4] The day before filing this action, Marya filed a parallel lawsuit in California state court.  *See*
26  ECF No. 31 (Notice of Pendency of Other Action or Proceeding).  That litigation seeks relief
against Defendants under the California Fair Employment and Housing Act, the Free Speech
27  Clause of the California Constitution, and the Tom Bane Civil Rights Act.  *See* ECF No. 31-1 at
¶¶ 79–147 (State-Court First Amended Complaint).
28

1    IV.    **ARGUMENT**

2        A.    **The Regents Is Not a Proper Defendant.**

3        Section 1983 does not apply to The Regents.  That provision creates a cause of action

4    against "[e]very person who, under color of" state law, "subjects, or causes to be subjected, any

5    citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

6    rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.

7    Neither States nor "governmental entities that are considered 'arms of the State'" qualify as

8    "persons" within the meaning of § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71

9    (1989).  And The Regents is an arm of the State of California.  *Armstrong v. Meyers*, 964 F.2d

10   948, 949–50 (1992).  Accordingly, both of Marya's claims against it must be dismissed.

11       B.    **Marya's Claims Fail for Lack of Jurisdiction.**

12       Marya's case should be dismissed under Rule 12(b)(1).  Sovereign immunity bars her

13   claims for nominal damages.  And while the Complaint also seeks broad declaratory and

14   injunctive relief, she lacks standing to pursue those prospective remedies because she no longer

15   works at UCSF.  Further, with respect to UCSF's decision to bring faculty disciplinary

16   proceedings against Marya, even if she had standing to bring a challenge, *Younger v. Harris*, 401

17   U.S. 37, would require this Court to abstain.[5]

18       1.    **Sovereign Immunity Bars Marya's Damages Claims.**

19       Sovereign immunity insulates States from suits for money damages.  *Kentucky v. Graham*,

20   473 U.S. 159, 169 (1985).  That protection extends to entities that are arms of the State and to

21   employees of such entities who are sued in their official capacities.  *Regents of the Univ. of Cal. v.*

22   *Doe*, 519 U.S. 425, 429 (1997).  And it applies even when the complaint seeks nominal rather than

23   compensatory damages.  *Platt v. Moore*, 15 F.4th 895, 910 (9th Cir. 2021).

24       That sovereign immunity applies to all Defendants here.  The Regents is an arm of the

25   State of California.  *Armstrong*, 964 F.2d at 949–50.  And while Marya does not specify whether

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [5] Like a motion to dismiss based on sovereign immunity or lack of standing, an abstention motion
     is properly brought under Rule 12(b)(1).  *Washington v. L.A. Cnty. Sheriff's Dep't*, 833 F.3d 1048,
28   1058 (9th Cir. 2016).

she sues the named UCSF officials in their official or personal capacities, it appears from the lack of individualized allegations in the Complaint that she intended to bring official-capacity claims. *See Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990) (noting the "basis of the claims asserted" can determine in which capacity a defendant is sued). As a result, all Defendants share in The Regents' sovereign immunity, *see Espino v. Regents of the Univ. of Cal.*, 666 F. Supp. 3d 1065, 1080–81 (C.D. Cal. 2023) (chief of staff at UCLA Medical Center who was sued in official capacity enjoyed sovereign immunity), and Marya's nominal damages claims cannot proceed.

### 2.    Marya Lacks Standing to Seek Prospective Relief.

In order to bring a lawsuit, a plaintiff must establish the "irreducible constitutional minimum" of standing: injury in fact, traceability, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). She has the burden of establishing all three "for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citation modified). A past injury that establishes standing to seek damages "does not necessarily" give her "standing to seek prospective relief." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010). Instead, a plaintiff who asserts she has suffered a violation of her rights and seeks prospective relief must allege a "real and immediate threat" that she will suffer future injury, *Chapman v. Pier 1 Imports (U.S.)*, 631 F.3d 939, 946 (9th Cir. 2011), or point to "continu[ing] . . . adverse effects" from the past violation, *Phillips v. U.S. Customs and Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023).

