BRYAN H. HECKENLIVELY (State Bar No. 279140)
bryan.heckenlively@mto.com
SKYLAR B. GROVE (State Bar No. 310707)
skylar.grove@mto.com
MILES W. UNTERREINER (State Bar No. 347959)
miles.unterreiner@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street Twenty-Seventh Floor
San Francisco, California 94105
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Defendants The Regents of the
University of California, Sam Hawgood,
Catherine Lucey, Robert Wachter, Won Ha,
Tracey Tsugawa, and Brian Alldredge

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUPA MARYA, M.D., <br><br>     Plaintiff, <br><br>     vs. <br><br> BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA; SAM HAWGOOD; CATHERINE LUCEY; ROBERT WACHTER; TRACEY TSUGAWA; BRIAN ALLDREDGE; WON HA; AND DOES 1-20, <br><br>     Defendants. | Case No. 3:25-cv-04716-MMC <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Date:       April 17, 2026 <br> Time:      9:00 a.m. <br> Judge:     Hon. Maxine M. Chesney <br> Courtroom:  7 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION..................................................................................................................1

II.   BACKGROUND..................................................................................................................3

III.  LEGAL STANDARD ..........................................................................................................6

IV.   ARGUMENT .......................................................................................................................6

    A.    The Regents Is Not a Proper Defendant. ..................................................................6

    B.    Marya's Claims Continue to Fail at the Threshold Based on Standing and
Preclusion Doctrines. ...............................................................................................7

        1.    Any Claim Based on the Letter of Censure Fails for Lack of
Standing or Because of Claim Preclusion. .......................................................7

        2.    The FAC Otherwise Fails to Establish Standing.............................................9

    C.    Marya's Challenge to the Letter of Censure Fails on the Merits. ...........................11

        1.    The Letter of Censure Does Not Qualify as an Adverse Action. .................12

        2.    The Letter of Censure Was Justified. ...........................................................14

            (a)    Almost All of Marya's Allegations About Her Speech Lack
Specificity..........................................................................................14

            (b)    UCSF's Interests Justified the Letter of Censure. ............................15

    D.    Regardless of Whether Marya's Claims Are Reviewable, She Fails to State
a Claim. ..................................................................................................................18

        1.    Defendants Did Not Suspend Marya's Clinical Privileges. .........................18

        2.    Marya's Termination Does Not Give Rise to a Retaliation Claim. .............18

    E.    Marya's Claims Fail Even if Defendants are Sued in Their Personal
Capacities. ..............................................................................................................21

V.    CONCLUSION .................................................................................................................23

NOTICE OF MOTION AND MOTION TO DISMISS FAC

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Abdulhadi v. Wong*,
No. 18-cv-4662, 2022 WL 842588 (N.D. Cal. Mar. 4, 2022)......................................................14

*Armstrong v. Meyers*,
964 F.2d 948 (1992) .....................................................................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .....................................................................................................................6

*Bauer v. Sampson*,
261 F.3d 775 (9th Cir. 2001)................................................................................................15, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .....................................................................................................................6

*Blair v. Bethel Sch. Dist.*,
608 F.3d 540 (9th Cir. 2010)......................................................................................................13

*Brodheim v. Cry*,
584 F.3d 1262 (9th Cir. 2009).....................................................................................................13

*Burch v. City of Chubbuck*,
146 F.4th 822 (9th Cir. 2025)................................................................................................10, 14

*Carboun v. City of Chandler*,
No. CV032146PHXDGC, 2005 WL 2408294 (D. Ariz. Sept. 27, 2005) ...................................16

*Chapman v. Pier 1 Imports (U.S.)*,
631 F.3d 939 (9th Cir. 2011)..................................................................................................7, 10

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ......................................................................................................................11

*Connick v. Myers*,
461 U.S. 138 (1983) ...............................................................................................................14, 16

*Damiano v. Grants Pass Sch. Dist. No. 7*,
140 F.4th 1117 (9th Cir. 2025)....................................................................................................19

*Davis v. FEC*,
554 U.S. 724 (2008) .....................................................................................................................7

*Demers v. Austin*,
746 F.3d 402 (9th Cir. 2014)............................................................................................12, 15, 16

NOTICE OF MOTION AND MOTION TO DISMISS FAC

*Dodge v. Evergreen Sch. Dist. #114*,
      56 F.4th 767 (9th Cir. 2022) ................................................................................................. 12

*Doe v. Regents of Univ. of Cal.*,
      891 F.3d 1147 (9th Cir. 2018) ............................................................................................ 6, 9

*Foley v. Univ. of Hou. Sys.*,
      355 F.3d 333 (5th Cir. 2003) ................................................................................................. 14

*Foretich v. United States*,
      351 F.3d 1198 (D.C. Cir. 2003) ............................................................................................ 11

*Fortyune v. Am. Multi-Cinema, Inc.*,
      364 F.3d 1075 (9th Cir. 2004) ................................................................................................. 7

*Gilbrook v. City of Westminster*,
      177 F.3d 839 (9th Cir. 1999) ................................................................................................. 16

*Gill v. Whitford*,
      585 U.S. 48 (2018) ................................................................................................................... 8

*Hernandez v. City of Phx.*,
      43 F.4th 966 (9th Cir. 2022) ........................................................................................ passim

*Hou. Cmty. Coll. Sys. v. Wilson*,
      595 U.S. 468 (2022) ............................................................................................................ 2, 13

*Jensen v. Brown*,
      131 F.4th 677 (9th Cir. 2025) ........................................................................................... 14, 15

*Jones v. Williams*,
      297 F.3d 930 (9th Cir. 2002) ................................................................................................. 21

*Juliana v. United States*,
      947 F.3d 1159 (9th Cir. 2020) ..................................................................................... 8, 10, 11

*Leite v. Crane Co.*,
      749 F.3d 1117 (9th Cir. 2014) ................................................................................................. 6

*Lewis v. Casey*,
      518 U.S. 343 (1996) ................................................................................................................. 8

*Locurto v. Giuliani*,
      447 F.3d 159 (2d Cir. 2006) ................................................................................................... 20

*Lujan v. Defs. of Wildlife*,
      504 U.S. 555 (1992) ................................................................................................................. 7

*Mayfield v. United States*,
      599 F.3d 964 (9th Cir. 2010) ................................................................................................... 7

NOTICE OF MOTION AND MOTION TO DISMISS FAC

*McCullen v. Coakley,*
573 U.S. 464 (2014) ..................................................................................................12

*Moore v. Garnand,*
83 F.4th 743 (9th Cir. 2023) .....................................................................................23

*Mulligan v. Nichols,*
835 F.3d 983 (9th Cir. 2016) ...............................................................................12, 13

*Murthy v. Missouri,*
603 U.S. 43 (2024) ......................................................................................................8

*Nunez v. City of Los Angeles,*
147 F.3d 867 (1998) ..............................................................................................13, 23

*O'Handley v. Weber,*
62 F.4th 1145 (9th Cir. 2023) ..........................................................................12, 13, 22

*Peck v. Montoya,*
51 F.4th 877 (9th Cir. 2022) ................................................................................21, 22

*Phillips v. U.S. Customs and Border Prot.,*
74 F.4th 986 (9th Cir. 2023) .................................................................................7, 11

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist.,*
391 U.S. 563 (1968) ........................................................................................ *passim*

