Mark Kleiman (SBN 115919)
KLEIMAN / RAJARAM
12121 Wilshire Boulevard, Ste. 810
Los Angeles, CA 90025
Telephone: (310) 392-5455
Facsimile:  (310) 306-8491
Email: mark@krlaw.us

Jonathan D. Wallace  (SBN 1733537)
P.O. Box 728
Amagansett, N.Y. 11930
Telephone:  (917-359-6234
Email:  jonathan.wallace80@gmail.com
*Admitted pro hac vice*

WADE MCMULLEN (SBN 5308747)
1901 Pennsylvania Avenue NW, Suite 900
Washington, DC 20006
Tel: (202) 649-0080
Email: wademc@protonmail.com
*pro hac vice admission forthcoming*

Attorneys for Plaintiff
RUPA MARYA, M.D.

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUPA MARYA, M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA; SAM HAWGOOD; CATHERINE LUCEY; ROBERT WACHTER; TRACY TSUGAWA; BRIAN ALLDREDGE; WON HA; AND DOES 1-20,<br><br>Defendants. | Case No.: 3:25-cv-04716-MMC<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**Date:   May 22, 2026**<br>**Time:  9:00 a.m.**<br>**Judge: Hon. Maxine M. Chesney**<br>**Courtroom: 7** |

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ 3

MEMORANDUM OF POINT AND AUTHORITIES .............................................. 6

Point One
DR. MARYA PLAUSIBLY PLEADS VIEWPOINT DISCRIMINATION
AND RETALIATION ................................................................................................. 6

Point Two
DEFENDANTS IMPROPERLY ASK THIS COURT TO RESOLVE
DISPUTED FACT ISSUES ON A 12(B)(6) MOTION ............................................. 11

Point Three
DR. MARYA PROPERLY  REQUESTS PROSPECTIVE INJUNCTIVE
RELIEF, AN EXCEPTION TO ELEVENTH AMENDMENT IMMUNITY ......................... 13

Point Four
DR. MARYA WAS NOT REQUIRED TO BRING A 1094.5 PETITION .............................. 16

Point Five
THE REGENTS CANNOT ESCAPE LIABIITY FOR RETALIATION
BY OUTSOURCING IT TO THE MEDICAL STAFF ............................................................ 20

CONCLUSION.......................................................................................................... 21

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

## Cases

Abels v JBC Legal Group, P.C. 434 F Supp 2d 763 (ND Cal 2006) ........................................ 12

Acosta v. Brain, 910 F.3d 502 (9th Cir.) 2018) ......................................... 20

Akella v. Regents of the Univ. of Cal., 2023 Cal. App. Unpub. LEXIS 1660 ......................... 18

Am. Assn. of Univ. Professors v Rubio 802 F Supp 3d 120 (D Mass 2025) .......................... 8

Austin v Univ. of Oregon 925 F3d 1133 (9th Cir 2019) ....................................... 20

Bell Atl. Corp. v Twombly 550 US 544 (2007) .......................................... 11,12,13,19

Boquist v. Courtney 32 F.4th 764 (9th Cir. 2022) .................................... 6

Callan v NY Community Bank 643 F App'x 666 (9th Cir 2016) .............................. 14

Canel v Art Inst. of Chicago 2025 US Dist LEXIS 30309 ........................................ 8
(ND Ill Feb. 20, 2025, No. 23 CV 17064)

Christenfeld v. Regents of the Univ. of Cal., 2022 Cal. App. Unpub. LEXIS 6853 ................. 17

Cornelio v. Connecticut 32 F.4th 160 (2d Cir. 2022) .................................... 13

Desmond v. Contra Costa County (1993) 21 Cal.App. 4th 330 ……………………………… 17

Doe v Regents of the Univ. of California 891 F3d 1147 (9th Cir 2018) ........................ 16,17,20

Duax v. Kern Cmty. Coll. Dist., (1987) 196 Cal. App. 3d 555 .................................. 18

Durnford v. MusclePharm Corp, 907 F.3d 595 (9th Cir. 2018) .................................... 6

Freeman v City of Port Hueneme 800 F App'x 562 (9th Cir 2020) ......................... 18

Gerwaski v Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.,
2025 US Dist LEXIS 84645, (D Nev May 5, 2025, No. 2:24-cv-00985-APG-MDC) ............... 8

Hemme v Airbus 2010 US Dist LEXIS 31920 (ND Ill Apr. 1, 2010, No. 09 C 7239) ............. 12

Houston Community Coll. Sys. v Wilson 595 U.S. 468 (2022) ............................. 9

Jamgotchian v Ferraro 93 F.4th 1150 (9th Cir 2024) ..................................... 16,17,18

Kelly v Hegseth 2026 US Dist LEXIS 29709 (DDC Feb. 12, 2026.......................... 15
No. 26-81 (RJL))

K.J. v Jackson 127 F.4th 1239 (9th Cir 2025) ....................................... 13

Landau v. Corp. of Haverford Coll. No. 24- 2044
2025 U.S. Dist. LEXIS 1402 (E.D. Pa. Jan. 6, 2025) .......................................... 8

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT

Mathews v Verizon Communs. Inc. 2020 US Dist LEXIS 158270
(DNJ Sep. 1, 2020, Civil Action No. 19-21442)................................................................ 13

Matter of Leff v. Our Lady of Mercy Acad. 150 A.D.3d 1239
55 N.Y.S.3d 392(App. Di v. 2nd Dept.......................................................................... 10

