BRYAN H. HECKENLIVELY (State Bar No. 279140)
bryan.heckenlively@mto.com
SKYLAR B. GROVE (State Bar No. 310707)
skylar.grove@mto.com
MILES W. UNTERREINER (State Bar No. 347959)
miles.unterreiner@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street Twenty-Seventh Floor
San Francisco, California 94105
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

Attorneys for Defendants The Regents of the
University of California, Sam Hawgood,
Catherine Lucey, Robert Wachter, Won Ha,
Tracey Tsugawa, and Brian Alldredge

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUPA MARYA, M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA; SAM HAWGOOD; CATHERINE LUCEY; ROBERT WACHTER; TRACEY TSUGAWA; BRIAN ALLDREDGE; WON HA; AND DOES 1-20,<br><br>Defendants. | Case No. 3:25-cv-04716-MMC<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:          May 22, 2026<br>Time:          9:00 a.m.<br>Judge:         Hon. Maxine M. Chesney<br>Courtroom:   7 |

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION...................................................................................................1

II.     ARGUMENT ........................................................................................................2

        A.      Marya Has Abandoned Every Claim Except Her Official-Capacity Claim
                Challenging the Letter of Censure. ...........................................................2

        B.      Marya's Lack of Standing and Preclusion Bar Her Challenge to Her
                Censure........................................................................................................3

                1.      Marya Lacks Standing to Enjoin Distribution of the Letter of
                        Censure..............................................................................................4

                2.      Marya's Challenge to the Letter of Censure Is Precluded. ...........6

        C.      Marya's Challenge to Her Censure Does Not State a Retaliation Claim.................10

                1.      The Letter of Censure Is Not an Adverse Action........................10

                2.      The Letter of Censure Was Justified Under *Pickering*. ..............11

        D.      Even if Marya Had Standing Across the Board, She Fails to State a Claim............13

III.    CONCLUSION ...................................................................................................14

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS FAC

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Acosta v. Brain*,
910 F.3d 502 (9th Cir. 2018)................................................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................................14

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011).................................................................................................4

*Doe v. Regents of the Univ. of Cal.*,
891 F.3d 1147 (9th Cir. 2018)...................................................................................6, 7, 8, 9

*Freeman v. City of Port Hueneme*,
800 F. App'x 562 (9th Cir. 2020)...........................................................................................7

*Gazo v. Richmond Police Dep't*,
No. 15-cv-00172-EDL, 2015 WL 898707 (N.D. Cal. Mar. 2, 2015) ....................................2

*Hernandez v. City of Phx.*,
43 F.4th 966 (9th Cir. 2022)............................................................................................11, 12

*Jamgotchian v. Ferraro*,
93 F.4th 1150 (9th Cir. 2024)............................................................................................7, 8

*Jensen v. Brown*,
131 F.4th 677 (9th Cir. 2025)...............................................................................................12

*Khan v. Scharfen*,
No. C-08-1679-MMC, 2008 WL 2915347 (N.D. Cal. July 23, 2008).....................................2

*Knick v. Township of Scott*,
588 U.S. 180 (2019) ...............................................................................................................8

*Lunn v. City of L.A.*,
629 F. Supp. 3d 1007 (C.D. Cal. 2022)..........................................................................2, 3, 6

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) (en banc).................................................................................8

*Mulligan v. Nichols*,
835 F.3d 983 (9th Cir. 2016)................................................................................................11

*Murthy v. Missouri*,
603 U.S. 43 (2024) ................................................................................................................5

*Nunez v. City of L.A.*,
147 F.3d 867 (9th Cir. 1998)........................................................................................10, 11

*O'Handley v. Weber*,
62 F.4th 1145 (9th Cir. 2023)..............................................................................................10

*Pickering v. Bd. of Educ.*,
391 U.S. 563 (1968) ...............................................................................10, 11, 12, 14

*Roberts v. Regents of Univ. of Cal.*,
No. 8:23-cv-01788-JVS, 2025 WL 4072489 (C.D. Cal. Aug. 11, 2025)....................................7

*Schneider v. Cal. Dep't of Corrs.*,
151 F.3d 1194 (9th Cir. 1998)..............................................................................................6

*Weisbuch v. Cnty. of L.A.*,
119 F.3d 778 (9th Cir. 1997)..............................................................................................12

*Yale v. Clicktale, Inc.*,
No. 20-cv-07575-LB, 2021 WL 4025797 (N.D. Cal. Aug. 24, 2021) .........................................3

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009).............................................................................................2

**STATE CASES**

*DeCuir v. Cnty. of L.A.*,
64 Cal. App. 4th 75 (1998)..............................................................................................9

*Hongsathavij v. Queen of Angels/Hollywood Presbyterian Med. Ctr.*,
62 Cal. App. 4th 1123 (1998)..............................................................................................14