Here, Marya seeks three types of prospective relief, but she lacks standing to pursue any of them. First, she cannot obtain an injunction barring The Regents from interfering with her medical staff privileges based on her speech. Prayer ¶ 2. The only interference she pleads in the Complaint is her summary suspension, which she acknowledges was in place for two weeks in October 2024 before her privileges were reinstated. Compl. ¶ 54. She does not allege any ongoing effects from that action, she does not make any other allegations about staff privileges and, as addressed more fully below, she no longer works at UCSF.[6]

---

[6] Notably, Marya only seeks this relief against The Regents, which is not a proper defendant. *See supra*, at p. 6.

Second, Marya does not have standing to obtain an order prohibiting Defendants from publishing comments about her.  Prayer ¶ 3.  She does not allege any current effort by Defendants to speak about her or a future intent to do so.  And the requested remedy would prohibit Defendants from speaking about Marya in terms that are neutral, or even favorable.  It is entirely unclear why remarks of that sort would harm her.  Accordingly, even if Marya had pleaded that Defendants intended to publish comments in the future, she would still lack standing to obtain such an overly broad injunction.[7]

Third, Marya lacks standing to seek a declaration that her "constitutional rights have been violated."  Prayer ¶ 1.  A declaratory judgment that "merely adjudicat[es] past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction."  *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017); *accord Green v. Mansour*, 474 U.S. 64, 73 (1985).  But a declaration about past alleged violations is precisely what Marya requests, because she has established only past harms (at best).

The injuries alleged in the Complaint have ended.  Indeed, the allegations are almost entirely backward-looking.  Marya pleads that she received hate mail and threats from members of the public in the Fall of 2023, January 2024, and October 2024.  Compl. ¶¶ 31–32, 39, 56.  But she does not assert that she continues to receive such messages (and, in any case, these messages were not caused by Defendants).  She alleges she was investigated for "violating the Faculty Code of Conduct in June 2024," which resulted in an August 2024 report, but she does not claim that investigation remains open.  *Id.* ¶ 46.  Marya also pleads that the UCSF Executive Medical Board suspended her clinical privileges in October 2024.  *Id.* ¶ 54.  But she notes her privileges were

---

[7] Marya also lacks standing to pursue an order barring Defendants from publishing certain commentary about her because any such relief would itself violate the First Amendment.  When a court "is unable to grant the relief" a plaintiff seeks because it lacks the "power" to do so, the court cannot redress the plaintiff's injuries.  *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982).  That is the case here.  In asking this Court to enjoin any and all comments Defendants might make about her in the future, except those based on her "clinical competence," Prayer ¶ 3, Marya seeks an unconstitutional content-based prior restraint.  *See Alexander v. United States*, 509 U.S. 544, 550 (1993) ("[C]ourt orders that actually forbid speech activities . . . are classic examples of prior restraints.").

1    "reinstated" just two weeks later.  *Id.*

2        The Complaint alleges only one tangible ongoing injury at the time of filing: that Marya

3    was subject to a faculty disciplinary proceeding.  Marya pleads that UCSF "placed [her] on leave"

4    in September 2024 pending an investigation, which continued "[o]ver the course of 2025."

5    Compl. ¶¶ 51–52, 57.  However, the accompanying declaration and exhibits reveal that, by the

6    time Marya filed the Complaint in June 2025, that proceeding had ended.[8]  Between September

7    2024 and May 2025, UCSF conducted a formal investigation and determined it had cause to

8    remove Marya from her faculty position.  Grote Decl. ¶¶ 15–21.  This resulted in her dismissal on

9    May 21, 2025, such that she is no longer a member of the UCSF faculty.  *Id.* ¶ 21; *id.*, Ex. L, at 1.

10   In short, her administrative leave and the associated disciplinary proceeding are over; they are not

11   ongoing harms.