*Safe Air for Everyone v. Meyer,*
373 F.3d 1035 (9th Cir. 2004) ...................................................................................6

*Sweet v. Cardona,*
121 F.4th 32 (9th Cir. 2024) .....................................................................................11

*Thomas v. County of Humboldt,*
124 F.4th 1179 (9th Cir. 2024) ................................................................................23

*United States v. Ritchie,*
342 F.3d 903 (9th Cir. 2003) ..............................................................................3, 4, 20

*Walsh v. Nev. Dep't of Hum. Res.,*
471 F.3d 1033 (9th Cir. 2006) ..................................................................................11

*Waters v. Churchill,*
511 U.S. 661 (1994) ..................................................................................................16

*Will v. Mich. Dep't of State Police,*
491 U.S. 58 (1989) ......................................................................................................6

*Wright v. Serv. Emps. Int'l Union Loc. 503,*
48 F.4th 1112 (9th Cir. 2022) ....................................................................................8

NOTICE OF MOTION AND MOTION TO DISMISS FAC

**STATE CASES**

*Gupta v. Stanford Univ.*,
    124 Cal. App. 4th 407 (2004)..................................................................................................9

*Hongsathavij v. Queen of Angels/Hollywood Presbyterian Med. Ctr.*,
    62 Cal. App. 4th 1123 (1998)...............................................................................................18

*Johnson v. City of Loma Linda*,
    5 P.3d 874 (Cal. 2000) ...........................................................................................................9

*O'Brien v. Regents of Univ. of Cal.*,
    92 Cal. App. 5th 1099 (2023)..................................................................................................9

**FEDERAL STATUTES**

42 U.S.C. § 1983 ............................................................................................................. *passim*

42 U.S.C. § 1985 .........................................................................................................................5

**STATE STATUTES**

Cal. Bus. & Prof. Code § 805........................................................................................................10

Cal. Civ. Proc. Code § 1094.5.......................................................................................................9

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(1)..........................................................................................................1, 6, 23

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1, 5, 23

**OTHER AUTHORITIES**

*See* U.S. Dep't of Educ., Off. of the Assistant Sec'y for C.R., *Dear Colleague
    Letter* (2024), https://www.ed.gov/media/document/colleague-202405-shared-
    ancestrypdf-35100.pdf...........................................................................................................17, 20

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on April 17, 2026, at 9:00 a.m., Defendants will and hereby do move for an order dismissing Plaintiff's First Amended Complaint ("FAC").

This motion seeks dismissal of the FAC pursuant to Federal Rule of Civil Procedure 12(b)(1) for failure to establish jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  It is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, Defendants' Request for Judicial Notice, the Declaration of Bryan H. Heckenlively in Support of Defendants' Motion to Dismiss the FAC and Request for Judicial Notice ("Heckenlively Decl."), all pleadings and papers on file, and such other matters as may be presented to this Court.

**STATEMENT OF RELIEF SOUGHT**

Defendants seek an order pursuant to Rules 12(b)(1) and/or 12(b)(6) dismissing the FAC and each of its causes of action for lack of subject matter jurisdiction and/or failure to state a claim for relief.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The University of California, San Francisco ("UCSF"), is deeply committed to principles of academic freedom and free expression.  At the same time, UCSF is dedicated to ensuring equal opportunity and an environment free from harassment and discrimination based on race, sex, religion, shared ancestry, national origin, and other protected characteristics—as required by state and federal law.

It therefore caused alarm when Plaintiff Dr. Rupa Marya, then a UCSF Professor of Medicine, asked her followers on social media how they would "address[]" the "concern" that one of the newest medical students at UCSF had "just come from Israel."  FAC ¶¶ 49, 51.  Marya claimed that, solely because this student was from Israel, several UCSF medical students were concerned that he "may have been directly involved in the ongoing genocide of the Palestinian people."  *Id.* ¶ 49.  And this was not the first time Marya had posted what UCSF viewed as a "racist . . . conspiracy theory" online.  *Id.* ¶ 43.  In response, UCSF placed her on administrative

leave and initiated a disciplinary proceeding.  Ultimately, UCSF dismissed Marya from her faculty position and formally censured her.

Two weeks later, Marya was in federal court, claiming that UCSF violated her First Amendment rights.  But her Complaint—which did not even acknowledge her termination—suffered from a slew of deficiencies, and this Court dismissed it in full.  Marya has now filed the FAC, but many of the same problems persist.  She continues to improperly seek relief against The Regents of the University of California, which is not a permissible defendant in a § 1983 suit.  And she maintains broad requests for declaratory and injunctive relief without establishing any ongoing harm or risk of future injury that would give her standing to pursue prospective relief.  Accordingly, the bulk of the FAC must be dismissed for reasons that this Court has already given.  *See* Order on Mot. to Dismiss ("Order") ¶¶ 1-5 (Jan. 12, 2026).

What is new is Marya's acknowledgement that UCSF terminated her employment and issued a letter of censure.  She now seeks an order directing UCSF to withdraw its written censure of her misconduct.  But Marya's failure to file a writ petition in California state court precludes this Court from reviewing her challenge to the censure letter here.  And she also fails to allege a constitutional violation.  Marya took to the Internet to accuse a UCSF student of having "participated in genocide" merely because he was "from Israel" and to assert that "Zionist doctors" are a threat to their patients.  She can hardly object that UCSF officials had views on these topics, too, and powerful reasons to rebuke her conduct via a letter of censure, not the least of which is the institution's commitment to ensuring a safe and inclusive environment for every student, faculty member, and patient.  Indeed, courts do not permit plaintiffs to use the First Amendment as a shield to protect their own expression while also wielding it as a sword against those government officials who speak out in disagreement.  *See Hou. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022).

Moreover, the First Amendment does not prevent the government from disciplining a public employee for her speech when that speech threatens legitimate government interests.  Marya's posts offended UCSF's core values, and it was reasonable to believe the statements could make students feel unwelcome, compromise Marya's ability to work with all of her colleagues,

-2-                                    Case No. 3:25-cv-04716-MMC

NOTICE OF MOTION AND MOTION TO DISMISS FAC

and undermine patients' confidence in their care. Taking action by expressing its own views was also what the law required UCSF to do in order to discharge its obligations under Title VI—as Department of Education guidance makes clear. Marya, of course, has the right to express herself on matters of public concern. But that guarantee is not limitless and must be balanced against UCSF's obligations to its community. Here, those obligations outweighed Marya's right to speculate about whether a UCSF student "from Israel" must have "participated in genocide" and whether "Zionist doctors" can be competent clinicians. As a result, this lawsuit must be dismissed in full and with prejudice.

## II.    BACKGROUND

Marya joined the UCSF faculty in 2007. FAC ¶ 19. In addition to her clinical work with UCSF patients and more traditional forms of academic writing, Marya posts actively on social media. *Id.* ¶¶ 25-27.

Marya describes her social media presence as "deeply critical of Israel state policy and Israeli government leadership." FAC ¶ 30. After the attacks against Israel on October 7, 2023, she claims to have regularly taken issue with the "policies, actions, and political ideologies of the Israeli government" and "sp[oken] out against the genocidal campaign waged by Israel in Gaza." *Id.* ¶¶ 31-32. As a result, Marya allegedly received threats to her UCSF email, *id.* ¶ 33, and was subjected to other "hate mail, defamatory statements, and baseless accusations" by members of the public, *id.* ¶ 43. She also alleges that California State Senator Scott Wiener routinely condemned her social media posts. *Id.* ¶¶ 40, 51.