Mizzou Students for Just. in Pal. V Choi
2025 US Dist LEXIS 223592 (WD Mo Sep. 19, 2025, No. 25-cv-04184-SRB) ...................... 8

Moore v Shinn 2026 U.S. App. LEXIS 5727 (9th Cir Feb. 26, 2026, No. 23-15302) .............. 20

Newman v. Point Park Univ, No. 2:20-cv-00204
2022 U.S. Dist. LEXIS 60722 (W.D. Pa. Mar. 31, 2022) ....................................................... 8

Nicholas v Mason 2023 US Dist LEXIS 236719
(DNH Dec. 28, 2023, No. 23-cv-196-LM-A]).................................................................... 13

Patsy v Bd. of Regents 457 US 496 (1982) ............................................................................ 17

Reyn's Pasta Bella, LLC v Visa USA, Inc, 442 F3d 741 (9th Cir 2006) ................................. 14

Pomona Valley Hosp. Med. Ctr. v. Superior Court, 55 Cal. App. 4th 93, 109 (1997) ............... 17

Romero v Trib. Media Co. 2025 US Dist LEXIS 51749
 (ED Cal Mar. 19, 2025, No. 2:24-cv-3143 AC).................................................................... 12

Saad v. City of Berkeley (1994) 24 Cal.App.4th 1206 ............................................................. 17

Scott v. Sandford 60 U.S. 393 (1857) ………………………………………………………… 9

StandWithUs Ctr. for Legal Just. v Massachusetts Inst. Of Tech.
2025 U.S. App. LEXIS 27390 (1st Cir Oct. 21, 2025, No. 24-1800)....................................... 7

Staub v. Proctor Hosp., 562 U.S. 411 (2011) ...................................................................... 20

Students for Just. in Palestine v Abbott, 756 F Supp 3d 410 (WD Tex 2025) .......................... 9

Sussman et al v. Massachusetts Institute of Technology et al
1:25- cv-11826-RGS (D Mass 2025)....................................................................................... 7

United States v. Stone, 215 F. App'x 601 (9th Cir. 2006), ....................................................... 20

United States v. Utah Constr. & Mining Co. 384 US 394 (1966) ............................................. 18

Univ. of Maryland Students for Just. in Palestine v
Bd. of Regents of the Univ. Sys. of Maryland
2024 US Dist LEXIS 178359 (D Md Oct. 1, 2024, No. 24-2683 PJM).................................... 9

Vinueza v. NYU (New York Supreme Court
New York County 2024, Index: 158944-2024 Doc. # 43) ...................................................... 10

Watison v. Carter 668 F.3d 1108 (2012) ................................................................................ 6

4

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT

Wooley v Ygrene Energy Fund, Inc.
2017 US Dist LEXIS 183677 (ND Cal Nov. 4, 2017, No. 17-cv-01258-LB) .......................... 12

Yakoby v Trustees of the Univ. of Pennsylvania
2025 US Dist LEXIS 103709 (ED Pa June 2, 2025, No. 23-4789)......................................... 7

**English Judicial Authority**

*Byrne v. Boadl*e, 159 Eng. Rep. 299 (Exch. 1863) …………………………………………… 15

**United States Constitution**

Article III ............................................................................................................... 15

First Amendment ............................................................................................... *passim*

Eleventh Amendment.......................................................................................13,16

**Federal Statutes**

42 U.S.C. Section 1983.....................................................................................16,17,18

42 U.S.C. Section 2000d (Title VI) ................................................................ 7

Fed.R.Civ.Proc. 12(b)(6)................................................................................. 6

**California**

Business and Professional Code Section 805 .......................................................... 14
Code of Civil Procedure Section 1094.5 ……………………………………………………16,17

**Articles**

Editorial Board, "Trump's Hypocrisy on Religious Freedom",
The New York Times March 19, 2026 https://www.nytimes.com/2026/03/19/
opinion/anti-muslim-islamophobia-trump-republicans.html?unlocked_article_code=
1.UVA.MT80.jZTu_VGNA1DZ.................................................................................. 12

Medical Board of California FAQ, "What events must be reported to the Board?"
https://www.mbc.ca.gov/FAQs/ ............................................................................. 14

Palestine Legal and the Center for Constitutional Rights,  "The Palestine Exception
to Free Speech" (2015) https://palestinelegal.org/the-palestine-exception............................... 10

Liam Stack, Tracey Tully, and William K. Rashbaum  "Man Tied to
 Pro-Israel Extremists Accused of Targeting Palestinian Activist",
The New York Times, March 26, 2026  https://www.nytimes.com/
2026/03/27/nyregion/nerdeen-kiswani-assassination-plot.html ............................................ 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

In her First Amended Complaint, Plaintiff plausibly alleges with sufficient specificity that the University of California retaliated against her for her First Amendment-protected pro-Palestinian speech, by suspending her from medical practice, launching groundless investigations one after another each with its own complex rules and requirements and time-consuming preparation to justify her exercise of Constitutional rights; then finished its project of preventing her from carrying on her profession by terminating her employment and issuing a ten year letter of censure.

Defendants nevertheless move to dismiss, alleging that the Complaint fails to state a cause of action under F.R.C.P. 12(b)(6).