*Johnson v. City of Loma Linda*,
24 Cal.4th 61 (2000)..............................................................................................6

*Knight v. S. Orange Cmty. Coll. Dist.*,
60 Cal. App. 5th 854 (2021)..............................................................................................10

*Murray v. Alaska Airlines, Inc.*,
50 Cal.4th 860 (2010)..............................................................................................8

*Pomona Coll. v. Superior Court*,
45 Cal. App. 4th 1716 (1996)..............................................................................................9

*Y.K.A. Indus., Inc. v. Redevelopment Agency of San Jose*,
174 Cal. App. 4th 339 (9th Cir. 2009) .........................................................................................9

**FEDERAL STATUTES**

42 U.S.C. § 2000d .........................................................................................................13

**STATE STATUTES**

Cal. Bus. & Prof. Code § 805.........................................................................................................4, 5

Cal. Civ. Proc. Code § 1094.5...................................................................................................6, 7, 9

Cal. Gov. Code § 11135(a).................................................................................................................13

**OTHER AUTHORITIES**

Answering Br., *Doe v. Regents of the Univ. of Cal.*,
    No. 17-56110, 2017 WL 4847437 (9th Cir. Oct. 23, 2017)........................................................7

Med. Bd. of Cal., *Frequently Asked Questions* (last visited Apr. 27, 2026),
    *available at* https://www.mbc.ca.gov/FAQs/ ..............................................................................5

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS FAC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

For all its vitriol, Plaintiff Rupa Marya's opposition cannot paper over the deficiencies in her First Amended Complaint ("FAC"). Her brief effectively admits that her challenge is a limited one: an official-capacity claim against the individual Defendants arguing that UCSF's decision to include a letter of censure in her internal personnel file violated the First Amendment. She does not argue she can maintain a claim against The Regents of the University of California ("The Regents"). She does not argue she can maintain a claim against the other Defendants in their individual capacities. Nor does she argue that she has standing to challenge any action alleged in the FAC except the censure. Accordingly, nearly all of the case should be dismissed with prejudice based on uncontested arguments.

The one claim Marya has not abandoned should be dismissed as well, for multiple reasons. Her challenge to the letter of censure fails at the threshold. Marya lacks standing to seek an order enjoining its distribution, and her claim disputing the letter is precluded because she failed to pursue state-court relief. Marya's challenge also fails on the merits. She has not sufficiently alleged a claim for First Amendment retaliation, both because the letter of censure did not amount to an adverse action and because her own allegations and other materials properly before the Court establish the letter was justified. In resisting those conclusions, Marya invents facts not alleged in the FAC, invites this Court to disregard binding Ninth Circuit precedent, and resorts to ad hominem attacks against UCSF and the legal profession, among others. None of those arguments provides a valid reason to deny the motion to dismiss.

Because Marya's challenge to the letter of censure is unreviewable and fails on the merits in any event, and because this Court has already provided significant latitude in providing her an opportunity to cure the defects in her original Complaint, the FAC should be dismissed with prejudice in its entirety.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS FAC

## II.    ARGUMENT

### A.    Marya Has Abandoned Every Claim Except Her Official-Capacity Claim Challenging the Letter of Censure.

Marya's opposition to Defendants' motion to dismiss the First Amended Complaint is long on rhetoric but short on substance. Indeed, the opposition confirms just how little is in dispute. As she did in her opposition to Defendants' motion to dismiss the original Complaint, Marya fails to engage with the majority of Defendants' arguments. *See* ECF No. 48 at 1-3 ("Reply ISO Mot. to Dismiss"). By declining to respond, she abandons her claims against The Regents, her claims against the other Defendants in their individual capacities, and any challenge to the alleged actions aside from the decision to censure her. *See Lunn v. City of L.A.*, 629 F. Supp. 3d 1007, 1014 (C.D. Cal. 2022); *see Khan v. Scharfen*, No. C-08-1679-MMC, 2008 WL 2915347, at *1 (N.D. Cal. July 23, 2008) (granting motion to dismiss because "plaintiff d[id] not contest" Defendants' argument for dismissal).

1.    Once again, Marya has not responded to Defendants' argument that The Regents is not a proper defendant. *See* ECF No. 55 at 6 ("Mot. to Dismiss FAC"); Reply ISO Mot. to Dismiss 2. As this Court already held, The Regents cannot be sued under § 1983. ECF No. 50 ¶ 1 ("Order"). Accordingly, Marya's § 1983 claim against The Regents must be dismissed with prejudice. *See, e.g.*, *Gazo v. Richmond Police Dep't*, No. 15-cv-00172-EDL, 2015 WL 898707, at *2 (N.D. Cal. Mar. 2, 2015) (dismissing § 1983 claim with prejudice because the public-entity defendant was "an improper defendant for a § 1983 claim").