12       The Complaint's allegation that UCSF's "retaliatory actions" have a "chilling effect,"

13   Compl. ¶ 66, does not cure the problem.  A claimed chilling effect cannot be a cognizable injury if

14   the consequences the plaintiff fears are "too speculative to confer standing."  *Wright v. Serv.*

15   *Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1120 (9th Cir. 2022) (citation modified).  That is the

16   case here because Marya is no longer a UCSF employee.

17       Marya pleads that, "to this day," she suffers from "psychological and emotional suffering,"

18   Compl. ¶ 56, but that does not qualify as an ongoing injury either.  "The emotional consequences

19   of a prior act simply are not a sufficient basis" for prospective relief "absent a real and immediate

20   threat of future injury."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983).

21       Marya's dismissal from UCSF also means the harms she has allegedly suffered are not

22   likely to recur.  The Complaint's core allegation is that Defendants have penalized her in her

23   employment because of her protected speech.  Defendants necessarily will not take similar actions

24   in the future, because Marya no longer works at UCSF.  She therefore falls short of establishing

25   any "likelihood" that she "will again be wronged in a similar way."  *Davidson v. Kimberly-Clark*

26

27   ---

[8] Defendants can contest the Complaint's allegations because they bring a factual challenge to
28   Marya's standing.  *See Leite*, 749 F.3d at 1121.

1  *Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Lyons*, 461 U.S. at 102).  Accordingly, because

2  Marya fails to establish either present or future harm, her demand for a declaration that her rights

3  were violated fails for lack of standing, and her requests for prospective relief must be dismissed.

### 3.    This Court Must Abstain from Marya's Challenge to Her Disciplinary Proceedings.

6            In the alternative, if Marya could somehow show she had standing to challenge her

7  disciplinary proceedings, that would just mean that *Younger v. Harris*, 401 U.S. 37, would prevent

8  this Court from considering her challenge.  *Younger* requires a federal court to abstain from

9  issuing relief that "would have the practical effect of enjoining" pending state proceedings.

10  *Stockton v. Brown*, --- F.4th ---, 2025 WL 2656631, at *7 (9th Cir. Sept. 17, 2025).  It applies to

11  state proceedings that: (1) "are ongoing," (2) "are quasi-criminal enforcement actions,"

12  (3) "implicate an important state interest," and (4) "allow litigants to raise federal challenges."

13  *Yelp Inc. v. Paxton*, 137 F.4th 944, 950 (9th Cir. 2025).[9]  "If these threshold elements are met,"

14  abstention is generally required, absent a handful of narrow exceptions.  *ReadyLink Healthcare,*

15  *Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014).

16            If this Court concludes Marya has standing to challenge her disciplinary proceedings, all

17  four threshold criteria are satisfied here.  First, UCSF's faculty disciplinary proceeding

18  indisputably began before Marya filed her federal complaint, which is the "critical date" for

19  abstention purposes.  *Gilbertson v. Albright*, 381 F.3d 965, 969 n.4 (9th Cir. 2004) (en banc); *see*

20  Grote Decl. ¶¶ 15–22 (describing course of proceedings).  And if Marya has standing to seek

21  prospective relief on the basis of a potential future injury from the proceedings, then they

22  necessarily have not ended.  In short, if Marya has standing to challenge her faculty disciplinary

23  proceedings, then *Younger* requires this Court to abstain in favor of those proceedings.

24            Second, UCSF's disciplinary proceedings are the sort of "quasi-criminal state enforcement

25  action[]" that falls under *Younger*.  *Yelp*, 137 F.4th at 950.  The "quintessential feature" of such an

26  action is that it is initiated "to sanction the federal plaintiff for some wrongful act."  *Applied*

---

27  [9] *Younger* concerned litigation to enjoin a state criminal prosecution, but its principles also apply
28  to actions seeking declaratory relief.  *Samuels v. Mackell*, 401 U.S. 66, 69 (1971).