During 2024, two of Marya's social media threads sent shockwaves through the UCSF community. In January 2024, she posted what she describes as a "thread . . . examining the racist and supremacist ideologies embedded in Zionism's project of colonization and its possible negative impacts on health outcomes." FAC ¶ 39. The thread's opening post called for "examin[ation]" of the "presence of Zionism in US medicine" and accused "Zionist doctors" of "justifying the genocide of Palestinians." Heckenlively Decl., Ex. A, at 1.[1] Her thread triggered a

---

[1] Exhibits A through E to the Heckenlively Declaration contain social media posts that "form[] the basis of [Marya's] claim[s]" and are therefore incorporated by reference into the FAC. *See United*

significant backlash online.  FAC ¶¶ 40-43.  At least partly in response, UCSF issued a statement of its own on social media, denouncing the "tired and familiar racist conspiracy theory . . . that 'Zionist' doctors are a threat to Arab, Palestinian, South Asian, Muslim, and Black patients, as well as the US health system."  Heckenlively Decl., Ex. C, at 1; *id*., Ex. D, at 2; *id.*, Ex. E, at 4.

Second, in September 2024, Marya shared a post on social media expressing concern—without any apparent basis—that a UCSF medical student from Israel may have "participated in the genocide of Palestinians."  Heckenlively Decl., Ex. B, at 2.  She alleges that, in August and September 2024, she was approached by UCSF medical students who were "concerned for their safety around a new classmate who told them he had just come from Israel."  FAC ¶ 49.  Because Israel has mandatory military service, the students allegedly speculated that this individual "may have been directly involved in the ongoing genocide of the Palestinian people."  *Id.*  On September 21, Marya "posted about the medical students' concern on social media" and asked her followers "how this concern should be addressed."  *Id.* ¶ 51; *see* Heckenlively Decl., Ex. B, at 2.

The next day, UCSF placed Marya on leave pending an investigation.  FAC ¶¶ 52, 54.  Several days later, on October 1, 2024, UCSF's Executive Medical Board also suspended Marya's clinical privileges, citing the concern that she posed a "possible imminent danger."  *Id.* ¶ 55.  Marya's privileges were reinstated two weeks later.  *Id.*  The disciplinary investigation into Marya's conduct continued into 2025.  *Id.* ¶¶ 58, 62.  On April 25, 2025, UCSF Chancellor Sam Hawgood sent Marya a notice informing her that UCSF had determined that her social media activity ran afoul of the Faculty Code of Conduct.  *Id.* ¶ 62.  The notice also specified that the University intended to dismiss Marya from the faculty and place a letter of censure in her academic personnel file for a period of ten years.  *Id.*  On May 20, 2025, her termination took effect, and UCSF added the letter of censure to her file.  *Id.* ¶ 64.

Two weeks later, on June 4, 2025, Marya filed this lawsuit.  The action named the "Board

*States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); Heckenlively Decl., Exs. A-E; FAC ¶¶ 39, 43, 51.

NOTICE OF MOTION AND MOTION TO DISMISS FAC

of Regents of the University of California"[2] and six UCSF officials: Chancellor Sam Hawgood, Executive Vice Chancellor and Provost Catherine Lucey, Chair of the Department of Medicine Robert Wachter, Vice Chancellor of Communications Won Ha, Associate Vice Chancellor Tracey Tsugawa, and Vice Provost of Academic Affairs Brian Alldredge.  Compl. ¶¶ 7-12.  Marya brought claims for First Amendment retaliation under § 1983 and conspiracy to violate her constitutional rights under § 1985. She sought nominal damages and declaratory and injunctive relief.  Compl. Prayer for Relief ¶¶ 1-4.[3]

Defendants moved to dismiss the Complaint.  ECF No. 35.  They argued that Marya's case suffered from a number of threshold defects—improperly sued defendants, sovereign immunity, and a failure to plead standing.  In the alternative, they also explained that the Complaint was deficient on the merits and failed to allege a constitutional violation.  On January 12, 2026, this Court agreed and dismissed the complaint.  Order ¶¶ 1-5.  The Court held that The Regents was an improper defendant, leaving only the individual officials.  *Id.* ¶ 1.  The Court went on to conclude that those individual officials could not be sued in their individual capacities, because Marya had not pleaded they were personally involved in a constitutional violation.  *Id.* ¶ 4.  And they also could not be sued in their official capacities, because Marya's lack of standing and the doctrine of sovereign immunity respectively barred her requests for prospective relief and retrospective relief (i.e., damages).  *Id.* ¶¶ 2-3.  Finally, the Court held that Marya failed to state a claim for conspiracy, *id.* ¶ 5, and dismissed the Complaint in full.

Marya filed her FAC, which dropped her claim for conspiracy and her request for nominal damages.  But she continues to press a claim for First Amendment retaliation under § 1983.  FAC

---

[2] Although sued as "Board of Regents of the University of California," the correct name of this Defendant is The Regents of the University of California—the entity that directs and operates the UC system.  UCSF is an operating entity of The Regents.

[3] The day before filing this federal action, Marya filed a parallel lawsuit in California state court.  *See* ECF No. 31 (Notice of Pendency of Other Action or Proceeding).  That litigation seeks relief against Defendants under the California Fair Employment and Housing Act, the Free Speech Clause of the California Constitution, and the Tom Bane Civil Rights Act.  *See* ECF No. 31-1 at ¶¶ 79-147 (State-Court First Amended Complaint).

¶¶ 75-81.  She now acknowledges that she no longer works at UCSF but continues to seek sweeping declaratory and injunctive relief.  FAC Prayer for Relief ("FAC Prayer") ¶¶ 1–5.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

On a motion to dismiss under Rule 12(b)(1) for failure to allege facts sufficient to support standing, a court must likewise "accept[] the truth of the plaintiff's allegations."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  The complaint must be dismissed if its allegations are "insufficient on their face to invoke federal jurisdiction."  *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

## IV.   ARGUMENT

### A.   The Regents Is Not a Proper Defendant.

As this Court held in the order dismissing Marya's Complaint, The Regents cannot be sued under § 1983.  Order ¶ 1.  That statute creates a cause of action only against "person[s]."  42 U.S.C. § 1983.  An arm of the state, such as The Regents, is not a "person" within the meaning of § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Armstrong v. Meyers*, 964 F.2d 948, 949-50 (1992).

Nevertheless, Marya continues to press a § 1983 claim against all Defendants, including The Regents.  FAC at p. 20.  Once again, "to the extent [that] claim is brought against [T]he Regents, [it] is subject to dismissal."  Order ¶ 1.[4]

---

[4] To the extent Marya means to bring an *Ex parte Young* action against The Regents, *see* FAC ¶ 74 (stressing that "this case is situated within . . . *Ex parte Young*"), her claim still fails.  *Ex parte Young* applies only to suits against individual state officers in their official capacities, *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018), not to suits against a state instrumentality itself.

**B.    Marya's Claims Continue to Fail at the Threshold Based on Standing and Preclusion Doctrines.**

Marya has tried to address the defects in her original Complaint by alleging that UCSF placed a letter of censure in her personnel file, but that amendment does not allow the case to proceed.  Any alleged reputational injury from the letter of censure could establish standing for Marya to pursue only one of the remedies she seeks: an order directing Defendants to "withdraw and cancel" the letter.  FAC Prayer ¶ 4.  But even that request must be dismissed, because Marya's failure to file a writ petition in California state court precludes this Court from reviewing it.  As to the other remedies Marya demands, the FAC still alleges no actual ongoing harm or risk of future harm, and she therefore continues to lack standing.  As a result, the FAC must be dismissed in its entirety.