**Point One**

**PLAINTIFF PLAUSIBLY PLEADS VIEWPOINT DISCRIMINATION**

**AND RETALIATION**

Plaintiff's First Amendment claim is pled with sufficient specificity to survive a 12(b) motion. "[D]irect evidence of retaliatory intent rarely can be pleaded in a complaint" and therefore "allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Courts therefore accept general allegations about protected speech as long as they provide adequate notice under Rule 8. Allegations about the general nature of plaintiff's political statements are sufficient without requiring detailed transcripts or exact quotations. (*Boquist v. Courtney*, 32 F.4th 764, 784 (9th Cir. 2022).)

Defendants' argument that its actions against Dr. Marya were justified should be raised at trial, not in a motion to dismiss, being of the nature of an affirmative defense. An "affirmative defense is grounds to dismiss [Plaintiff's] claim only if [the] complaint, on its face, 'admits all the ingredients' of the defense." Where "the defendants' affirmative defense is not apparent as a matter of law from the face of the complaint [it] is therefore not grounds for dismissal at the pleading stage." *Id.*, 784-785 (citing *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018)).

Defendants allege at page two of their brief: "Marya took to the Internet to accuse a UCSF student of having participated in genocide' merely because he was 'from Israel' and to assert that 'Zionist doctors' are a threat to their patients. She can hardly object that UCSF officials had views on these topics, too, and powerful reasons to rebuke her conduct via a letter of censure, not the least of which is the institution's commitment to ensuring a safe and inclusive environment for every student, faculty member, and patient." As a matter of law, they are acknowledging, though they don't seem to realize it, that Dr. Marya was unjustly punished for First Amendment protected speech. They also heavily imply that anti-Zionism is the same as antisemitism, though they never quite say so.[1]

This won't wash. Federal courts everywhere are recognizing that members of academic communities do not commit acts of antisemitism by criticizing Israel or standing up for the Palestinian people, *StandWithUs Ctr. for Legal Just. v Massachusetts Inst. Of Tech.,* 2025 U.S. App. LEXIS 27390, at *18 (1st Cir Oct. 21, 2025, No. 24-1800) ( "Most of the conduct about which plaintiffs complain is speech protected by the First Amendment, and we do not construe Title VI as requiring a university to quash protected speech"); *Sussman et al v. Massachusetts Institute of Technology et al ,* 1:25- cv-11826-RGS (D Mass 2025) Docket No. 75, 1/5/2026 ("But the court sees no basis on which to distinguish the First Circuit's conclusion that anti-Israeli sentiment is not, without more, antisemitic messaging"); *Eyal Yakoby v Trustees of the Univ. of Pennsylvania,* 2025 US Dist LEXIS 103709, at *18-19 (ED Pa June 2, 2025, No. 23-4789) ("At worst, Plaintiffs accuse Penn of tolerating and permitting the expression of

---

[1] What actually happened is quite different from Defendant's mischaracterization. As pled at ¶49: "[S]everal UCSF medical students approached Dr. Marya and shared that they were concerned for their safety around a new classmate who told them he had just come from Israel. Because of the mandatory military service there and the fact that Israel allows non-citizens to serve in its military, the students were concerned that this person may have been directly involved in the ongoing genocide of the Palestinian people. UCSF provided no transparency or process to bring this student into the community respecting the safety of others. By that time some UCSF faculty, students and staff had lost upwards of 60 family members in the genocide in Gaza. Remarkably, there is now no record of a first-year medical student who had just come from Israel, leaving those involved to wonder whether this entire contretemps had been manufactured."

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT

viewpoints which differ from their own"); *Landau v. Corp. of Haverford Coll.,* No. 24- 2044, 2025 U.S. Dist. LEXIS 1402, at *4-5 (E.D. Pa. Jan. 6, 2025) ("Plaintiffs seek[] to blur the line between Zionism as a political philosophy and Zionism as a component of Jewish identity, and in the process implicitly sweep any and all criticism of Israel into the basket of antisemitism. As a threshold matter,....I reject Plaintiffs' embedded proposition that any anti- Israel speech is intrinsically antisemitic, because reasonable people acting in good faith can challenge decisions of the Israeli government without harboring antisemitic views")*; Am. Assn. of Univ. Professors v Rubio,* 802 F Supp 3d 120, n 17 (D Mass 2025) ( "Criticisms of the State of Israel are not anti-Semitism, they're political speech, protected speech"); *Canel v Art Inst. of Chicago,* 2025 US Dist LEXIS 30309, at *24-25 (ND Ill Feb. 20, 2025, No. 23 CV 17064) ("[T]he banners and flyers reflect political points of view critical of the Israeli government.... From these allegations...the Court cannot also conclude that the banners and flyers represent discriminatory harassment of plaintiff on the ground of her Jewish or Israeli identities"); *Gerwaski v Nevada ex rel. Bd. of Regents of the NV Sys. of Higher Educ.,* 2025 US Dist LEXIS 84645, at *21-22 (D Nev May 5, 2025, No. 2:24-cv-00985-APG-MDC) ("As pleaded, AMP and SJP-UNLV's conduct alleged in the FAC is protected by the First Amendment"); *Newman v. Point Park Univ.,* No. 2:20-cv-00204, 2022 U.S. Dist. LEXIS 60722, at *78-79 (W.D. Pa. Mar. 31, 2022) ("Despite the sensitive and important the issues these conflicting viewpoints and actions raise, as an overarching matter, such debates... have been recognized to fall within First Amendment protections when efforts have been advanced to limit or impair such advocacy...Against that backdrop, Plaintiff  has not shown that Defendant has subjected her to an objectively hostile work environment by its not suppressing, or otherwise protecting Plaintiff from, the personal views and academic interests of some of Defendant's professors and students related to these geopolitical topics").