2.    Marya has also failed, for the second time, to dispute Defendants' argument that she has not pleaded personal involvement by any Defendant. *See* Mot. to Dismiss FAC 21-23; Reply ISO Mot. to Dismiss 2. This Court dismissed Marya's individual-capacity claims in the original Complaint for that very reason. Order ¶ 4. She did not address the deficiency when preparing the FAC, and she makes no effort to explain her failure in the opposition. Her inability to cure this defect warrants dismissal with prejudice of her individual-capacity claims. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite

particularity to [her] claims, the district court's discretion to deny leave to amend is particularly broad." (citation omitted)); *see also, e.g.*, *Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021 WL 4025797, at *1 (N.D. Cal. Aug. 24, 2021).

3. Aside from Marya's contentions about the letter of censure, which Defendants address below, she does not contest that she lacks standing to challenge the other actions alleged in the FAC. This Court dismissed Marya's requests for prospective relief in the original Complaint because she failed to plead ongoing harm or a risk of future injury. Order ¶ 3. As Defendants have explained, the FAC largely fails to address that problem. *See* Mot. to Dismiss FAC 7-11. Even if Marya has standing to challenge the letter of censure, she does not otherwise plead that any of the other harms she alleges has a realistic prospect of recurring or that she continues to suffer an injury that could be redressed by the relief she seeks. *Id.* at 9-11. She is no longer working at UCSF. FAC ¶¶ 62-64. She therefore lacks standing to challenge the other actions Defendants allegedly took. Mot. to Dismiss FAC 9-11. Marya offers no response to that contention, conceding the point. *See Lunn*, 629 F. Supp. 3d at 1014.

In short, Marya's concessions establish that all claims against The Regents and the individual-capacity claims against the other Defendants must be dismissed. And they also establish that Marya is challenging the letter of censure and the letter of censure alone. Because that challenge fails as a matter of law—as Defendants have explained, Mot. to Dismiss FAC 7-9, 11-17, and will now address further below—the FAC must be dismissed in full.

**B.    Marya's Lack of Standing and Preclusion Bar Her Challenge to Her Censure.**

Marya's challenge to the letter of censure fails at the threshold. She has not plausibly pleaded that UCSF is likely to distribute the letter, so she cannot establish standing to seek an injunction "prohibiting the Defendants from publishing, distributing, referring to or otherwise disseminating or promoting the Letter of Censure." FAC Prayer ¶ 3. That leaves only one censure-related request for relief: Marya's demand for an order directing Defendants to "withdraw and cancel" the letter. *Id.* ¶ 4. But that cannot proceed either, because Marya's failure to pursue state-court remedies precludes her from challenging the letter in federal court. Marya's efforts to dispute these points misrepresent her own allegations, rely on factual assertions that are nowhere

to be found in the FAC, and conflict with binding Ninth Circuit precedent.

**1.    Marya Lacks Standing to Enjoin Distribution of the Letter of Censure.**

Marya maintains that she has standing to seek an injunction against the distribution of the letter of censure for two reasons: first, because USCF "disclos[ed it] to the California Medical Board," and second, because UCSF will inevitably disseminate it to her future employers.  ECF No. 62 at 15 ("Opp.").  But neither claim establishes the "real and immediate threat" of future injury necessary to confer standing, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citation omitted), primarily because neither claim has any grounding in the FAC.

*First*, UCSF did not report Marya's censure to the California Medical Board—and the FAC does not allege that it did.  Marya cites paragraph 66 of the FAC for the proposition that UCSF "communicated its baseless unconstitutional censure of Dr. Marya to the Medical Board of California[] via" an "805 Report."  Opp. 14.  But that is not what paragraph 66 says.  In paragraph 66, Marya does allege that UCSF filed an 805 Report—a reference to Section 805 of the California Business and Professions Code, which requires reporting of certain actions related to physicians' employment and medical staff privileges.  FAC ¶ 66; Cal. Bus. & Prof. Code § 805. The FAC goes on to allege that the report "assert[ed]" that she "was terminated 'for a medical disciplinary cause or reason.'"  FAC ¶ 66.  It does not plead (in paragraph 66 or anywhere else) that UCSF informed the California Medical Board about Marya's censure or provided the letter of censure.

Marya's other arguments that UCSF has disclosed her censure letter to the Board are also unsupported.  She cites Section 805 itself, as well as the Frequently Asked Questions on the Board's website, arguing that UCSF was "require[d]" by law "to report the censure letter."  Opp. 14.  That is not what Section 805 or the FAQ says.  Section 805 requires the reporting of three events: when, for a "medical disciplinary cause or reason," (1) a physician's "application for staff privileges or membership is denied or rejected"; (2) a physician's "membership, staff privileges, or employment is terminated or revoked"; or (3) "[r]estrictions are imposed, or voluntarily accepted, on staff privileges, membership, or employment" for a sufficiently lengthy period.  Cal.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS FAC

Bus. & Prof. Code § 805(b).[1]  The decision to place a censure letter in a physician's internal employment file does not appear in that list.