1    *Underwriters, Inc. v. Lara*, 37 F.4th 579, 589 (9th Cir. 2022) (quoting *Sprint Commc'ns, Inc. v.*

2    *Jacobs*, 571 U.S. 69, 79 (2013)).  UCSF disciplinary proceedings are intended to do exactly that;

3    the process is designed to determine whether there is "good cause"—such as "misconduct" or

4    "dereliction of duty"—to impose disciplinary consequences.  Grote Decl., Ex. E, at 1.  It is

5    therefore no surprise that federal courts have repeatedly found that university disciplinary

6    proceedings, including those of the University of California, are the sort of state judicial

7    proceeding that trigger *Younger*.  *See, e.g.*, *Doe v. Univ. of Kentucky*, 860 F.3d 365, 371 (6th Cir.

8    2017); *Choudry v. Regents of the Univ. of Cal.*, No. 16-cv-5281, 2016 WL 6611067, at *3–4 (N.D.

9    Cal. Nov. 9, 2016) (collecting cases).

10           Third, UCSF's disciplinary proceedings implicate an important state interest.  *Gilbertson*,

11    381 F.3d at 977 (disciplinary proceedings are "the type of proceeding that does implicate an

12    important state interest").  California has every reason to be concerned with "the smooth

13    functioning of its state university system" and "establishing a fair, transparent, and just"

14    mechanism for adjudicating discipline issues.  *Choudry*, 2016 WL 6611067, at *5.  Those interests

15    are particularly heightened in the context of medical education, which "implicate[s] the important

16    state interest of ensuring quality health care."  *Stockton*, 2025 WL 2656631, at *6.

17           Fourth, UCSF's disciplinary process provides a path to judicial review of constitutional

18    claims.  *See Stockton*, 2025 WL 2656631, at *6.  A party who is dissatisfied with the result can file

19    a petition for a writ of administrative mandate—on constitutional grounds, if she so chooses—in

20    California court.  *See Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1154–55 (9th Cir. 2018);

21    *see also, e.g.*, *Shah v. Regents of the Univ. of Cal.*, 2015 WL 3902341, at *4–5 (Cal. Ct. App. June

22    25, 2015) (reviewing non-Senate academic appointee's challenge to decision not to reappoint him

23    via writ petition).

24           Finally, no extraordinary circumstance exists warranting intervention.  Although *Younger*

25    abstention is not warranted in cases of "bad faith" or "harassment," *Stockton*, 2025 WL 2656631,

26    at *7, the proceedings against Marya do not fit that description.  The Ninth Circuit has been clear

27    that "a mere allegation of . . . unconstitutionality is not a get-out-of-abstention free card."  *Id.*

28

NOTICE OF MOTION AND MOTION TO DISMISS

**C.    Marya Fails to State a Claim.**

In addition to threshold problems requiring dismissal of Marya's claims, the Complaint must be dismissed in its entirety under Rule 12(b)(6) because Marya fails to state a claim for First Amendment retaliation or conspiracy.

**1.    Marya Fails to Plead Retaliation.**

The State has significant leeway to regulate the speech of public employees in its capacity as an employer. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Accordingly, when a public employee brings a claim for First Amendment retaliation, a special, five-step inquiry governs the analysis. Courts must ask "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Hernandez v. City of Phx.*, 43 F.4th 966, 976 (9th Cir. 2022). And when the plaintiff teaches at a college or university, there is also a sixth step. A court must also ask whether her "speech related to scholarship or teaching." *Demers v. Austin*, 746 F.3d 402, 406 (9th Cir. 2014).

The first, second, fourth, and sixth steps of the inquiry determine whether the employee's speech is protected and, if so, whether the State is permitted to regulate it anyway. *Hernandez*, 43 F.4th at 976. For a public university professor such as Marya to establish that her speech implicates the First Amendment and is "entitled to constitutional protection," she must show that it (1) involved a matter of public concern and (2) either fell outside her job duties or was related to scholarship or teaching. *Id.*; *see Demers*, 746 F.3d at 406. If she makes that showing, the University can still defeat her claim by establishing that it "had an adequate justification for punishing [her] for [her] speech." *Hernandez*, 43 F.4th at 976.