**1.    Any Claim Based on the Letter of Censure Fails for Lack of Standing or Because of Claim Preclusion.**

As the plaintiff, Marya has the burden of establishing the "irreducible constitutional minimum" of standing: injury in fact, traceability, and redressability.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  A past injury that establishes standing to seek damages "does not necessarily" allow her to "seek prospective relief."  *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010).  Instead, a plaintiff who asserts she has suffered a violation of her rights and seeks prospective relief must either allege a "'real and immediate threat of repeated injury' in the future," *Chapman v. Pier 1 Imports (U.S.)*, 631 F.3d 939, 946 (9th Cir. 2011) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)), or point to "continu[ing] . . . adverse effects" from the past violation, *Phillips v. U.S. Customs and Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023) (quoting *Mayfield*, 599 F.3d at 991).

Any ongoing effects of the letter of censure would provide Marya with standing to pursue only one of the remedies she seeks.  *See Davis v. FEC*, 554 U.S. 724, 734 (2008) (plaintiff must establish standing "for each form of relief that is sought" (citation modified)).  The FAC alleges that Defendants placed a letter of censure in Marya's personnel file "to express institutional rebuke" for her actions.  FAC ¶¶ 62, 64.  Even if this alleges cognizable ongoing reputational harm, Marya could have standing to pursue only forms of relief that are "substantially likely to

NOTICE OF MOTION AND MOTION TO DISMISS FAC

redress" the alleged harm. *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020).  Most of the remedies she seeks would not do that.  For example, neither an order prohibiting Defendants from interfering with her clinical privileges nor an injunction against "further act[s] of retaliation" would change the fact that the letter is in Marya's file or otherwise improve her reputation.  FAC Prayer ¶¶ 2, 5.[5]

Marya also cannot rely on this alleged reputational injury to obtain an injunction prohibiting Defendants from "publishing, distributing, referring to or otherwise disseminating or promoting the Letter of Censure."  FAC Prayer ¶ 3.  To establish standing, she would have to plead that this "allegedly wrongful behavior [is] likely" to "occur or continue" in the future.  *Murthy v. Missouri*, 603 U.S. 43, 69 (2024) (emphasis and citation omitted).  Nothing in the FAC permits the inference that Defendants have plans to distribute the letter of censure.  Indeed, Marya does not even allege that Defendants have taken any such action against her in the past.  *See Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1118 (9th Cir. 2022) (past wrongs are "evidence bearing on whether there is a real and immediate threat" of future injury (citation omitted)).

Nor does the letter enable Marya to obtain a broad declaration that her "constitutional rights have been violated."  FAC Prayer ¶ 1.  Her narrow alleged injury does not support such broad-based relief.  When a plaintiff is harmed by a government action, she does not simultaneously acquire standing to obtain a declaratory judgment about the legality of everything else the government has done.  *See Lewis v. Casey*, 518 U.S. 343, 357 (1996).  Instead, the scope of the remedy she may pursue is "limited to the inadequacy that produced the injury in fact."  *Gill v. Whitford*, 585 U.S. 48, 68 (2018).  The reputational injury Marya has allegedly suffered from the letter of censure could confer standing for her to seek a declaration only that *the issuance of the letter* violated her First Amendment rights—which she does not actually seek.  A declaration reaching the constitutionality of any of Defendants' other alleged conduct would be nothing more

---

[5] Marya's request for an order barring interference with her clinical privileges also fails because Marya seeks it only against The Regents, which is not a proper defendant.  *See supra*, at p. 6.

NOTICE OF MOTION AND MOTION TO DISMISS FAC

than an advisory opinion.

That leaves only Marya's demand for an order directing Defendants to "withdraw and cancel" the letter of censure. Prayer ¶ 4. But even that request for relief is nonjusticiable, because Marya is precluded from challenging the issuance of the letter. In the Ninth Circuit, courts "give preclusive effect" to a decision of a California state agency "if the California courts would do so." *Doe v. Regents of Univ. of Cal.*, 891 F.3d 1147, 1155 (9th Cir. 2018). And under California law, an agency decision is entitled to preclusive effect unless the aggrieved party challenges it via an "established process for judicial review." *Id.* (citation omitted). Ordinarily, the "process" for bringing such a challenge is a petition for a writ of administrative mandamus under § 1094.5 of the California Code of Civil Procedure. *Id.*; *see Johnson v. City of Loma Linda*, 5 P.3d 874, 879-80 (Cal. 2000). Where that path is available, an aggrieved party typically must take it and file a § 1094.5 petition in order to prevent the administrative decision from precluding later legal challenges. *See Doe*, 891 F.3d at 1155.

Under those principles, Marya's challenge to the letter of censure is precluded. She could have contested the letter by filing a § 1094.5 petition. Administrative mandamus is the appropriate vehicle for challenging UCSF's disciplinary actions. *See Gupta v. Stanford Univ.*, 124 Cal. App. 4th 407, 411 (2004) ("Whether the aggrieved party is seeking redress for termination of employment, denial of tenure or academic discipline is irrelevant to the applicability of section 1094.5"); *Doe*, 891 F.3d at 1155 (§ 1094.5 petition is "the exclusive and established process" for reviewing public university's administrative decision to suspend student (citation omitted)). Indeed, California courts will consider a challenge to a written censure under § 1094.5. *See, e.g.*, *O'Brien v. Regents of Univ. of Cal.*, 92 Cal. App. 5th 1099, 1115 (2023). But Marya failed to file a state-court petition. As a result, UCSF's decision to issue the letter of censure became entitled to preclusive effect. That reality bars Marya from challenging the letter in federal court today. *See Doe*, 891 F.3d at 1155 (dismissing precluded claim).

**2.    The FAC Otherwise Fails to Establish Standing.**

Aside from the letter of censure, the remainder of the FAC continues to suffer from the same defect that the original Complaint did: Marya has not pleaded that anything she alleges in the

FAC has a realistic prospect of recurring. Her allegations are predominantly backward-looking. As she did in the Complaint, Marya pleads that she received hate mail and threats from members of the public in the Fall of 2023, January 2024, and October 2024. FAC ¶¶ 32-33, 40, 57. But she does not assert that she continues to receive such messages.[6] She continues to allege she was investigated for "violating the Faculty Code of Conduct in June 2024," which resulted in an August 2024 report, but does not claim that investigation remains open. *Id.* ¶ 47. Marya also pleads that the UCSF Executive Medical Board suspended her clinical privileges in October 2024. *Id.* ¶ 55. But she notes her privileges were "reinstated" just two weeks later. *Id.*[7]

The new allegations in the FAC do not fix the problem. Marya now acknowledges that UCSF terminated her employment. *See* FAC ¶¶ 62-64. She has added assertions that UCSF conducted an additional investigation and, as required by state law, reported her termination to the California Medical Board. *Id.* ¶¶ 64, 66-67; *see* Cal. Bus. & Prof. Code § 805. The FAC also includes a handful of new claims about the individually named Defendants. FAC ¶¶ 68-73. Like the allegations in the original Complaint, those assertions plead only past conduct. They do not permit the inference that Marya faces a "'real and immediate threat of repeated injury' in the future." *Chapman*, 631 F.3d at 946 (citation omitted). To the contrary, her dismissal from UCSF prevents her from showing she will be treated in a similar way going forward. *See* Order ¶ 3 (holding that Marya "failed to allege facts to establish she has standing to seek injunctive relief, as she ceased working for the Regents prior to the filing of the instant action").