Federal courts have denied motions to dismiss and granted preliminary injunctions in cases substantially similar to this one, in which plaintiffs of color were punished for supporting the people of Gaza,  *Mizzou Students for Just. in Pal. v Choi,* 2025 US Dist LEXIS 223592, at *24 (WD Mo Sep. 19, 2025, No. 25-cv-04184-SRB) ("MSJP must be permitted to participate in

the 2025 Homecoming Parade"[2]); . *Students for Just. in Palestine v Abbott,* 756 F Supp 3d 410, 427 (WD Tex 2024) ("Appropriate relief will focus on eliminating the connection between the university policies, GA-44's definition of antisemitism, and the IHRA's examples of antisemitism, because it is that connection that chills Plaintiffs' speech"); *Univ. of Maryland Students for Just. in Palestine v Bd. of Regents of the Univ. Sys. of Maryland,* 2024 US Dist LEXIS 178359, at *39 (D Md Oct. 1, 2024, No. 24-2683 PJM) ("SJP's Motion for Preliminary Injunction will be GRANTED").

The undersigned believes that Defendants' complacency in making arguments of this character betrays an endemic, systemic racism against Muslim and Arab litigants[3] that has infected much of the national bar. Although, as shown by the string cite above, federal courts have mainly been exemplary in protecting the rights of these parties, some courts have been susceptible to the arguments routinely made by defense counsel that any facts pled by Muslim or Arab plaintiffs are "speculative" or "conclusory", and that claims of Islamophobia are "implausible" (as if there were no such thing in American society). Although "everyone is entitled to a defense" and counsel have an ethical duty to zealously represent their clients, we hope for a day where what is so clear to us will be clear to even them, that, run through the English-to-English translator, assertions that allegations of Islamophobia are implausible translates into the assertion that "Arabs and Muslims are bad, dangerous people, and have fewer rights that the White man is bound to respect". *Scott v. Sandford* 60 U.S. 393 407 (1857).

In other words, among a large section of the bar, and in some courts, it is still Mississippi in 1964, but few people have noticed it yet.

UCSF's citation of *Houston Community Coll. Sys. v Wilson,* 595 U.S. 468, 478 (2022), exemplifies the double standard. That case involved the question of whether the courts should intervene under First Amendment on behalf of either of two equal parties criticizing each other,

---

[2]  Apparently if Dr. Marya was a faculty member at Missouri, she would have the right to carry a banner in the homecoming parade criticizing the university for complicity in genocide, but because she worked at UCSF, she is now unemployed.

[3]  And their supporters, like Dr. Marya, who is Sikh.

to rule that either one had infringed the other's First Amendment rights. Plaintiff was a college trustee, defendant the board of trustees. After years of verbal attacks by him on the system, the system attacked him back, via a resolution of censure which had no other life impact: it did not cost him employment or make him a pariah. "Everyone involved was an equal member of the same deliberative body. As it comes to us, too, the censure did not prevent Mr. Wilson from doing his job, it did not deny him any privilege of office, and Mr. Wilson does not allege it was defamatory. At least in these circumstances, we do not see how the Board's censure could have materially deterred an elected official like Mr. Wilson from exercising his own right to speak", *Id.* at 479.

UCSF astonishingly claims that this holding applies to a situation in which a weaker speaker, Dr. Marya, was terminated from her job, and is probably now unemployable in the United States. Yes, that's just the same! Run through the English-to-English translator, the following emerges: "When UCSF utters or privileges pro-Zionist speech, and Dr. Marya utters anti-Zionist speech, Dr. Marya loses".

Undersigned counsel could spend pages discussing scores of cases in which decisions granting motions to dismiss against Muslim and Arab plaintiffs are informed and motivated by endemic racism and double standards.[4] In *Vinueza v. NYU,* (New York Supreme Court, New York County 2024, Index: 158944-2024 Doc. # 43) the Plaintiff, an NYU student, was told that she would receive a written reprimand for an act of pro-Palestinian expression, but was instead placed on probation with very punitive conditions via an email which admitted that a "stakeholder" had intervened. The student petitioned the court for pre-complaint discovery simply to determine the identity of the stakeholder. Judicially supervised prefiling discovery is permitted under Section 3102 of New York's Civil Practice Law and Rules for expressly this purpose. *Matter of Leff v. Our Lady of Mercy Acad.,* 2017 NY Slip Op 04280, 2, 150 A.D.3d 1239, 1240-41, 55 N.Y.S.3d 392, 394-95 (App. Div. 2nd Dept.)The judge, dismissing the

---

[4]  See the early and prescient white paper, Palestine Legal and the Center for Constitutional Rights, "The Palestine Exception to Free Speech" (2015) https://palestinelegal.org/the-palestine-exception

petition, gratuitously held that the prospective action, which was not yet drafted or filed so therefore not before him, was "nonmeritorious" and that Ms. Vinueza's attempt to find out which billionaire donor got her barred from campus and her own graduation, was a "fishing expedition".

This is a complex, nuanced, fact-intensive First Amendment case brought by a real human who is suffering intensely both as a remote witness to Gaza, and because she has been made a pariah for speaking out about it. From where we stand, she has more than satisfied *Twombly/Iqbal,* and hopes for the respect and consideration of getting to the discovery phase, knowing that she will still have to prove her claims on summary judgment and at trial.