Marya also cites the 805 Report that the UCSF Medical Staff actually sent to the California Medical Board, but that document contradicts her claim too.[2]  In the report, the Medical Staff complied with Section 805 by recounting that UCSF placed Marya on leave, that an investigation led to her termination, and that, after her malpractice insurance lapsed, she was automatically removed from the medical staff.  ECF No. 55-1 ("Heckenlively Decl."), Ex. G at 4.  It says nothing about the letter of censure.  Instead, like the rest of Marya's claimed support for the proposition that the UCSF informed the Board about her censure, the report only undercuts her claim.

Moreover, even if Defendants had disclosed the censure letter to the California Medical Board in the past (which is not alleged), that *still* would not establish standing for Marya to seek prospective relief against future disclosures.  In addition to past injury, she would also have to show disclosure is "likely" to "occur or continue" in the future.  *Murthy v. Missouri*, 603 U.S. 43, 69 (2024) (citation omitted).  Marya cannot do that.  She no longer works at UCSF or in the UC system.  FAC ¶ 64.  There is thus no reason to think Defendants are likely to censure her in the future.  *See* Heckenlively Decl., Ex. H at 9-10 ("written censure" is a "disciplinary sanction[]" that can be imposed based on "*faculty* misconduct" (emphasis added)).  And there is even less reason to think Defendants would then notify the California Medical Board about that future (purely hypothetical) censure.

*Second*, Marya also cannot predicate an injunction against distribution of the censure letter on her contention that Defendants might disclose the letter to her future employers.  She asserts that "in the ecosystem of medical employment, a doctor must consent to the disclosure to every new employer of her private disciplinary file," and that hospital systems "believe that it would be

---

[1]  *See also* Med. Bd. of Cal., *Frequently Asked Questions* (last visited Apr. 27, 2026), *available at* https://www.mbc.ca.gov/FAQs/.

[2]  As Marya does not dispute, the FAC incorporates the 805 Report by reference.  *See* ECF No. 55-1 at 3; *see id.*, Ex. G at 1-4.

an ethics violation, and expose them to liability, not to disclose a letter of censure." Opp. 15. That is not accurate. And, most importantly for purposes of this motion to dismiss, it lacks any support in the FAC. Marya has not pleaded any allegations that raise the inference that UCSF would report the censure letter to her prospective future employers. She cannot fill that gap now by asserting in her opposition her view that it is a well-known feature of the "ecosystem of medical employment." *Id.*; *see Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the [plaintiffs'] opposition motion . . . are irrelevant for Rule 12(b)(6) purposes" because "a court *may not* look beyond the complaint" to a "memorandum in opposition to a defendant's motion to dismiss.").

In short, nothing in Marya's opposition establishes she has standing to pursue an injunction against the distribution of the letter of censure. That request for relief therefore must be dismissed for lack of jurisdiction, leaving only Marya's demand that Defendants withdraw the letter.[3]

**2.      Marya's Challenge to the Letter of Censure Is Precluded.**

Marya's demand for an order directing UCSF to withdraw the letter of censure—and, in fact, any attempt to recover based on the decision to censure her—is precluded by her failure to pursue state-court remedies. Marya disputes the applicability of preclusion principles, but her argument is foreclosed by Ninth Circuit law.

*Doe v. Regents of the University of California*, 891 F.3d 1147 (9th Cir. 2018), establishes that Marya's federal claim is precluded because she did not challenge the censure by filing a petition under § 1094.5 of the California Code of Civil Procedure. *Doe* specifies that federal courts must "give preclusive effect to a state administrative decision if the California courts would do so." 891 F.3d at 1155. In California, courts will give an agency's final decision "binding effect" unless a party pursues the "exclusive" judicial remedy for challenging it—a § 1094.5 petition. *Id.* (quoting *Johnson v. City of Loma Linda*, 24 Cal.4th 61, 69-70 (2000)). It follows that

---

[3] As explained in the motion to dismiss the FAC, the letter of censure also does not confer standing upon Marya to pursue the other relief she seeks that is unrelated to the letter of censure. *See* Mot. to Dismiss FAC 7-9; FAC Prayer ¶¶ 1, 2, 5. Marya does not appear to dispute the point and therefore concedes it. *See Lunn*, 629 F. Supp. 3d at 1014. As a result, those other forms of relief must likewise be dismissed for lack of jurisdiction.

because Marya failed to contest her censure via § 1094.5, any federal-court challenge is precluded.