Marya's allegations about all but two of the social media threads are far too vague to plausibly plead that the First Amendment protected her speech. And even as to those two threads, UCSF's response was justified.

NOTICE OF MOTION AND MOTION TO DISMISS

1

            *(a)     Almost All of Marya's Allegations About Her Speech Are Vague.*

2

        To sufficiently allege that her speech is entitled to protection, Marya must precisely

3

identify the speech at issue for each alleged retaliatory action.  Whether speech involves a matter

4

of public concern is heavily dependent on the "content, form, and context" of the statement.

5

*Connick v. Myers*, 461 U.S. 138, 147–48 (1983).  It is not enough to know the topic; the actual

6

statement itself is critical.  *See id.* at 148 (speech about "discipline and morale in the workplace"

7

could just as well address an "agency's efficient performance of its duties" as "one employee's

8

dissatisfaction").  Similarly, whether an employee spoke pursuant to her job duties is "practical"

9

and "fact-intensive" and requires careful evaluation of the "subject matter of the communication."

10

*Burch v. City of Chubbuck*, 146 F.4th 822, 834 (9th Cir. 2025).  As the Ninth Circuit has

11

recognized, "[n]ot all speech made by a higher education employee relates to scholarship or

12

teaching." *Jensen v. Brown*, 131 F.4th 677, 689 (9th Cir. 2025).  As a result, a plaintiff who bring

13

a First Amendment retaliation claim "is required to be specific as to when her statement or

14

statements were made, to whom they were made, whether they were oral or written, and the

15

content of those statements."  *Foley v. Univ. of Hou. Sys.*, 355 F.3d 333, 342 (5th Cir. 2003);

16

*Abdulhadi v. Wong*, No. 18-cv-4662, 2022 WL 842588, at *7 (N.D. Cal. Mar. 4, 2022); *see also*

17

*Demers*, 746 F.3d at 413–14 (a "brief description[]" of publication is insufficient to determine

18

whether speech "could conceivably have prompted any adverse reaction").

19

        The Complaint repeatedly falls short of pleading protected speech.  Marya claims that

20

"[a]ll of [her] social media posts and other statements" are protected by the First Amendment,

21

Compl. ¶ 62, but then describes that speech in ways that are fatally nonspecific.  *See, e.g.*, *id.* ¶ 25

22

("Sometimes she uses X to share humor.  But more often, she uses it to share unique ideas and to

23

provoke thought.")  Even where the Complaint includes some context about the subject matter, it

24

is insufficiently detailed.  For example, Marya generally describes "posting content on social

25

media" about the "impact of racism and colonization on health outcomes" based on her "expertise

26

as a physician, public health expert, and scholar." *Id.* ¶ 31.  Without more, it is impossible to tell

27

whether those statements were pursuant to her official job duties—especially when she pleads

28

elsewhere that her academic scholarship "focuses on how history and dynamics of power impact

1   health through the structures of society." *Id.* ¶ 18.

2       The Complaint describes only two social media threads with any real specificity.  The first

3   is Marya's January 2024 thread, which questioned the "presence of Zionism in US medicine" and

4   accused "Zionist doctors" of "justifying the genocide of Palestinians."  Heckenlively Decl., Ex. A,

5   at 1; *see* Compl. ¶ 38.  The second is the post in which Marya asked her followers for input about

6   how to address the fact that one of UCSF's newest medical students was from Israel.