Marya also cannot establish standing on the ground that she is suffering cognizable

---

[6] Marya also lacks standing because she cannot show that the relief she seeks is "substantially likely to redress" any injury from these messages. *See Juliana*, 947 F.3d at 1170. The messages came from members of the public, not Defendants, and so relief against Defendants could not ameliorate any alleged harm. Separately, because the messages were caused not by Defendants' actions but by Marya's own statements, they also cannot give rise to a claim against Defendants on the merits. *See Burch v. City of Chubbuck*, 146 F.4th 822, 837 (9th Cir. 2025) (retaliation plaintiff must show "*the state* took an adverse employment action" against plaintiff (emphasis added)).

[7] Moreover, as explained below, the UCSF Executive Medical Board is a separate legal entity that has not been sued in this action. No actual Defendant can be sued for the suspension of clinical privileges. *See infra* at p. 18.

"continu[ing] . . . adverse effects" from the events alleged in the FAC. *Phillips*, 74 F.4th at 991 (citation omitted). Certainly, she is experiencing the ongoing consequences of her termination; she no longer works at UCSF. But, again, to establish standing on that basis, she must demonstrate that the "relief [she] seek[s] is . . . substantially likely to redress [her] injuries." *Juliana*, 947 F.3d at 1170. Marya cannot do so. She has not requested any of the traditional remedies for termination in this lawsuit but separately seeks damages in state court. *See* ECF No. 31-1 at p. 31 (state-court First Amended Complaint). Instead, the relief she seeks—a declaration that her "rights have been violated" and orders enjoining Defendants to refrain from interfering with her clinical privileges in the future, to withdraw or refrain from disseminating the letter or censure, and to "refrain from any further act of retaliation," FAC Prayer ¶¶ 2-5—would not have any effect on the fact that she was fired or otherwise alter her relationship with UCSF. *See Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("Some case law in this circuit indicates that a non-employee may have standing to sue for injunctive relief against an employer, but those non-employees were in the process of seeking reinstatement to their former positions, or seeking work from that employer."). Marya's allegations of reputational harm and emotional distress do not change the calculus. Neither the "emotional consequences of a prior act," *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983), nor its "'lingering effects' on reputation . . . furnish[es] a basis for Article III standing," *Sweet v. Cardona*, 121 F.4th 32, 43 (9th Cir. 2024) (quoting *Foretich v. United States*, 351 F.3d 1198, 1213-14 (D.C. Cir. 2003)).

In short, the letter of censure does not save the FAC from the problems that doomed Marya's Complaint. To the extent she may have standing to challenge the letter, her claim is precluded. And even after amendment, the balance of the FAC is still fundamentally about past events, which cannot support Marya's demands for purely prospective relief. Accordingly, the FAC must be dismissed with prejudice.

**C.    Marya's Challenge to the Letter of Censure Fails on the Merits.**

Marya's challenge to the letter of censure would fail even if it were reviewable because she has not pleaded the letter violated her First Amendment rights. The State has significant leeway to regulate the speech of public employees in its capacity as an employer. *Pickering v. Bd. of Educ.*

*of Twp. High Sch. Dist.*, 391 U.S. 563, 568 (1968).  Accordingly, when a public employee brings a claim for First Amendment retaliation, a special inquiry governs the analysis.  First, a plaintiff must demonstrate that she engaged in protected activity.  To do so, a public university professor such as Marya must show that her speech (1) involved a matter of public concern and (2) either fell outside her job duties or was related to scholarship or teaching.  *Hernandez v. City of Phx.*, 43 F.4th 966, 976 (9th Cir. 2022); *Demers v. Austin*, 746 F.3d 402, 406 (9th Cir. 2014).  Then, to state a claim, the plaintiff must also prove that she suffered an "adverse employment action" and that her "protected speech was a substantial or motivating factor" for that action.  *Hernandez*, 43 F.4th at 976.  If she makes that showing, the government employer can still defeat her claim by establishing that it "had an adequate justification for punishing [her] for [her] speech." *Id.*

UCSF's decision to issue a letter of censure did not violate the First Amendment for two reasons.  First, the letter was UCSF's own speech.  As a result, it cannot qualify as an adverse employment action.  Second, even if the letter could give rise to a First Amendment retaliation claim, the alleged facts establish that UCSF had ample justification for adding it to Marya's personnel file.

### 1.    The Letter of Censure Does Not Qualify as an Adverse Action.

In general, for a First Amendment retaliation claim, an adverse employment action is one that is "reasonably likely to deter [a person] from engaging in constitutionally protected speech." *Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 778 (9th Cir. 2022) (citation omitted).  The "key question" is whether the allegedly retaliatory activity "would chill or silence a person of ordinary firmness from continuing to speak out."  *Id.* at 778-79 (citation omitted).

But retaliation claims involving *government* speech require a different approach. *O'Handley v. Weber*, 62 F.4th 1145, 1163 (9th Cir. 2023).  Creating liability for government officials' speech "risks interfering with their ability to effectively perform their duties." *Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016).  And it may infringe on the "competing First Amendment rights of the officials themselves." *Id.*  The objective of the First Amendment is to "preserve an uninhibited marketplace of ideas." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014). Interfering with government officials' ability to respond to citizens' speech with protected activity

NOTICE OF MOTION AND MOTION TO DISMISS FAC

of their own would undermine that goal. As the Ninth Circuit has cautioned, "[i]t would be the height of irony, indeed, if mere speech, in response to speech, could constitute a First Amendment violation." *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (1998); *see also Hou. Cmty. Coll. Sys.*, 595 U.S. at 478 ("The First Amendment surely promises [a public official] the right to speak freely on questions of government policy. But just as surely, it cannot be used as a weapon to silence other [officials] seeking to do the same.").

For those reasons, the Ninth Circuit has "required plaintiffs alleging government retaliation that takes the form of speech to meet a high threshold." *Mulligan*, 835 F.3d at 990. A plaintiff can clear that bar by pleading, for example, "false accusations of criminal activity" that "contributed to arrests and search warrants," *id.*, or statements "intimating that some form of punishment or adverse regulatory action w[ill] follow," *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (citation omitted). But speech alone—such as the use of "harsh words" or an "act of defamation"—is "not ordinarily sufficient" to plead an adverse action, even if it causes emotional distress or "damages [the plaintiff's] reputation." *Mulligan*, 835 F.3d at 989.

Accordingly, Marya cannot state a First Amendment retaliation claim based on the letter of censure. The letter did not "threat[en], coerc[e], or intimidat[e]" her in any way. *Mulligan*, 835 F.3d at 990. It merely "express[ed] institutional rebuke for [her] actions." FAC ¶ 62. In other words, "in censuring [Marya], [Defendants] sought only to voice their opinion that she violated [UCSF] policy" and discourage "similar conduct in the future." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 546 (9th Cir. 2010) (citation omitted). That cannot be "construe[d] as 'adverse action,'" not when "doing so would prevent [Defendants] from exercising their own First Amendment rights" to criticize the views that Marya espoused. *O'Handley*, 62 F.4th at 1163. Accordingly, Marya's challenge to the letter of censure fails.[8]

---

[8] For similar reasons, in Marya's state-court lawsuit, Defendants filed a special motion to strike under California's Anti-SLAPP statute, arguing that her claims arose from UCSF's protected activity and must be dismissed. Defendants' Special Motion to Strike, *Marya v. Regents of Univ. of Cal.*, 25CV125190 (Cal. Super. Ct. filed June 3, 2025).