**Point Two**

**<u>DEFENDANTS IMPROPERLY ASK THIS COURT TO RESOLVE</u>**

**<u>DISPUTED FACT ISSUES ON A 12(b)6) MOTION</u>**

Defendants do not conceal they are asking this Court to issue a ruling on the merits without discovery or trial. Their brief's Table of Contents itself signals many disputed fact issues inappropriate for resolution on a motion to dismiss: "The Letter of Censure Does Not Qualify as an Adverse Action....UCSF's Interests Justified the Letter of Censure....Defendants Did Not Suspend Marya's Clinical Privileges....Marya's Termination Does Not Give Rise to a Retaliation Claim".

Note that, consistent with Rule 12, the first point, for example,  could have been phrased either "The Letter of Censure Does Not Qualify As An  Adverse Action as a Matter of Law", or "Marya Fails to Plead the Necessary Elements of an Adverse Action". Clearly, Defendants could not make the first assertion consistent with Rule 11, and they have not chosen to make the second assertion. Instead, they are asking this Court to rule against Dr. Marya on the merits, which it cannot do.

Much of the wording of the Memorandum, itself also makes this clear. To begin with, much of the preliminary statement is testimony, for example, "The University of California, San Francisco ('UCSF'), is deeply committed to principles of academic freedom and free expression. At the same time, UCSF is dedicated to ensuring equal opportunity and an environment free

11

from harassment and discrimination based on race, sex, religion, shared ancestry, national origin, and other protected characteristics—as required by state and federal law." Dr. Marya's factual allegations show these statements are untrue, and she should be permitted discovery and cross-examination. Defendants expect this Court to take merely them on faith-- but it is the Plaintiff's assertions, not the defendants', which are deemed true for purposes of a motion to dismiss, *Bell Atl. Corp. v Twombly,* 550 US 544, 555 (2007).

Resolving disputed fact issues is, of course, highly inappropriate on a motion to dismiss, *Romero v Trib. Media Co.*, 2025 US Dist LEXIS 51749, at *11 (ED Cal Mar. 19, 2025, No. 2:24-cv-3143 AC) ("Whether plaintiff's understanding regarding his medical leave was accurate is a question of disputed fact that is not appropriate for consideration on a motion to dismiss"); *Wooley v Ygrene Energy Fund, Inc.*, 2017 US Dist LEXIS 183677, at *22 (ND Cal Nov. 4, 2017, No. 17-cv-01258-LB) ("The court denies the motion to dismiss. The disputed fact issues are better resolved at summary judgment"); *Abels v JBC Legal Group, P.C.*, 434 F Supp 2d 763, 766 (ND Cal 2006) ("[B]ecause application of both statutes involve issues of disputed fact, a Motion to Dismiss under Rule 12(b)(6) is inappropriate").

Asking the Court to rule on the merits on a 12(b)(6) motion significantly misinterprets the "plausibility"[5] standard of *Twombly* and *Iqbal, Hemme v Airbus,* 2010 US Dist LEXIS 31920, at *14 (ND Ill Apr. 1, 2010, No. 09 C 7239) ("Motorola misinterprets the plausibility standard of *Twombly* and *Iqbal* as an opportunity to make premature merits-based arguments

---

[5]  One would hope that courts would restrict themselves on 12(b)(6) motions to findings that an assertion in a complaint that "Defendant then teleported into Plaintiff's locked vault and destroyed the valuable art stored therein" is implausible. Instead, some attorneys are arguing, and some Courts are persuaded, that assertions of Islamophobia are as implausible as teleportation, because we all know that Muslim and Arab people and their supporters are not hated anywhere in the United States, Liam Stack, Tracey Tully, and William K. Rashbaum "Man Tied to Pro-Israel Extremists Accused of Targeting Palestinian Activist", *The New York Times*, March 26, 2026 https://www.nytimes.com/2026/03/27/nyregion/nerdeen-kiswani-assassination-plot.html; "The attacks against Islam and Muslims from Mr. Trump and other Republicans are shameful. They are filled with lies. They deserve denunciation from all Americans, regardless of politics or religion." ttps://www.nytimes.com/2026/03/19/opinion/anti-muslim-islamophobia-trump-republicans.html?unlocked_article_code=1.UVA.MT80.jZTu_VGNA1DZ

regarding Plaintiffs' claims at the pleading stage"); *Mathews v Verizon Communs. Inc.*, 2020 US Dist LEXIS 158270, at \*22-23 (DNJ Sep. 1, 2020, Civil Action No. 19-21442) ("[T]he Court agreed with the plaintiff that '[d]efendants have misinterpreted what is required at the pleading stage under Twombly'").

"The dismissal of a claim challenging a law that abridges protected speech will rarely, if ever, be appropriate at the pleading stage. Instead, factual development will likely be indispensable to the assessment of whether [such state action] is constitutionally permissible....Careful balancing of the need for the [action] against [its] constriction of first amendment rights is called for. Full development of the facts is essential for the court to strike this balance", *Cornelio v. Connecticut,* 32 F.4th 160, 172 (2d Cir. 2022); *Nicholas v Mason,* 2023 US Dist LEXIS 236719, at \*17 (DNH Dec. 28, 2023, No. 23-cv-196-LM-A]) ("[T]he norm is to wait until the summary judgment stage of the litigation to address the ultimate question of whether the [restriction] should stand").