Marya believes *Doe* was wrongly decided, but that does not allow the Court to deviate from Ninth Circuit law. She objects that the decision "spring[s] an improper preclusion trap for § 1983 plaintiffs" and "fl[ies] in the face" of the proposition that § 1983 contains no administrative exhaustion requirement. Opp. 16-17 (citation omitted). And she protests that it would be unfair to require a § 1094.5 petition because the "scope of review" in such a proceeding is "tightly constrained." *Id.* at 17. The briefing before the court in *Doe*, however, highlighted both the case law holding administrative exhaustion does not apply to § 1983 and the limits on § 1094.5 review. Answering Br. 26, 39-40, *Doe v. Regents of the Univ. of Cal.*, No. 17-56110, 2017 WL 4847437 (9th Cir. Oct. 23, 2017). The Ninth Circuit nonetheless held that prospective litigants must seek § 1094.5 review when possible. Whatever Marya thinks about the reasoning in *Doe* or its wisdom as a policy matter, that holding remains good law. *See, e.g.*, *Freeman v. City of Port Hueneme*, 800 F. App'x 562, 563 (9th Cir. 2020) (dismissing claim based on *Doe*); *Roberts v. Regents of Univ. of Cal.*, No. 8:23-cv-01788-JVS, 2025 WL 4072489, at *4 (C.D. Cal. Aug. 11, 2025) (same).

*Jamgotchian v. Ferraro*, 93 F.4th 1150 (9th Cir. 2024), is not to the contrary. In that case, the Ninth Circuit held that *Doe* does not apply where a state agency "lacked jurisdiction to decide the claims that [the plaintiff later] seeks to raise in his § 1983 suit." *Jamgotchian*, 93 F.4th at 1160. The agency there had no power to entertain the plaintiff's constitutional claims, and so the court found the agency's decision lacked preclusive effect. *Id.* That is not the situation here. Marya does not argue that UCSF lacked jurisdiction to consider her objection that the letter of censure violated her First Amendment rights. Nor could she. As explained in the Notice of Intent to Impose Discipline, which Marya received before UCSF issued the letter, Marya could have challenged the forthcoming censure by "fil[ing] a grievance under [Academic Personnel Manual (APM)] 140." Heckenlively Decl., Ex. F at 4. Nothing in APM 140 limits the arguments Marya could have raised in the grievance process. Declaration of Esthena L. Barlow ("Barlow

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS FAC

Decl."), Ex. A at 1.[4]

Nor can Marya argue that preclusion principles do not apply to the letter of censure because she was allegedly denied a hearing. Opp. 18-20. Under California law, a party cannot avoid the preclusive effects of an administrative action by "forfeiting" their right to a hearing and then "seek[ing] to relitigate" the matter in a "subsequently filed court action." *Murray v. Alaska Airlines, Inc.*, 50 Cal.4th 860, 869 (2010); *see also id.* ("[A] party to an administrative action who simply refused to meaningfully participate in the proceedings [is] estopped from relitigating" the "same issues."). The Notice of Intent to Impose Discipline made clear that if Marya wished to challenge the letter of censure, she had to file a grievance under APM 140. Heckenlively Decl., Ex. F at 4. That procedure would have entitled Marya to a hearing, complete with a suite of procedural protections. *See* Barlow Decl., Ex. A at 6-7 (specifying that a "written censure" may be appealed for hearing consideration and that, in the hearing, "each party shall have the opportunity to present evidence, cross-examine witnesses, and submit rebuttal evidence"). But Marya does not allege that she filed a grievance under APM 140 or requested a hearing under that procedure. She therefore cannot defeat preclusion by complaining that a hearing never occurred. *See Murray*, 50 Cal.4th at 869.[5]

In any event, whether Marya actually received a hearing or other procedural protections

[4] *Jamgotchian* notes there is a "fair[]" argument that "*Doe*'s reasoning is in substantial tension" with *Knick v. Township of Scott*, 588 U.S. 180 (2019). 93 F.4th at 1160. But even substantial tension would not be enough to justify disregarding *Doe*. Ninth Circuit precedent is binding unless it is "clearly irreconcilable" with precedent from a higher tribunal. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Marya does not argue that standard is satisfied here—and it is not. *Knick* concerned the proper interpretation of the Taking Clause of the U.S. Constitution, not the intersection of preclusion principles and § 1983; indeed, it specifically distinguished a seemingly on-point case on the basis that "it was not a takings case at all." 588 U.S. at 196.