7   Heckenlively Decl., Ex. B, at 2; Compl. ¶ 48.  Yet, even if the Complaint alleges that these two

8   social media threads potentially fell within the ambit of protected speech, as discussed below,

9   UCSF was nonetheless justified in disciplining Marya for those comments.

10                  *(b)      UCSF's Response to Marya's Speech Was Justified.*

11      The Complaint's allegations conclusively establish that UCSF's "interest in the effective

12  and efficient fulfillment of its responsibilities to the public," *Bauer v. Sampson*, 261 F.3d 775, 785

13  (9th Cir. 2001), outweighs Marya's right to publicly suggest that "Zionist doctors" and a UCSF

14  "student from Israel" are responsible for "justifying" and "participat[ing] in . . . genocide,"

15  Heckenlively Decl., Ex. A, at 1; *id.*, Ex. B, at 2.  Accordingly, she has no First Amendment

16  claim.[10]

17      UCSF has important and legitimate interests that can justify employee discipline.  For

18  example, courts have recognized that the State has a "strong interest" in regulating speech that

19  "impairs close working relationships among co-workers," "interferes with the effective

20  functioning of [its'] operations," "undermines the employer's mission," or compromises its

21  "relationship of trust and confidence with the communities [it] serve[s]."  *Hernandez*, 43 F.4th at

22  976, 981.  The Supreme Court has also "given substantial weight" to an employer's "reasonable

23  predictions of disruption," even when the danger the employer fears could be characterized as

24  "mostly speculative."  *Waters v. Churchill*, 511 U.S. 661, 673 (1994).  Further, in the context of an

---

26  [10] Although this test, known as *Pickering* balancing, often "cannot be performed on a 12(b)(6)
    motion," it is appropriate when the "balance can only come out one way on the averments
27  pleaded."  *Jensen*, 131 F.4th at 691.  Because it is "evident" from Marya's complaint that UCSF's
28  interest outweighed hers, *id.*, dismissal on this ground is warranted.

1    "employing academic institution," the Ninth Circuit has cautioned that courts "should hesitate

2    before concluding that [they] know better than the institution itself." *Demers*, 746 F.3d at 413.

3        The balancing inquiry also depends on the "nature of the employee's expression."

4    *Connick*, 461 U.S. at 150. "[L]ow value" speech—such as statements that the employer perceives

5    to reflect "hostility toward racial or religious minorities"—is entitled to little weight. *Hernandez,*

6    43 F.4th at 978–79.

7        Here, the allegations of the Complaint establish that UCSF had weighty and legitimate

8    interests when it disciplined Marya based on concerns about the damaging effects of her January

9    2024 thread about "Zionist doctors," which promoted "'racist' and 'antisemitic' 'conspiracy

10   theor[ies].'" Compl. ¶ 42; Heckenlively Decl., Ex. A, at 1. As UCSF made clear in its subsequent

11   statement, Marya's statements undermined UCSF's mission and commitment to "ser[ve] every

12   individual regardless of race, ethnicity, religion, political view, gender and sexual identity."

13   Heckenlively Decl., Ex. C, at 1; *id.*, Ex. D, at 3. Marya's subsequent September 2024 post

14   suggesting UCSF students were "concerned" about another student because he was "from Israel"

15   only compounded the problem. Compl. ¶ 50; Heckenlively Decl., Ex. B, at 2. UCSF feared that

16   such statements made Marya's continued affiliation with the University a source of "possible

17   imminent danger." Compl. ¶ 54. Of course, these posts would cause the institution to question

18   her ability to work with medical students and engage with all members of the UCSF community.

19       UCSF had ample grounds for concern. Marya's Complaint acknowledges clashes at

20   Columbia University between Israeli military veterans and pro-Palestinian students, Compl. ¶ 49,

21   such that it was reasonable for UCSF to anticipate that a professor's speculation that a student had

22   engaged in genocide based solely on his country of origin might contribute to similar unrest or

23   physical conflict. And UCSF knew from experience that Marya's posts had a real capacity to

24   provoke vitriol and disruption. Prior statements had unleased a "maelstrom of hate mail" more

25   than once. *Id.* ¶¶ 32, 42. UCSF was justified in fearing her January 2024 and September 2024