## 2. The Letter of Censure Was Justified.

Even if the letter of censure had been an adverse action, the FAC still must be dismissed. For the most part, Marya's allegations about the speech that triggered the letter are too vague to plausibly plead that the First Amendment protected her speech. And with respect to the speech she alleges in sufficient detail, she still fails to state a claim because UCSF had an "adequate justification" for taking the limited and measured step of censuring her for those social media posts. *Hernandez*, 43 F.4th at 976.

### (a) Almost All of Marya's Allegations About Her Speech Lack Specificity.

To sufficiently allege that Defendants issued the letter of censure in retaliation for her protected speech, Marya must first precisely identify the speech at issue. Whether speech involves a matter of public concern is heavily dependent on the "content, form, and context" of the statement. *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). It is not enough to know the topic; the actual statement itself is critical. *See id.* at 148 (speech about "discipline and morale in the workplace" could just as well address an "agency's efficient performance of its duties" as "one employee's dissatisfaction"). Similarly, whether an employee spoke pursuant to her job duties is a "practical" and "fact-intensive" inquiry that requires careful evaluation of the "subject matter of the communication." *Burch v. City of Chubbuck*, 146 F.4th 822, 834 (9th Cir. 2025) (citation omitted). As the Ninth Circuit has recognized, "[n]ot all speech made by a higher education employee relates to scholarship or teaching." *Jensen v. Brown*, 131 F.4th 677, 689 (9th Cir. 2025). A plaintiff who brings a First Amendment retaliation claim therefore "is required to be specific as to when her statement or statements were made, to whom they were made, whether they were oral or written, and the content of those statements." *Foley v. Univ. of Hou. Sys.*, 355 F.3d 333, 342 (5th Cir. 2003); *Abdulhadi v. Wong*, No. 18-cv-4662, 2022 WL 842588, at *7 (N.D. Cal. Mar. 4, 2022).

For the most part, the FAC provides no detail about the content of the statements that Marya believes led to her censure. The FAC claims that "[a]ll of . . . Marya's social media posts and other statements" are "protected by the First Amendment," FAC ¶ 76, but then describes that

speech in ways that are fatally nonspecific, *see, e.g.*, *id.* ¶ 25 ("Sometimes she uses X to share humor.  But more often, she uses it to share unique ideas and to provoke thought.").  Without more, it is impossible to tell which of the many posts or statements Marya has made over the course of her career qualify as protected speech under *Pickering* and *Demers* and whether she has plausibly pleaded that they played a "substantial or motivating" role in UCSF's decision to issue the letter of censure.  *Hernandez*, 43 F.4th at 976; *see also Demers*, 746 F.3d at 413-14 (a "brief description[]" of a publication is insufficient to determine whether speech "could conceivably have prompted any adverse reaction").

The FAC describes only two statements—both social media threads—with any real specificity.  The first is Marya's September 2024 post, in which she asked her followers for input about how to address the fact that one of UCSF's newest medical students was from Israel.  Heckenlively Decl., Ex. B, at 2; FAC ¶ 49.  The second is her January 2024 thread, which questioned the "presence of Zionism in US medicine" and accused "Zionist doctors" of "justifying the genocide of Palestinians." Heckenlively Decl., Ex. A, at 1; FAC ¶ 39.  Yet, even if the FAC adequately alleges that these two social media threads potentially fell within the ambit of protected speech, UCSF was nonetheless justified in disciplining Marya for those comments, as Defendants will now explain.

### (b)    UCSF's Interests Justified the Letter of Censure.

When the State acts as an employer, it may take adverse action against its employees when its "legitimate administrative interests outweigh the [employee's] First Amendment rights." *Bauer v. Sampson*, 261 F.3d 775, 785 (9th Cir. 2001).  This balancing test, which derives from *Pickering v. Board of Education*, reflects the reality that the State has a much more substantial interest in regulating the speech of its employees than it does in regulating the speech of ordinary citizens.[9]

---

[9] Although *Pickering* balancing often "cannot be performed on a 12(b)(6) motion," it is appropriate when the "balance can only come out one way on the averments pleaded." *Jensen v. Brown*, 131 F.4th 677, 691-92 (9th Cir. 2025) (citation omitted).  Because it is "evident" from the FAC that UCSF's interests outweighed Marya's, *id.* at 692, dismissal on this ground is warranted.

NOTICE OF MOTION AND MOTION TO DISMISS FAC

On the State's side of the equation, "*Pickering* 'requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Bauer*, 261 F.3d at 785 (citation omitted). Accordingly, courts have recognized that the State has a "strong interest" in regulating speech that "impairs close working relationships among co-workers," "interferes with the effective functioning of [its'] operations," "undermines the employer's mission," or compromises its "relationship of trust and confidence with the communities [it] serve[s]." *Hernandez*, 43 F.4th at 976, 981. The Supreme Court has also "given substantial weight" to an employer's "reasonable predictions of disruption," even when the danger the employer fears could be characterized as "mostly speculative." *Waters v. Churchill*, 511 U.S. 661, 673 (1994). Further, in the context of an "employing academic institution," the Ninth Circuit has cautioned that courts "should hesitate before concluding that [they] know better than the institution itself." *Demers*, 746 F.3d at 413.

Meanwhile, a court must also consider the value of the employee's speech and the public's interest in hearing what that employee has to say. *Hernandez*, 43 F.4th at 976-77. The force of the employee's interest depends in part on the "nature of [their] expression." *Connick*, 461 U.S. at 150. "[L]ow value" speech—such as statements that the employer perceives to reflect "hostility toward racial or religious minorities"—is entitled to little weight. *Hernandez*, 43 F.4th at 978-79. The disciplinary action taken by the employer also plays a role. The *Pickering* balancing test is "fact-sensitive," *Gilbrook v. City of Westminster*, 177 F.3d 839, 868 (9th Cir. 1999), and the "nature and severity of the employer's response is certainly relevant" to that calculus, *Carboun v. City of Chandler*, No. CV032146PHXDGC, 2005 WL 2408294, at *7 (D. Ariz. Sept. 27, 2005).