**Point Three**

**<u>DR. MARYA PROPERLY  REQUESTS PROSPECTIVE INJUNCTIVE RELIEF, AN EXCEPTION TO ELEVENTH AMENDMENT IMMUNITY</u>**

The FAC asks for the following prospective injunctive relief: "(2) An order prohibiting the Regents from denying or otherwise infringing upon Plaintiff's medical staff privileges for her speech touching upon issues of public concern; (3) An order prohibiting the Defendants from publishing, distributing, referring to or otherwise disseminating or promoting the Letter of Censure; (4) An order directing the Defendants to withdraw and cancel the Letter of Censure; (5) An order directing the Defendants to refrain from any further act of retaliation against Dr. Marya for her First Amendment-protected speech."

Requests for prospective relief are an exception to Eleventh Amendment immunity, *K.J. v Jackson,* 127 F.4th 1239, 1251 (9th Cir 2025) ("The district court correctly held that expungement of information from school records was a form of prospective relief that K.J. could receive under the *Ex Parte Young* doctrine").

Defendants now urge this Court that Dr. Marya lacks standing to, or otherwise cannot challenge, the letter of censure. Most of these arguments impermissibly require the Court to resolve disputed fact issues, as the very headers in Defendants' Memorandum clearly indicate (""The Letter of Censure Was Justified").

Dr. Marya describes the ten year letter of censure issued against her at paragraphs 62-67 of the FAC:[6] "On April 28, 2025, UCSF Chancellor Sam Hawgood sent Dr. Marya a 'Notice of Intent to Impose Discipline' In this letter, Chancellor Hawgood threatened Dr. Marya with his intent to dismiss her from her employment with UCSF and to place a Letter of Censure in her Academic Personnel file for a period of ten years 'to express institutional rebuke for [Dr. Marya's] actions'. As justification for its proposed 'discipline,' the Notice cites Dr. Marya's First Amendment protected speech, including 'Dr. Marya's September 21, 2024 post on X.com,' Dr. Marya's disagreement 'with a colleague over a political or personal opinion,' 'Dr. Marya's statements,' 'Dr. Marya's tweets in the aggregate,' Dr. Marya's 'social media activity,' and Dr. Marya's actions as a whistleblower" (paragraph 62). UCSF then communicated its baseless unconstitutional censure of Dr. Marya to the Medical Board of California, via a "Health Facility/Peer Review Reporting Form (also known as an '805 Report')...asserting Dr. Marya was terminated 'for a medical disciplinary cause or reason'" (#66).

California *Business & Professions Code* §805 requires UCSF to report the censure letter to the California Medical Board, also <u>see</u> Medical Board of California FAQ, "What events must be reported to the Board?" https://www.mbc.ca.gov/FAQs/ [7] A copy of UCSF's 805 Report is attached the Heckenlively affidavit as Exhibit G (Docket # 55-1). [8]

---

[6]   The Letter of Censure was attached as Exhibit M to the Grote Declaration in support of the original Motion to Dismiss, but has not been submitted by Defendants on this motion.

[7]   This Court may take judicial notice, of *"matters of public record"*, *Reyn's Pasta Bella, LLC v Visa USA, Inc.,* 442 F3d 741, 746, n 6 (9th Cir 2006), and may do so *sua sponte, Callan v NY Community Bank*, 643 F App'x 666, 666 (9th Cir 2016).

[8]   Defendants attached the Letter of Censure to their original motion to dismiss, but have chosen to remove it from this one.

14

Defendants nonetheless argue, rather remarkably, that "Nothing in the FAC permits the inference that Defendants have plans to distribute the letter of censure. Indeed, Marya does not even allege that Defendants have taken any such action against her in the past." (Memorandum p. 8). This seems shockingly glib. Undersigned counsel vividly remembers *Byrne v. Boadle*, 159 Eng. Rep. 299 (Exch. 1863) from his first week of torts class in 1976, in which a barrel fell from a warehouse window onto the plaintiff's head. Did the defendant in that case actually write that "Nothing in the complaint permits the inference that a 500 pound barrel to the head causes any injury"? UCSF counsel well knows, or could have easily discovered from the client[9] that in the ecosystem of medical employment, a doctor must consent to the disclosure to every new employer of her private disciplinary file held by every other employer, and that hospital systems and medical school in fact believe that it would be an ethics violation, and expose them to liability, not to disclose a letter of censure.

Of course, even if UCSF could exercise discretion never to disclose the censure letter to any future prospective employer of Dr. Rupa, its mere disclosure to the California Medical Board would be sufficient for Article III standing[10] , *Kelly v Hegseth,* 2026 US Dist LEXIS 29709, at *31 (DDC Feb. 12, 2026, No. 26-81 (RJL))  ("The Letter of Censure could hardly be clearer: it is censuring him for 'engag[ing] in a sustained pattern of public statements' that criticized military operations as illegal and counseled military servicemembers to refuse illegal orders...Thus, Senator Kelly was reprimanded for exercising his First Amendment right to speak on matters of public concern").

---

[9]  If an attorney knows perfectly well, or could easily have discovered,  that a letter of censure has been disclosed to the Medical Board, and will be disclosed to future employers, then signs a brief stating that a complaint "creates no inference"" that any of these things could happen, has that attorney made a legally baseless claim?

[10]  Incidentally, if it was a completely private document never to trespass the boundaries of an internal client file to be seen by any outsider, why make it time out after 10 years? This seems to imitate a former California Medical Board requirement, that its own public letters of censure-- likely to be triggered by UCSF's mandatory report of its action against Marya-- are limited to ten years, in the hope that doctors will only stagger under their public burden for a decade, then have the ability to restart their careers and lives.

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiff has therefore plausibly and adequately alleged an exception to Eleventh Amendment immunity based on her request for prospective relief.