[5] Marya does allege that her "counsel requested a review by the Academic Senate as provided" in the Notice of Intent to Impose Discipline and that she was denied that "right to a hearing before the Academic Senate." FAC ¶¶ 63-64. But even accepting those allegations as true, the only inference they permit is that Marya requested a hearing challenging her termination, not that she requested a hearing challenging the letter of censure. See Heckenlively Decl., Ex. F at 4 (explaining that Marya could grieve her "dismissal" by "request[ing] a hearing before the properly constituted advisory committee of the Academic Senate" but that she must grieve the letter of censure "under APM 140").

does not ultimately determine whether California courts would give binding effect to UCSF's decision. To be sure, administrative decisionmaking is not preclusive when there "was no established administrative procedure by which to have a claim heard." *Y.K.A. Indus., Inc. v. Redevelopment Agency of San Jose*, 174 Cal. App. 4th 339, 364 (9th Cir. 2009). But so long as an established review procedure exists, and its result is "reviewable . . . through . . . mandamus," a plaintiff who "bypass[es]" mandamus (i.e., a § 1094.5 action) will face "preclusion in a later action." *Id.* at 359 (citing *DeCuir v. Cnty. of L.A.*, 64 Cal. App. 4th 75, 83 (1998)).[6] Accordingly, Marya's claim is barred. Even if UCSF had failed to provide Marya with the procedural protections called for in APM 140, she cannot dispute that the policy provides an established, procedurally robust process for adjudicating disciplinary sanctions, including a written censure. Barlow Decl., Ex. A at 6-7. Nor can she dispute that § 1094.5 was her "exclusive" path to challenging both the letter of censure itself and "any procedural defects which [she] believes existed in the . . . grievance process." *Pomona Coll. v. Superior Court*, 45 Cal. App. 4th 1716, 1729 (1996); *see Doe*, 891 F.3d at 1153-55 (holding preclusion applied even though plaintiff alleged "UCSB did not grant him a fair hearing").

Finally, even if this Court were to overlook the reality that California courts would give preclusive effect to UCSF's decision to censure Marya and scrutinize the procedures she alleges were used, preclusion would still require dismissal of her challenge. Although Marya insists she was denied an "'adequate opportunity to litigate' within the UCSF administrative process," Opp. 18 (citation omitted), the process she received was more than sufficient in light of the limited nature of the interests that the letter of censure implicated. UCSF provided Marya with a copy of the Ad Hoc Committee's findings that she had violated the Faculty Code of Conduct.

---

[6] Verbatim, *Y.K.A. Industries* says that a plaintiff cannot bypass judicial review "without avoiding" preclusion. 174 Cal. App. 4th at 359 (citing *DeCuir*, 64 Cal. App. 4th at 83). It is clear from context and *DeCuir* itself that the court meant "*while* avoiding." *See DeCuir*, 64 Cal. App. 4th at 81 (holding plaintiff's failure to pursue mandamus precluded civil damages action). As the *Y.K.A. Industries* court explained, *DeCuir* and other cases "preclud[e] a party from circumventing the established process for judicial review . . . by failing to file a petition for relief in mandate before resorting to legal action." 174 Cal. App. 4th at 361 (citation and quotation marks omitted).

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS FAC

Heckenlively Decl., Ex. F at 3. She had—and took—the opportunity to submit a written response, prepared by counsel. *Id.* Afterward, UCSF provided her notice of its intent to impose a letter of censure, reiterating the basis for its decision. FAC ¶ 62. In light of Marya's relatively limited interest in avoiding the letter of censure (as opposed to the broader consequence of dismissal)—which, at most, inflicted stigmatic injury, and which Marya does not allege ever was or ever will be publicly distributed by UCSF—those procedures provided ample safeguards. *See Knight v. S. Orange Cmty. Coll. Dist.*, 60 Cal. App. 5th 854, 858 (2021) ("[R]equiring a trial-like hearing before [a college] could issue a written reprimand places too great a burden on the college when compared to the minor detriment to [the student]."). For this reason, too, Marya cannot elude preclusion by maintaining UCSF's administrative process was procedurally deficient.

**C.      Marya's Challenge to Her Censure Does Not State a Retaliation Claim.**

Preclusion aside, Marya's demand for an order directing withdrawal of the letter of censure also must be dismissed because she has failed to allege the letter violated the First Amendment. That is so for two separate and independent reasons: first, Marya failed to plead the letter of censure qualifies as an adverse action; and second, under the balancing test laid out in *Pickering v. Board of Education*, 391 U.S. 563 (1968), it is evident from the face of the FAC that UCSF's interests justified her censure. *See* Mot. to Dismiss FAC 11-17. Marya offers no persuasive response on either score.

**1.      The Letter of Censure Is Not an Adverse Action.**

As Defendants have explained, in the Ninth Circuit, government speech—such as a letter of censure—generally cannot be "construe[d] as 'adverse action'" for purposes of a First Amendment retaliation claim. *O'Handley v. Weber*, 62 F.4th 1145, 1163 (9th Cir. 2023). That rule recognizes that it "would be the height of irony . . . if mere speech, in response to speech, could constitute a First Amendment violation." *Nunez v. City of L.A.*, 147 F.3d 867, 875 (9th Cir. 1998). Marya identifies no reason to disregard that principle here.