26   posts would exacerbate the problem—as they ultimately did. *Id.* ¶¶ 42, 56. And, allowing a

27   professor to publicly demean a student based on national origin and question the presence of

28   "Zionist doctors" in U.S. medicine is fundamentally incompatible with UCSF's mission and,

1    potentially, its legal obligations to ensure an environment free from discrimination and

2    harassment.[11]  Collectively, those interests easily outweigh Marya's interests in her social media

3    posts.  After all, UCSF does not "face a particularly onerous burden to justifying disciplining"

4    Marya for public statements conveying racist tropes or expressing hostility toward a student based

5    on federally protected status.  *Hernandez*, 43 F.4th at 979.

6         As a result, even at this early stage of the case, the Complaint demonstrates that UCSF's

7    legitimate interests as an employer outweighed Marya's far more limited interest in publicly

8    speculating that a student was directly involved in perpetrating genocide based on that student's

9    national origin and accusing "Zionist doctors" of justifying genocide.  UCSF has few, if any, more

10   significant interests than "maintaining a relationship of trust" with its students, patients, and the

11   public.  *Locurto v. Giuliani*, 447 F.3d 159, 183 (2d Cir. 2006).  And while Marya has a right to

12   engage in protected expression, she does not have a right to willfully undermine those interests

13   while maintaining her employment.  As a result, the First Amendment did not prevent UCSF from

14   disciplining Marya for her posts, and she fails to state a claim for unconstitutional retaliation.

### 2.    Marya Fails to Plead Conspiracy.

16        Marya also fails to state a claim for a conspiracy to violate her rights.  Under 42 U.S.C.

17   § 1985(3), a plaintiff may obtain relief from "two or more persons" who "conspire . . . for the

18   purpose of depriving" another of "equal privileges and immunities under the laws."  But the

19   "absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim

20   predicated on the same allegations."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir.

21   2005).  Marya has not pleaded a § 1983 claim, so she fails to state a claim under § 1985.

---

[11] Indeed, relevant federal civil rights guidance encourages schools to take action when confronted with speech that could be understood to express derogatory opinions about members of a protected group.  As the U.S. Department of Education has cautioned, "[t]he fact that harassment may involve conduct that includes speech . . . does not relieve a school of its obligation to respond under Title VI . . . if the harassment creates a hostile environment in school for a student or students."  *See* U.S. Dep't of Educ., Off. of the Assistant Sec'y for C.R., *Dear Colleague Letter* (2024), https://www.ed.gov/media/document/colleague-202405-shared-ancestrypdf-35100.pdf.  And the Department has also counseled that a university has "a number of tools for responding" in that scenario, such as "communicat[ing] its opposition to stereotypical, derogatory opinions" and "tak[ing] steps to establish a welcoming and respectful campus."  *Id.*

Marya's conspiracy allegations are also substantively deficient.  A § 1985 plaintiff must plead the existence of an agreement and an act in furtherance of the conspiracy.  *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005).  Merely levying an accusation of conspiracy is insufficient.  *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).  The Complaint generically asserts that Defendants and "co-conspirators," who are "known and not yet known to [Marya]," reached "an agreement amongst themselves" to violate her constitutional rights.  Compl. ¶ 70.  That entirely conclusory allegation cannot survive a motion to dismiss under Rule 12(b)(6).  *See Twombly*, 550 U.S. at 556–57 ("[P]arallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

### D.    Marya's Claims Fail Even if Defendants are Sued in Their Personal Capacities.

Even if Marya intended to name UCSF officials in their personal capacities, her Complaint still must be dismissed.  The arguments laid out above would defeat those claims, too.  She lacks standing to seek prospective relief against the individual UCSF officials for all the reasons she lacks standing to seek prospective relief against UCSF.  *See supra*, at pp. 7–10.  And her claims for nominal damages fare no better, because she fails to state a claim on the merits.  *See supra*, at pp. 12–17.