Here, the allegations in the FAC establish that UCSF censured Marya in furtherance of weighty and legitimate interests. In UCSF's view, Marya's thread about "Zionist doctors" promoted "'racist' and 'antisemitic' 'conspiracy theor[ies],'" FAC ¶ 43; Heckenlively Decl., Ex. A, at 1, which would violate the Faculty Code of Conduct's prohibition against faculty engaging in "[d]iscrimination, including harassment," against their colleagues "on political grounds, or for reasons of race" or "religion," Heckenlively Decl., Ex. H, at 7. UCSF tried to respond to Marya's thread by issuing a statement making clear that her views conflicted with its mission to "ser[ve]

every individual," regardless of their personal characteristics.  Heckenlively Decl., Ex. C, at 1; *id.*, Ex. D, at 3; *id.*, Ex. E, at 8.  But then Marya's subsequent post suggesting UCSF students were "concerned" about another student because he was "from Israel" compounded the problem, running afoul of the Faculty Code of Conduct's prohibition on discrimination and harassment of UCSF students.  FAC ¶ 49; Heckenlively Decl., Ex. B, at 2; *id.*, Ex. H, at 5.  UCSF reasonably feared that if it did not respond to or express disapproval of Marya's views, it would fail to live up to its commitment to inclusivity and its responsibility to provide a safe learning environment for all.  *See Hernandez*, 43 F.4th at 976 ("[G]overnment employers have a strong interest in prohibiting speech by their employees that . . . undermines the employer's mission.").  Taking action was also compatible with UCSF's legal obligations to ensure an environment free from discrimination and harassment.[10]

The considerations that led UCSF to issue the letter of censure easily outweigh Marya's interests in engaging in racist stereotyping and harassing other members of the UCSF community without reproach from her employer.  Under the circumstances, Marya's interest in her expression was minimal.  Her public statements conveyed prejudiced tropes and expressed hostility toward a student based on his federally protected status.  UCSF does not "face a particularly onerous burden to justifying disciplining" Marya for expression that "occup[ies]" such a "low[] rung on the First Amendment hierarchy."  *Hernandez*, 43 F.4th at 979.  What is more, the letter of censure was neither severe nor restrictive.  It countered speech with speech; it carried no penalties; and it did not constrain Marya's ability to continue to express her views.  UCSF's legitimate interests as an employer provide more than adequate justification for its decision to issue this restrained response.

---

[10] Indeed, relevant federal civil rights guidance encourages schools to convey their opposition when confronted with speech that could be understood to express derogatory opinions about members of a protected group.  *See* U.S. Dep't of Educ., Off. of the Assistant Sec'y for C.R., *Dear Colleague Letter* (2024), https://www.ed.gov/media/document/colleague-202405-shared-ancestrypdf-35100.pdf (counseling that a university has "a number of tools for responding" to harassing speech, such as "communicat[ing] its opposition to stereotypical, derogatory opinions").

**D.** **Regardless of Whether Marya's Claims Are Reviewable, She Fails to State a Claim.**

Even if Marya could obtain review of all of the conduct alleged in the FAC, her First Amendment retaliation claim would still be subject to dismissal. She appears to predicate her claim on the suspension of her clinical privileges and her dismissal. FAC ¶¶ 77-79. But she cannot state a claim based on the suspension of her privileges because she does not—and cannot—allege that Defendants were responsible for that action. And Marya's challenge to her termination fails because, like the letter of censure, her firing was justified.

**1.** **Defendants Did Not Suspend Marya's Clinical Privileges.**

Marya cannot hold Defendants responsible for suspending her clinical privileges. The FAC pleads that, on October 1, 2024, the "UCSF Executive Medical Board," which oversees UCSF's medical staff, briefly suspended her clinical privileges on the ground that she posed a "possible imminent danger." FAC ¶ 55. But the medical staff is a "separate legal entity" from The Regents. *See Hongsathavij v. Queen of Angels/Hollywood Presbyterian Med. Ctr.*, 62 Cal. App. 4th 1123, 1130 n.2 (1998). Under California law, it is "self-governing" and "independently responsible . . . for policing its member physicians." *Id.* Accordingly, even if The Regents were a proper defendant in this § 1983 suit, *see supra*, at p. 6, and even if Marya had standing to challenge the suspension of her clinical privileges, *see supra*, at pp. 9-11, she could not hold The Regents liable for that action. And because Marya does not plead that any named Defendant is a member of the medical staff's Executive Medical Board or otherwise participated in the decision to suspend her privileges, she cannot bring a retaliation claim against the individual Defendants on this basis either. As a result, any claim predicated on her suspension fails.

**2.** **Marya's Termination Does Not Give Rise to a Retaliation Claim.**

As explained above, Marya's allegations about all but two instances of her social media activity are far too vague to plausibly plead that the First Amendment protected her speech. *See supra*, at pp. 14-15. And as to those posts, the *Pickering* balancing test confirms that UCSF's response was warranted, even assuming that this Court can consider Marya's termination.

In its capacity as an employer, UCSF had a substantial interest in disciplining Marya in

ways that went beyond the letter of censure.  Namely, the institution had powerful interests in promoting "close working relationships among co-workers" and promoting "trust and confidence" among the "communities [it] serve[s]."  *Hernandez*, 43 F.4th at 976, 981.  Marya's social media activity interfered with those priorities.  Most immediately, her critique of "Zionist doctors" would cause UCSF to question Marya's ability to collaborate with other physicians at the hospital.  And her statement casting aspersions on a student on the ground that he was "from Israel" would likely cause concern that she may not be able to work with medical students or engage with her colleagues and her patients in a fair and unbiased manner.  The termination of Marya's employment removed her from those settings and assured her colleagues and students that her harassing statements would not be tolerated, comforting those members of the community who undoubtedly felt marginalized by or unsafe because of Marya's statements and promoting harmony within the UCSF community.

UCSF also had compelling reasons to fear that Marya's ongoing affiliation with the institution would disrupt its operations.  *See Hernandez*, 43 F.4th at 976 (the State has a substantial interest in ensuring the "effective functioning of [its'] operations").  The FAC acknowledges clashes at Columbia University between Israeli military veterans and pro-Palestinian students, FAC ¶ 50, such that it was reasonable for UCSF to anticipate that a professor's speculation that a student had engaged in genocide based solely on his country of origin might contribute to similar unrest or even physical conflict.  And UCSF knew from experience that the backlash against Marya's posts had a real capacity to provoke vitriol and disruption.  Prior statements had unleased a "maelstrom of hate mail" more than once. *Id.* ¶¶ 33, 43.  UCSF was justified in fearing her January 2024 and September 2024 posts would exacerbate the problem—as they ultimately did.  *Id.* ¶¶ 40, 57; *see Damiano v. Grants Pass Sch. Dist. No. 7*, 140 F.4th 1117, 1138 (9th Cir. 2025) (noting that "a government employer's prediction of future disruption" is more convincing "if some disruption has already occurred").  Severing ties with Marya necessarily put a stop to these repeated disruptions, as UCSF's notice of intent to impose

NOTICE OF MOTION AND MOTION TO DISMISS FAC

discipline reflects.  *See* Heckenlively Decl., Ex. F, at 1-3.[11]

Terminating Marya's employment effectively furthered the interests reflected in the letter of censure.  As explained above, the letter of censure combatted violations of UCSF's anti-discrimination policies, promoted its mission, and complied with its legal obligations.  *See supra*, at pp. 16-17.  Firing Marya advanced those same interests.  And it did so even more comprehensively, because Marya's termination conveyed to every member of the community that UCSF is dedicated to serving all comers, regardless of their personal characteristics or political views.  That public corrective action not only honored UCSF's mission, but also ensured the institution's full compliance with the federal civil rights laws.  As the U.S. Department of Education has cautioned, "[t]he fact that harassment may involve conduct that includes speech . . . does not relieve a school of its obligation to respond under Title VI . . . if the harassment creates a hostile environment in school for a student or students."  *See* U.S. Dep't of Educ., Off. of the Assistant Sec'y for C.R., *Dear Colleague Letter* (2024), https://www.ed.gov/media/document/colleague-202405-shared-ancestrypdf-35100.pdf.  A school should respond to such harassment by taking "steps to establish a welcoming and respectful school campus," such as "making clear that the school values, and is determined to fully include in the campus community, students of all races, colors and national origins."  *Id.*  By terminating Marya's employment, UCSF forcefully rebuked Marya's harassment of her students and colleagues and complied with that directive.

As a result, even at this early stage in the case, the FAC demonstrates that UCSF's legitimate interests as an employer outweighed Marya's far more limited interest in publicly speculating that a student was directly involved in perpetrating genocide based on that student's national origin and accusing "Zionist doctors" of justifying genocide.  UCSF has few, if any, more significant interests than "maintaining a relationship of trust" with its students, patients, and the public.  *Locurto v. Giuliani*, 447 F.3d 159, 183 (2d Cir. 2006).  And while Marya has a right to engage in protected expression, she does not have a right to willfully undermine those interests

---

[11] The FAC incorporates UCSF's notice of intent to impose discipline by reference because Marya "refers extensively" to it and it is part of the "basis" for her retaliation claim.  *See Ritchie*, 342 F.3d at 908; FAC ¶¶ 62, 64.

NOTICE OF MOTION AND MOTION TO DISMISS FAC

while maintaining her employment.  As a result, the First Amendment did not prevent UCSF from disciplining Marya for her posts, and she fails to state a claim for unconstitutional retaliation.

### E.     Marya's Claims Fail Even if Defendants are Sued in Their Personal Capacities.

Although the FAC remains unclear about whether Marya brings official-capacity or personal-capacity claims against the individually named Defendants, it must be dismissed regardless.  The arguments laid out above would defeat any-personal-capacity claims, too. Moreover, any personal-capacity claim against Defendants Lucey, Wachter, Tsugawa, Alldredge, and Ha must be dismissed for the independent reason that the FAC fails to plead these individuals were personally involved in a constitutional violation.[12]

Section 1983 does not create liability for "mere bystander[s]."  *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (citation and internal quotation marks omitted).  To state a claim for relief under § 1983 against a particular defendant in his or her personal capacity, a plaintiff must plead that the individual was personally involved in the alleged constitutional violation.  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

As this Court recognized in its Order, nothing in Marya's Complaint came anywhere close to suggesting that any named official personally retaliated against Marya or was an "integral participant" in the same.  *Peck*, 51 F.4th at 889; Order ¶ 4.  The FAC is no improvement.  With respect to Defendants Tsugawa and Alldredge, Marya has not added a single allegation.  To the contrary, she actually deleted the only allegation the Complaint made about Alldredge; the FAC no longer even asserts he was employed at UCSF during the relevant time period.  Accordingly, any personal-capacity claims against Tsugawa and Alldredge must be dismissed once again.

The FAC does add an allegation about Defendant Ha, but to no avail.  The addition relates to the January 2024 social media thread that questioned the competence of "'Zionist' doctors." Several days after Marya posted that thread, UCSF issued its statement criticizing the "tired and familiar racist conspiracy theory" that "'Zionist' doctors" are a threat to their patients and the U.S.

---

[12] Any personal-capacity claim against Defendant Hawgood fails for the reasons described above, *see supra*, at pp. 7-21, but not for lack of alleged personal participation.

NOTICE OF MOTION AND MOTION TO DISMISS FAC

healthcare system.  Heckenlively Decl., Ex. C, at 1; *id.*, Ex. D, at 2; *id.*, Ex. E, at 4; FAC ¶ 43.  The FAC now alleges that Ha was one of the individuals who "shared" UCSF's response on social media.  FAC ¶ 72.  But Ha's criticism of Marya does not qualify as an adverse employment action.  As explained at length above, a state official's own speech cannot be "construe[d] as 'adverse action'" for retaliation purposes.  *O'Handley*, 62 F.4th at 1163; *see supra*, at pp. 12-13.  Indeed, this Court already implicitly held as much when it dismissed the original Complaint's individual-capacity claims against Defendant Wachter notwithstanding the allegation that he played a role in issuing the same statement.  *See* Order ¶ 4 (dismissing claims against individual Defendants for failure to plead personal involvement); Compl. ¶ 42 (intimating Wachter had a hand in issuing the responsive statement); Mot. to Dismiss 18 (arguing Wachter's speech was not an adverse action).[13]

Marya also continues to fail to state a claim against Wachter.  The only new allegation about Wachter in the FAC asserts that after Marya was placed on administrative leave, Wachter "began maliciously contacting other members of the community, soliciting examples, which were not forthcoming, of Dr. Marya harming patients," in order to develop a "pretext that UCSF could advance to deny that her suspension was retaliatory."  FAC ¶ 73.  But it is unclear why Marya has included this allegation.  To the extent she meant to show that Wachter played a role in her administrative leave, she has not succeeded.  Allegations about what he did after the fact do not plausibly plead that Wachter had any involvement in the decision to place her on leave.  *See Peck*, 51 F.4th at 889 (to be personally liable, an official must be at least an "'integral participant' in the unlawful act").

Any claim against Defendant Lucey remains deficient as well despite the two new allegations about Lucey.  First, Marya levies the baseless accusation that Lucey falsely told Marya that Alan Dershowitz planned to sue her to discourage Marya from participating in a speaking event.  FAC ¶ 70.  Separately, the FAC also asserts that Lucey called Marya to ask her questions

---

[13] The same paragraph of the FAC also alleges that, like Ha, Wachter and Lucey "shared" UCSF's response on social media.  FAC ¶ 72.  The allegation is just as lacking as to Wachter and Lucey as it is as to Ha.

about her social media activity. *Id.* ¶ 71. But both allegations are about events in 2023—months before Marya's January and September 2024 social media posts. As a result, neither amounts to actionable retaliation. *Moore v. Garnand*, 83 F.4th 743, 747 n.4 (9th Cir. 2023) (plaintiff cannot establish protected activity motivated retaliation when adverse action predated protected activity).

The problems do not stop there. Marya's allegation about the manufactured Alan Dershowitz lawsuit is also untimely. Those events allegedly occurred in February 2023, more than two years before Marya filed suit in June 2025, and outside the limitations period. *See Thomas v. County of Humboldt*, 124 F.4th 1179, 1191 (9th Cir. 2024) (two-year statute of limitations applies to § 1983 claims in California). Meanwhile, Marya's allegation that Lucey called to discuss Marya's social media activity fails on the merits. A tense conversation with a supervisor is not sufficiently adverse to give rise to a First Amendment claim. *See Nunez*, 147 F.3d at 875 ("Mere threats and harsh words are insufficient [for a retaliation claim].") This Court dismissed Marya's claim against Lucey in the prior round of briefing, notwithstanding the fact that a nearly identical allegation about Lucey appeared in the original Complaint. *See* Compl. ¶ 31.

In short, the FAC offers nothing to alter this Court's conclusion that Marya has failed to allege that Defendants Lucey, Wachter, Tsugawa, Alldredge, or Ha was personally involved in retaliating against her for her protected speech. Accordingly, any personal-capacity claim against these Defendants must once again be dismissed.

## V.     CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6).

DATED: March 2, 2026                    MUNGER, TOLLES & OLSON LLP


By:     */s/ Bryan H. Heckenlively*
         BRYAN H. HECKENLIVELY
         Attorneys for Defendants

NOTICE OF MOTION AND MOTION TO DISMISS FAC