**Point Four**

**DR. MARYA WAS NOT REQUIRED TO BRING A 1094.5 PETITION**

Dr. Marya was not required to bring a 1094.5 mandamus petition, either in state Court or as part of her federal action for exhaustion of remedies   Although UCSF invokes *Doe v Regents of the Univ. of California,* 891 F3d 1147 (9th Cir 2018), it cannot be used here to bar her right to redress, nor does it as a basis for a preclusion argument or any other legal premises supporting dismissal.

The  *Doe* Plaintiff sought to include the mandamus claim in the federal action, then requested *In re Young* prospective relief only on the state law claim. The Court held that "the *Young* exception does not apply when a suit seeks relief under state law". *Doe* at *1153.*  The instant Complaint asserts only a single, Federal cause of action under the First Amendment, and qualifies for the *In Re Young* exception by requesting prospective injunctive relief on that claim alone.

As the Ninth Circuit insightfully noted in *Jamgotchian v Ferraro*, 93 F.4th 1150, 1156 (9th Cir 2024): "[A] [1094.5 federal claim]  exhaustion requirement springs an improper 'preclusion trap' for § 1983 plaintiffs, in which a [federal claim] plaintiff could not go to federal court without going to state court first, but if he went to state court and lost, his claims would be barred in federal court by preclusion doctrines."  "We have never held that an agency's jurisdiction-wanting non-decision has preclusive effect in a later § 1983 suit. Nor have we held that the failure to pursue state court review of such a non-decision precludes a corresponding § 1983 claim in federal court." *Id.*, at 1161

The Jamgotchian court's use of the phrase "non-decision" is also significant. Though the state agency in question rendered a decision, it acknowledged that it "did not, and could not, properly resolve  [First Amendment] issues"  *Id.*, at 1155. Thus, exhaustion of remedies was inapplicable where the administrative agency in effect offered no remedy in the first place.

16

*Doe* and the cases applying it, to the extent that (as Defendants argue) they stand for the proposition that state mandamus actions are required to be brought as to Constitutional claims before federal court jurisdiction is sought, fly in the face of *Patsy v Bd. of Regents,* 457 US 496, 516 (1982) that "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983". Besides the Court's reliance on the legislative history of Section 1983, another very strong basis for refusing to order a Constitutional plaintiff to pursue state remedies would of course be the "preclusion trap" described in *Jamgotchian, supra.*

The "preclusion trap" *Jamgotchian* warned of is uniquely present in the structure and Operation Section 1094.5, which was designed to "give great deference to administrative orders and findings.  It sets narrow limits on a party's ability to obtain a new administrative hearing and part of those limits include narrow limits on a party's ability to obtain a new administrative hearing, and part of those limits include  narrow restrictions on discovery and augmenting the administrative record. (*Pomona Valley Hosp. Med. Ctr. v. Superior Court*, 55 Cal. App. 4th 93, 109 (1997) reversing a trial court's decision to permit a fired doctor to obtain discovery.) Although Dr. Marya raises constitutional claims, in a 1094.5 mandamus the scope of review is tightly constrained.  Grounds for relief are limited to whether (a) admin exceeded its jurisdiction; (b) was there a 'fair trial' (with very grave limitations on how much process is due; and (c) prejudicial abuse of discretion w. 'abuse of discretion' limited to (i) admin not proceeding in a way that is <u>required by law</u>; (ii) decision not supported by findings; or (iii) findings not supported by the evidence, and "[t]he burden is on the petitioner to show that there is no substantial evidence whatsoever to support the findings of the board." <u>Saad v. City of Berkeley</u> (1994) 24 Cal.App.4th 1206, 1212, quoting <u>Desmond v. Contra Costa County</u> (1993) 21 Cal.App. 4th 330, 334-335.

Finally, (and somewhat perversely) teaching medicine at the University of California leaves Dr. Marya fewer rights than she would have teaching health education at a community college.  Under state law UC faculty do not have fundamental vested rights to employment because of the constitutional status of the Regents. *Christenfeld v. Regents of the Univ. of Cal.,*

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT

2022 Cal. App. Unpub. LEXIS 6853.  And even if there were such rights. there would be no independent review of the Regents' decision because the Regents' quasi-judicial powers are vested in them by the California Constitution. *Akella v. Regents of the Univ. of Cal.*, 2023 Cal. App. Unpub. LEXIS 1660[11]

Note that in an amoral environment disregardful of constitutional rights, the abrupt termination or expulsion of an annoying person of color, like Dr. Marya would hardly be considered arbitrary and capricious. The preclusion trap occurs whenever a state case which diminishes or refuses to consider a plaintiff's rights is then res judicata of a federal action raising them squarely.  First year law students learn that the very purpose of a federal court system was to avoid  relegating citizens of the United States to the tender mercies of local courts in matters regarding their federal rights. The process is best summed up by Leonard Cohen:  "Everybody knows the dice are loaded."  This is the principle animating *Jamgotchian's* recognition that such a *mandamus* requirement cannot strip people of their fundamental constitutional rights under §1983.

However, the Ninth Circuit has offered an easy pathway to district courts made uneasy by the apparently harsh impacts of *Doe* on their cases, based on  the *Utah Construction*[12] standards, summarized as follows: ""(1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate", *Freeman v City of Port Hueneme*, 800 F App'x 562, 563 (9th Cir 2020). Plaintiff has properly pled that UCSF did not act in a "judicial capacity", and that she did not "have an adequate opportunity to litigate" within the UCSF administrative process. Additionally, it cannot really be said that the university made any attempt to "resolve[] disputed issues of fact" when it never held a hearing, and in fact presumed guilt in its communications with the public and Dr. Marya, and in support of its adverse actions, for

---

[11]   Faculty at state universities and community colleges <u>do</u> enjoy vested rights because their governing bodies have no such powers. *Duax v. Kern Cmty. Coll. Dist.*, (1987) 196 Cal. App. 3d 555, 561

[12]  384 US 394 (1966).

18

example: "On Saturday October 28, UCSF Executive Vice Chancellor Catherine Lucey called Dr. Marya on her day off work, interrogating Dr. Marya about her social media posts" (First Amended Complaint paragraph 32); "Dr. Marya began receiving rape and death threats to her UCSF email, which was listed publicly on UCSF's website. Dr. Marya notified UCSF leadership on or about November 17, 2023, including Dr. Lucey, and UCPD of the threats and asked for them to temporarily take down Dr. Marya's public profile page. When Dr. Marya received similar threats for speaking out against police violence in the summer of 2020, Dr. Lucey and UCSF leadership pro-actively and quickly responded to help protect Dr. Marya's privacy in the face of threats and hate mail. From November 17 to November 28 in 2023, UCSF leadership never responded to Dr. Marya's request, during which time she was subjected to repeated harassment and threats" (#33); "On November 28, 2023, Dr. Talmadge E. King, Jr., Dean of UCSF's School of Medicine emailed Dr. Marya informing her that UCSF would be assessing whether Dr. Marya's social media activity violated university policies. He said not a word about the death threats and threats of rape Dr. Marya had been subjected to and likewise ignored her request for help from UCSF leadership and UC Police Department. In her response offering to cooperate with any assessment of her social media, Dr. Marya emphasized the disparate treatment she was receiving compared to the last time she was threatened in 2020 and informed Dr. Talmadge and UCSF leadership that their response made her feel further unsafe at work" (# 34); "In response to the maelstrom of hate mail, defamatory statements, and baseless accusations hurled at Dr. Marya as a result of the coordinated online attack against her, UCSF issued a statement over its social media platforms on January 6. Although the statement did not name Dr. Marya, Dr. Robert Wachter acknowledged in an email that it was in direct response referring to Dr. Marya's social media thread from January 2. UCSF's January 6 statement accused Dr. Marya of promoting a 'racist' and 'antisemitic' 'conspiracy theory'" (# 43). And the beat goes on. Dr. Marya will not use up space or the Court's time by citing every relevant paragraph, but relies on the Court's careful reading of the Complaint being challenged, as required by the *Iqbal* and *Twombly* standard that requires the Court to look very closely aat a pleading, to assure itself there is "sufficient factual matter, accepted as true, to state a claim to

19

relief that is plausible on its face", *Moore v Shinn,* 2026 U.S. App. LEXIS 5727, at *3 (9th Cir Feb. 26, 2026, No. 23-15302) (quoting *Iqbal*).

The required careful reading of the FAC establishes that the gravamen of Dr. Marya's claim is not the arbitrary and capricious conduct of an administrative proceeding, but a custom and practice of gross, grotesque, mean and viewpoint discriminatory actions resulting in her termination.

This case can also be distinguished on the grounds that *Doe* involved a procedure-rich Title IX matter in which universities are frequently sued for striking an incorrect balance between a complainant and a respondent's rights, *Austin v Univ. of Oregon,* 925 F3d 1133, 1135 (9th Cir 2019) while this case involves neither any procedure nor any respect  of rights at all.

*Doe's* exhaustion doctrine is inapplicable.

**Point Five**

**THE REGENTS CANNOT ESCAPE LIABIITY FOR RETALIATION**

**BY OUTSOURCING IT TO THE MEDICAL STAFF**

Finally the Regents revert to the time-honored cry of miscreants everywhere that "some other dude did it.", disclaiming moral and legal responsibility for the retaliatory rock they began rolling down the hill.  <u>United States v. Stone</u>, 215 F. App'x 601, 603 (9th Cir. 2006),

Justice Scalia explained the cat's paw theory in  *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011), holding that a supervisor's unlawful animus was enough to make the employer liable, even if the actual retaliation was carried out by a party free from bias. Where an independent decision-maker is

The Supreme Court in *Staub* explicitly blessed the use of cat's paw analysis in the context of an employment claim requiring that the unlawful animus be a motivating factor for the employer's action.  Once the employer has set the retaliatory ball to rolling down the hill, the employer remains liable for the firing if it "set [] in motion a proceeding by an independent decisionmaker that le[d] to an adverse employment action." *Acosta v. Brain*, 910 F.3d 502, 514-515 (9th Cir.) 2018).

20

Mere claims of the medical staff's independence cannot immunize the Regents from liability where the Regents initiated the very processes that led to UCSF's desired – but prohibited – goal, the retaliatory firing of a professor because of her protected speech.

## CONCLUSION

The Motion to Dismiss should be denied.


DATED: April 13, 2026

By: _/s/ Jonathan D. Wallace_____
Jonathan D. Wallace  (SBN 1733537)
*Admitted pro hac vice*


DATED: April 13, 2026             KLEIMAN / RAJARAM


By: _/s/ Mark Kleiman_____
Mark Kleiman


DATED: April 13, 2026

By: _/s/ Wade McMullen_____
Wade McMullen (SBN 5308747)
*pro hac vice admission forthcoming*


Attorneys for Plaintiff
RUPA MARYA, M.D.

21