Marya's only argument appears to be that this government-speech line of cases does not apply because she was a "weaker speaker" than UCSF who "was terminated from her job" and "is probably now unemployable in the United States." Opp. 10. But neither Marya's termination nor

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS FAC

her allegedly limited employment prospects resulted from her censure.  Her termination was a distinct employment action, and Marya fails to plead she has standing to challenge it.  *See supra* at p. 3.  Likewise, any threat to Marya's future employment opportunities cannot be attributed to UCSF—again, she has not pleaded that UCSF has distributed the letter publicly or will do so in the future.  *See supra* at pp. 4-6.  Moreover, even if the letter of censure did have secondary effects, government speech does not amount to an adverse action even when it has a downstream impact on the affected individual's private employment.  *See Mulligan v. Nichols*, 835 F.3d 983, 989 (9th Cir. 2016) (declining to find a government press release was adverse action even though the plaintiff's "reputation was undoubtedly damaged by the increased media attention, which eventually resulted in the loss of his job").

Nor does the purported power imbalance between Marya and UCSF justify departing from decisions holding that government speech is not adverse action.  For one thing, the extent of Marya's social media presence casts some doubt on the notion that she does not have a powerful voice.  And in any event, the case law does not distinguish based on the speaker's power.  Indeed, in most cases where the plaintiff alleges she has been retaliated against via government speech, she will be the weaker speaker—because, by definition, the other speaker is the government.  The Ninth Circuit has nonetheless repeatedly recognized that government speech is not an adverse action.  *See, e.g.*, *Mulligan*, 835 F.3d at 987-89 (press release issued by the City of Los Angeles and the LAPD police officers' union accusing civilian of "being a frequent user of bath salts" was not an adverse action); *Nunez*, 147 F.3d at 874-75 (statements by LAPD officials scolding subordinate police officer and threatening to transfer or dismiss him were not an adverse action).  That principle controls here, and Marya cannot state a claim for First Amendment retaliation based on the letter of censure.

### 2. The Letter of Censure Was Justified Under *Pickering*.

Marya's First Amendment challenge also fails for the independent reason that her own allegations establish that, under the *Pickering* balancing test, UCSF had an "adequate justification" for issuing a letter of censure.  *Hernandez v. City of Phx.*, 43 F.4th 966, 976 (9th Cir. 2022).  Marya disputes that conclusion, maintaining that it is premature to reach this issue, that

Defendants conflate anti-Zionism and antisemitism, and that the argument "betrays an endemic, systemic racism." Opp. 6-9, 11-13. Despite her heated rhetoric, these contentions have no force.

Contrary to Marya's view, this Court can address Defendants' *Pickering* argument now. Yes, Defendants are "asking this Court to issue a ruling on the merits without discovery or trial." Opp. 11. Avoiding discovery and trial on non-meritorious claims such as Marya's is the entire point of Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Further, while it is not overly common for courts to dismiss claims based on *Pickering* balancing, courts do so in appropriate cases. It is often difficult to apply *Pickering* on the pleadings because the "complaint is unlikely to include facts related to the state's interest," which must be balanced against the individual interests at stake. *Jensen v. Brown*, 131 F.4th 677, 691-92 (9th Cir. 2025). But when the complaint does contain enough information about the public employer's interests to make clear that "the balance can only come out" in the employer's favor, courts "dismiss on that basis." *Id.*; *see Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 (9th Cir. 1997) (dismissing claim on *Pickering* grounds).

That is the situation here. Even at this early stage, the FAC and other materials properly before the court leave no doubt about the nature of UCSF's interests in disciplining Marya. UCSF has a paramount interest in promoting its mission to "serv[e] every individual regardless of race, ethnicity, religion, political view, gender, and sexual identity." Heckenlively Decl., Ex. D at 3; *see Hernandez*, 43 F.4th at 976. It furthers that mission in part by enforcing its antidiscrimination policies and complying with the federal civil rights laws. *See* Heckenlively Decl., Ex. H at 1-8. Those interests—enforcing the Faculty Code of Conduct and responding to concerns that Marya's statements on social media created a hostile environment—are reflected by the letter of censure. *Id.*, Ex. F at 1-2. UCSF had ample reason to take disciplinary action. *See id.* And because the degree to which Marya's speech interfered with UCSF's interests is clear from the "allegations in the amended complaint and documents incorporated by reference," this is the rare *Pickering* case that can be dismissed at the pleading stage. *Cf. Hernandez*, 43 F.4th at 979.

Marya's principal response is to criticize Defendants for "imply[ing] that anti-Zionism is the same as antisemitism." Opp. 7. She cites various cases for the proposition that "members of

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS FAC

academic communities do not commit acts of antisemitism by criticizing Israel or standing up for the Palestinian people." *Id.* But that misses the point. By questioning the general competence of "Zionist doctors," Marya criticized a subset of her colleagues based on their personal characteristics rather than their clinical abilities. Heckenlively Decl., Ex. A at 1; FAC ¶ 39. Similarly, by speculating that a UCSF student engaged in genocide because he was "from Israel," Marya appeared to single out an individual—a first-year student no less—based on his national origin. Heckenlively Decl., Ex. B at 2; FAC ¶¶ 49, 51. That is not mere criticism of Israeli foreign policy or advocacy for the Palestinian people. It goes much further and crosses the line into targeted harassment on the basis of protected characteristics. UCSF is committed to eliminating discrimination and harassment based on a broad range of characteristics including race, religion, national origin, ethnicity, and political affiliation. *See* Heckenlively Decl., Ex. H at 5 (prohibition on discrimination against students); *id.* at 7 (prohibition on discrimination against employees). Indeed, state and federal law require UCSF to address discrimination and harassment. *See* 42 U.S.C. § 2000d; Cal. Gov. Code § 11135(a). Whether Marya's statements are best categorized as harassment based on national origin, religion, or something else—she ran afoul of UCSF policy and failed to live up to UCSF's values.

Finally, Marya insists that Defendants' contention that the letter of censure was justified "betrays an endemic, systemic racism against Muslim and Arab litigants." Opp. 9. She appears to accuse Defendants and defense counsel of "argu[ing] . . . any facts pled by Muslim or Arab plaintiffs are 'speculative' or 'conclusory'" and that "claims of Islamophobia are 'implausible.'" *Id.*; *see id.* at 12 n.5. Defendants obviously argue nothing of the sort, and Marya's attacks cannot compensate for the weakness of her arguments.[7]

**D.    Even if Marya Had Standing Across the Board, She Fails to State a Claim.**

Finally, Marya offers barely any separate response to Defendants' fallback argument that any challenge to the suspension of her clinical privileges and termination fails on the merits. *See*

---

[7] Marya's accusation also has no relevance in this case. She asserts a First Amendment claim rather than discrimination claims, and she alleges that she is a "South Asian, Sikh" individual rather than a Muslim or Arab individual. FAC ¶ 4.

Motion to Dismiss FAC 18-21.  As Defendants explained, even if Marya had standing (and even if she had *argued* she had standing), she would fail to state a claim.  It was the Executive Medical Board of UCSF's medical staff—which is a "separate legal entity" from The Regents—that was responsible for suspending Marya's clinical privileges.  *Id.* at 18 (quoting *Hongsathavij v. Queen of Angels/Hollywood Presbyterian Med. Ctr.*, 62 Cal. App. 4th 1123, 1130 n.2 (1998)).  Marya's claim would also fail because her termination was warranted under *Pickering*.  *Id.* at 18-21.  In her opposition, Marya engages with only the former point.[8]

Marya tries to invoke the "cat's paw" theory of liability to hold Defendants responsible for the medical staff's suspension of her privileges, but that doctrine has no application here.  Under the cat's paw theory, if an actor harboring retaliatory motive influences a decisionmaker to take an adverse employment action, the fact that the ultimate decisionmaker's motives were pure is no defense to liability.  *Acosta v. Brain*, 910 F.3d 502, 514-15 (9th Cir. 2018).  But for cat's paw liability to apply, the plaintiff must demonstrate that the actor with the retaliatory motive had "influence with the decisionmaker" that was "strong enough" that it "actually cause[d] the adverse employment action."  *Id.* at 515 (citation omitted).  Marya has no allegations to that effect here.  Nothing in the FAC suggests that the Executive Medical Board decided to suspend Marya because of Defendants' influence.  Although both Defendants and the Board disciplined her, that is just an example of "parallel conduct" best explained by "natural, unilateral" behavior.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546-47 (2007).  Indeed, there is a straightforward explanation for the fact that the Board took action of its own—that its members were independently concerned that Marya's repeated harassment of members of the UCSF community would compromise her ability to perform her job duties and undermine patient care.  *See* FAC ¶ 55.

## III.    CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion to dismiss to the FAC with prejudice.

---

[8] Marya does not argue that anything alleged in the FAC other than the letter of censure, the suspension of her privileges, or her termination could qualify as an adverse employment action.

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS FAC

DATED:  April 27, 2026                    MUNGER, TOLLES & OLSON LLP


                                          By:      */s/ Bryan H. Heckenlively*
                                                   BRYAN H. HECKENLIVELY
                                                   Attorneys for Defendants

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS FAC