Moreover, any personal-capacity claim would have to be dismissed because the Complaint fails to plead any Defendant was personally involved in the alleged constitutional violations.  Section 1983 does not create liability for "mere bystander[s]."  *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (citation and internal quotation marks omitted).  To state a claim for relief under § 1983 against a particular defendant in his or her personal capacity, a plaintiff must allege facts demonstrating that the individual in question was personally involved in the alleged constitutional violation.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Here, nothing in the Complaint comes close to suggesting that any named official personally retaliated against Marya or was an "integral participant" in the same.  *Peck*, 51 F.4th at 889.  As to Defendants Tsugawa, Hawgood, Alldredge, and Ha, the Complaint merely alleges that

1  they were employed in various roles at UCSF during the relevant time period.  Compl. ¶¶ 9–12.

2  That is insufficient to state a claim under § 1983.  *See Davis v. Folsom Cordova Unified Sch.*

3  *Dist.*, 674 F. App'x 715, 717 (9th Cir. 2017) (claim properly dismissed against defendant when

4  "complaint fail[ed] to allege any facts regarding [said defendant] beyond identifying her as a

5  student government teacher at Vista del Lago High School").

6       As to Defendant Wachter, the Complaint makes a single allegation related to Marya's

7  January 2024 social media thread.  Several days after Marya posted the thread, UCSF issued its

8  statement characterizing her criticism of "'Zionist' doctors" as a "tired and familiar racist

9  conspiracy theory."  Heckenlively Decl., Ex. A, at 1; *id.*, Ex. C, at 1; *id.*, Ex. D, at 2; Compl. ¶ 42.

10  Marya alleges Wachter "acknowledged in an email" that the UCSF post "was in direct response"

11  to her thread.  *Id.*  Wachter's email, however, did not amount to an adverse employment action.

12  An adverse action is one that that is "reasonably likely to deter" an employee's speech.  *Burch*,

13  146 F.4th at 837.  Answering an email does not clear that bar.  Second, even if Marya had pleaded

14  that Wachter played a more substantial role and had a hand in issuing the statement, that still

15  would not save her claim.  A state official's own speech cannot be "construe[d] as 'adverse

16  action'" for retaliation purposes.  *O'Handley v. Weber*, 62 F.4th 1145, 1163 (9th Cir. 2023).

17       Marya's claims concerning Defendant Lucey are deficient too.  The only action Lucey

18  allegedly took after Marya's January and September 2024 posts was to host and promote an event

19  with a professor who, Marya claims, "equated advocating for a ceasefire in Gaza to being

20  antisemitic, promoted Islamophobic ideas, and used anti-Palestinian racist language."  Compl.

21  ¶ 59.  The Complaint alleges that Lucey "endorsed the talk as 'grounding and factual'" despite

22  "multiple factual inaccuracies."  *Id.*  Even if true, these allegations do not support a retaliation

23  claim.  Expressive activities do not qualify as adverse employment actions.  *O'Handley*, 62 F.4th

24  at 1163.  Nor does the Complaint contain any suggestion that Lucey's decision to host, promote,

25  and comment on a talk with a professor were motivated by Marya's speech.

26       Separately, Marya also fails to plead any UCSF official defendant was personally involved

27  in a conspiracy to suppress her speech.  As explained, she has not plausibly alleged the existence

28

NOTICE OF MOTION AND MOTION TO DISMISS

1  of a consensus to violate her rights.  *See supra*, at pp. 16–17.  It follows that she has not pleaded

2  that any official she has named in this suit was a party to such an unlawful agreement.

3  **V.      CONCLUSION**

4          For the foregoing reasons, this Court should grant Defendants' motion to dismiss under

5  Rules 12(b)(1) and 12(b)(6).

6

7  DATED:  October 10, 2025                    MUNGER, TOLLES & OLSON LLP

8

9                                                    By:  _____
                                                              */s/ Bryan H. Heckenlively*
10                                                           BRYAN H. HECKENLIVELY
                                                     Attorneys for Defendants
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS