BRYAN H. HECKENLIVELY (State Bar No. 279140)
bryan.heckenlively@mto.com
SKYLAR B. GROVE (State Bar No. 310707)
skylar.grove@mto.com
MILES W. UNTERREINER (State Bar No. 347959)
miles.unterreiner@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street Twenty-Seventh Floor
San Francisco, California 94105
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

Attorneys for Defendants The Regents of the
University of California, Sam Hawgood,
Catherine Lucey, Robert Wachter, Won Ha,
Tracey Tsugawa, and Brian Alldredge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUPA MARYA, M.D.,<br><br>                Plaintiff,<br><br>        vs.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA; SAM HAWGOOD; CATHERINE LUCEY; ROBERT WACHTER; TRACEY TSUGAWA; BRIAN ALLDREDGE; WON HA; AND DOES 1-20,<br><br>                Defendants. | Case No. 3:25-cv-04716-MMC<br><br>**DECLARATION OF ESTHENA L. BARLOW IN SUPPORT OF DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT AND REQUEST FOR JUDICIAL NOTICE**<br><br>Date:         May 22, 2026<br>Time:         9:00 a.m.<br>Judge:        Hon. Maxine M. Chesney<br>Courtroom:    7 |

DECLARATION OF ESTHENA L. BARLOW ISO REPLY ISO MOTION TO DISMISS FAC AND RJN

## DECLARATION OF ESTHENA L. BARLOW

I, Esthena L. Barlow, hereby declare:

1.      I am an attorney with the law firm of Munger, Tolles & Olson LLP and counsel for Defendants in this action.  I am licensed to practice law in the District of Columbia and I am admitted *pro hac vice* in the Northern District of California for purposes of this action.  I make this Declaration in support of Defendants' Reply Brief in Support of the Motion to Dismiss the First Amended Complaint and Request for Judicial Notice.  Except as otherwise noted, I have personal knowledge of the facts set forth herein; and, if called as a witness, I could and would testify competently thereto.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the University of California's General University Policy Regarding Academic Appointees: Non-Senate Academic Appointees/Grievances, which is set forth in Academic Personnel Manual 140 ("APM 140").  The document is publicly accessible at https://www.ucop.edu/academic-personnel-programs/_files/apm/apm-140.pdf as of the date if was last accessed: April 27, 2026.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 27, 2026, at Washington, D.C.

By:    /s/ Esthena L. Barlow
       Esthena L. Barlow

# EXHIBIT A

GENERAL UNIVERSITY POLICY REGARDING
ACADEMIC APPOINTEES
Non-Senate Academic Appointees/Grievances

APM - 140

**General University Policy Regarding Academic Appointees: APM - 140 - Non-Senate Academic Appointees/Grievances**

### 140-0  Policy

This policy provides non-Senate academic appointees the opportunity to present grievances. The use of this policy shall not be discouraged by the University either directly or indirectly.

### 140-4  Scope/Definition

a.  A grievance is defined as a complaint by an eligible non-Senate academic appointee that alleges that:

(1)  a specific administrative act was arbitrary or capricious and adversely affected the appointee's then-existing terms or conditions of appointment; and/or

(2)  a violation of applicable University rules, regulations, or Academic Personnel policies occurred that adversely affected the appointee's then-existing terms or conditions of appointment.

b.  For the purposes of this policy, an act is not arbitrary or capricious if the decision-maker exercised reasoned judgment.

c.  A grievance alleging a violation of APM - 137 (Non-Senate Academic Appointees/Term Appointment), 145 (Non-Senate Academic Appointees/ Layoff and Involuntary Reduction in Time), or 150 (Non-Senate Academic Appointees/Corrective Action and Dismissal) shall be filed under APM - 140-4-a(2) only.

### 140-6  Responsibility

a.  It is the responsibility of each Chancellor to establish and publish procedures to implement this policy. Prior to planned issuance, such procedures should be submitted to the Provost and Executive Vice President–Academic Affairs for approval.

b.  Each Chancellor shall designate an administrator or office as the grievance liaison for academic appointees.

GENERAL UNIVERSITY POLICY REGARDING                                      APM - 140
ACADEMIC APPOINTEES
Non-Senate Academic Appointees/Grievances

## 140-14  Eligibility

a.  This policy applies to all academic appointees of the University who are not members of the Academic Senate except as provided in APM - 140-14-b, -c, and -d. For non-Senate academic appointees covered by a Memorandum of Understanding (MOU), this policy applies only to the extent provided for in the MOU.

b.  APM - 140 does not apply to Postdoctoral Scholars (see APM - 390).

c.  Under this policy, student academic appointees not covered by an MOU shall only be eligible to grieve matters related to their academic appointment. Complaints pertaining to academic standing or non-employment-related matters are under the jurisdiction of applicable student grievance or academic appeal procedures.

d.  Housestaff (interns and residents) shall be eligible to use APM - 140 unless alternative policies and procedures are instituted by the campus.

e.  When a non-Senate faculty member receives notice of termination before the expiration of the non-Senate faculty member's appointment, the non-Senate faculty member may select as a grievance mechanism either APM - 140, as described in this policy, or Regents' Bylaw 40.3(c), the procedures of which are described in Academic Senate Bylaw 337.  In selecting either APM - 140 or Regents' Bylaw 40.3(c), the non-Senate faculty member waives the right to invoke the other mechanism to review the same grievance.

## 140-15  Mediation

The intent of this policy is to encourage voluntary resolution including mediation when it is desired by both parties. Each campus is encouraged to implement a mediation process to facilitate voluntary resolution of grievances.

## 140-23  Filing Deadlines

a.  A Step II formal grievance must be filed in writing with the grievance liaison within thirty (30) calendar days from the date on which the appointee knew, or could reasonably be expected to know, of the event or act that gave rise to the grievance, or within thirty (30) calendar days after the date of separation, whichever is earlier.

b.  A Step III formal grievance appeal must be filed in writing with the grievance liaison within fifteen (15) calendar days from the date on which the Step II response is issued.

Rev.  04/18/2025                                                          Page 2

GENERAL UNIVERSITY POLICY REGARDING
ACADEMIC APPOINTEES
Non-Senate Academic Appointees/Grievances

APM - 140

    c.  Filing deadlines shall apply unless a written extension has been granted by the grievance liaison.  Either party may submit a written request for an extension to a filing deadline. It is the responsibility of the grievant to file a Step II formal grievance or a Step III formal grievance appeal by the filing deadline or to file a written request for an extension before the filing deadline.

### 140-31  Step I – Informal Grievance Resolution

    a.  Step I of the grievance process is the attempt at informal resolution. Prior to filing a Step II formal grievance, the grievant is encouraged to attempt an informal resolution with  the immediate supervisor or responsible administrator whose action is being grieved. Attempts at informal resolution do not extend the time limits for filing a formal grievance unless a written extension is granted by the grievance liaison.

    b.  If informal resolution with the immediate supervisor or responsible administrator is attempted but unsuccessful, a grievant may request that the grievance liaison assist in resolving the grievance. Where appropriate, the grievance liaison may work with the parties to reach an informal resolution.

    c.  When a grievance alleges sexual harassment, the grievant may elect to substitute the campus Sexual Harassment Complaint Resolution Procedure as Step I.  If a grievant selects this mechanism and the complaint is not resolved to the grievant's satisfaction, the grievant may file a Step II formal grievance in writing with the grievance liaison within fifteen (15) calendar days from the date the grievant is notified of the result of the pre- grievance complaint resolution process of the sexual harassment procedure or within forty-five (45) calendar days from the date the grievant filed the sexual harassment complaint, whichever is earlier.

### 140-32  Step II – Formal Grievance Review

    a.  If a grievance is not resolved informally to the satisfaction of the grievant, the grievant may file a Step II formal grievance. A Step II grievance must be filed in writing with the grievance liaison within the thirty (30) calendar-day period specified in APM - 140-23-a unless a written extension has been granted by the grievance liaison. Except by written mutual agreement of the parties, no additional issues shall be introduced after the Step II grievance has been filed. Attempts at informal resolution do not extend the time limits for filing a formal grievance unless a written extension is granted by the grievance liaison. Attempts at informal resolution may continue after a formal grievance has been filed, but are not required.

    b.  The formal written grievance must include the following information.

GENERAL UNIVERSITY POLICY REGARDING            APM - 140
ACADEMIC APPOINTEES
Non-Senate Academic Appointees/Grievances

    (1)  If the grievance alleges that a specific administrative act was arbitrary or capricious and adversely affected the grievant's then-existing terms or conditions of appointment, the grievance must state the specific administrative act(s) to be reviewed, the name of the person(s) alleged to have carried out the administrative act(s), the date(s) the alleged act(s) occurred, and a description of how the administrative act(s) were arbitrary or capricious.

    (2)  If the grievance alleges that a violation of applicable University rules, regulations, or Academic Personnel policies occurred that adversely affected the grievant's then- existing terms or conditions of appointment, the grievance must state the applicable University rules, regulations, or Academic Personnel policies the grievant believes have been violated; the name of the person(s) alleged to have violated the applicable University rules, regulations, or Academic Personnel policies; the date(s) the alleged violation(s) occurred; and a description of how the rules, regulations, or Academic Personnel policies have been violated.

    (3)  All grievances must state how the alleged act(s) and/or violation(s) adversely affected the grievant's then-existing terms or conditions of appointment and the remedy requested.

c.  Upon receipt of a formal written grievance, the grievance liaison shall complete an initial review of the grievance and determine whether the grievance is complete, timely, within the jurisdiction of APM - 140, and contains sufficient facts which support the allegations made in the grievance. Within ten (10) calendar days, the grievance liaison shall notify the grievant in writing of the acceptance of the grievance. If the grievance is not accepted, the reasons shall be specified as follows:

    (1)  If the grievance liaison determines that the grievance is incomplete or factually insufficient, the grievant will have ten (10) calendar days from the date of the written notice to provide information to make the grievance complete, including additional facts. If the grievant fails to make the grievance complete or provide sufficient facts, the grievance will be dismissed.

    (2)  If the grievance liaison determines that the grievance is untimely or outside the jurisdiction of APM - 140, the grievance will be dismissed.

    (3)  If the grievance raises multiple issues, the grievance liaison will make a determination described above with regard to each issue. The grievance liaison may accept some issues and dismiss others pursuant to this review process.

    (4)  If all or part of a grievance is dismissed at this stage, the grievance liaison will provide the grievant with a written explanation of the basis for the dismissal.

GENERAL UNIVERSITY POLICY REGARDING
ACADEMIC APPOINTEES
Non-Senate Academic Appointees/Grievances

APM - 140

d.  When a formal written grievance is accepted, the grievance liaison shall forward the grievance and any supportive materials to the Step II reviewer for review and written decision, and notify the Step II reviewer and the grievant of the date the Step II response is due. Generally, the Step II reviewer will be the department or unit head. However, if the department or unit head took the action that is being grieved, the grievance liaison may exercise discretion and designate another administrator as the Step II reviewer, and so notify the department or unit head and the grievant.

e.  If a Step II grievance raises allegations of discrimination, harassment, or retaliation in violation of APM - 035, the grievance liaison shall forward a copy of the grievance to the appropriate campus compliance office for review.  Each campus shall implement procedures for the investigation of such grievances under this policy that include procedures for coordination with the relevant campus compliance offices such as Title IX, Title VII, ADA, and/or Equal Employment Office. The results of any related grievances or investigations shall be provided to the grievance liaison. At the discretion of the grievance liaison, information regarding related grievances or investigations may be forwarded to the Step II reviewer for consideration in making a Step II decision.

f.  The Step II reviewer shall review the grievance and, if appropriate, shall investigate and/or meet with the parties. Within thirty (30) calendar days from the date of receipt of the formal grievance, the Step II reviewer shall send a written response to the grievant and the grievance liaison.  The response will include a statement that the grievance is denied or upheld in whole or in part and that the grievant has the right to appeal the decision to Step III of the grievance procedure.

### 140-33  Step III – Formal Grievance Appeal

a.  A formal grievance not resolved to the satisfaction of the grievant at Step II may be appealed in writing to Step III with the grievance liaison within fifteen (15) calendar days from the date on which the Step II response is issued. The Step III formal grievance appeal must set forth the unresolved issue(s) and the remedy requested. Except by written mutual agreement of the parties, no issues shall be introduced in the appeal that were not included in the original grievance.

b.  All formal grievance appeals will be subject to Step III-A administrative consideration unless there is a written request for Step III-B hearing consideration and the issue(s) appealed are subject to Step III-B hearing consideration.

(1)  **Step III-A  Administrative Consideration**

(a)  Except when otherwise eligible for hearing consideration, within seven (7) calendar days from receipt of a formal grievance appeal, the grievance liaison

shall forward the appeal, the Step II formal grievance, and the Step II response to the Chancellor for review and written decision.

(b) Based on the record, the Chancellor shall determine whether the Step II formal grievance was properly reviewed and whether the decision made at Step II shall be upheld, rejected, or modified.

(c) The Chancellor shall provide a final written decision to the grievant within thirty (30) calendar days following receipt of the formal grievance appeal. The written decision shall include a statement of the reasons if the decision of the Step II reviewer is rejected or modified in whole or in part and a statement that the decision is final.

(2) **Step III-B   Hearing Consideration**

(a) Only the following issues may be appealed for Step III-B hearing consideration:

- non-reappointment (see APM - 137-30-c);

- layoff or involuntary reduction in time (see APM - 145);

- corrective action: written censure, suspension, reduction in salary, or demotion (see APM - 150);

- dismissal (see APM - 150);

- medical separation (see APM - 080);

- allegations of discrimination in violation of APM - 035 involving non-reappointment, layoff, involuntary reduction in time, corrective action, or dismissal;

- allegations that procedures in a personnel review were not in consonance with the applicable rules and requirements of the University and/or that the challenged decision was reached on the basis of impermissible criteria, including (but not limited to) race, color, national origin, religion, sex, sexual orientation, gender identity, pregnancy, physical or mental disability, medical condition (cancer-related or genetic characteristics), genetic information (including family medical history), ancestry, marital status, age, citizenship, service in the uniformed services as defined by the Uniformed Services Employment and Reemployment Rights Act of 1994 or political conviction.

GENERAL UNIVERSITY POLICY REGARDING
ACADEMIC APPOINTEES
Non-Senate Academic Appointees/Grievances

APM - 140

     (b) Within seven (7) calendar days from receipt of a written request for hearing consideration, the grievance liaison shall determine whether the grievant has identified an issue eligible to be appealed for hearing consideration. If the grievance liaison determines the appeal does not identify an issue eligible to be appealed for hearing consideration, the grievance liaison shall notify the grievant and submit the appeal for determination under Step III-A administrative consideration. When an appeal is eligible for hearing consideration, the grievance liaison shall coordinate a hearing consistent with the policies set forth in APM - 140-80.

## 140-80  Conduct of Hearing

In advance of the hearing, the parties shall attempt to stipulate in writing issues to be submitted for review at the hearing. If the parties cannot agree on the issues, the hearing officer shall define them.

Hearings shall be conducted in accordance with the following standards.

a. **Election of Hearing Officer**

    (1) The grievant shall elect whether the grievance is heard by a University or a non-University hearing officer. Election by the grievant shall be in writing and shall be final. The Chancellor shall establish procedures for the selection of the University hearing officer. If the grievant elects a non-University hearing officer, in accord with campus procedures the University shall select the provider. The procedures of the chosen provider shall be used to select the hearing officer.

    (2) Whenever possible, within forty-five (45) calendar days from the receipt of the election a hearing officer shall be selected and within sixty (60) calendar days thereafter a hearing date shall be scheduled. The hearing officer shall coordinate the hearing process through the grievance liaison.

b. **Hearing**

    (1) The hearing officer shall convene a hearing in which each party shall have the opportunity to present evidence, cross-examine witnesses, and submit rebuttal evidence. Evidence may be oral and/or documentary. Issues regarding the admissibility and weight of evidence shall be decided by the hearing officer. The hearing officer shall not have the authority to issue subpoenas. The hearing officer shall handle all procedural issues that arise before and during the hearing.

    (2) Upon request, each party shall provide the other with copies of materials to be introduced at the hearing and names of witnesses who will testify on the party's

Rev.  04/18/2025

Page 7

GENERAL UNIVERSITY POLICY REGARDING
ACADEMIC APPOINTEES
Non-Senate Academic Appointees/Grievances

APM - 140

behalf in its case.  To the extent possible, such materials and names of witnesses shall be exchanged at least ten (10) calendar days prior to the hearing.

(3) In cases alleging a violation of APM - 137-30-c, 145, or 150, the University's representative shall proceed first in presenting the University's case at the hearing. In all other cases, the grievant shall proceed first in presenting the case at the hearing.

(4) The hearing shall be closed unless both parties agree in writing to the presence of additional persons. In the absence of such an agreement, the hearing shall be closed to all persons other than the principal parties to the grievance, i.e., the supervisor or department or unit head, the supervisor's or department or unit head's representative, the grievant, the grievant's representative, and the grievance liaison.

(5) All materials, reports, and other evidence introduced into the hearing and recorded by an audio recorder, stenographic services, or by other means shall be considered confidential to the extent allowed by law and University policy.

(6) The hearing officer shall be bound by the provisions of APM - 160-20- d(2) pertaining to the Academic Senate Committee on Privilege and Tenure regarding access to records.

(7) An audio recording will be made by the University unless the parties agree in advance to share the costs of making a stenographic record. The grievant shall be permitted to arrange for stenographic recording at the grievant's expense if the University does not agree to share the cost. The parties should be made aware that an audio recording is being made, who will have custody of the recording, and how copies may be obtained.

c. **Hearing Officer's Authority**

(1) The hearing officer shall provide the parties in the case and the Chancellor with a written statement of findings and recommendation(s) within thirty (30) calendar days of the close of the hearing. In cases alleging a violation of APM - 145 or 150, the hearing officer shall determine whether the University has established by a preponderance of evidence that it had good cause to take such action. In cases alleging a violation of APM - 137-30-c, the hearing officer shall determine whether the University has established by a preponderance of evidence that it met the standard set forth in APM - 137-30-c.  In all other cases, the hearing officer shall determine whether the grievant has established that (1) a specific administrative act was arbitrary or capricious (see APM - 140-4-b) and adversely affected the appointee's then-existing terms or conditions of appointment; and/or (2) a violation of applicable University rules, regulations, or Academic Personnel policies occurred which adversely affected

the appointee's then-existing terms or conditions of appointment. The hearing officer shall make findings of fact based upon the evidence presented at the hearing. The hearing officer shall not recommend adding to, deleting from, or otherwise modifying the provisions of University rules, regulations, or Academic Personnel policies.

(2)  No evidence other than that presented at the hearing shall be considered by the hearing officer or have weight, except that notice may be taken of any facts that are commonly known and accepted by the parties.

(3)  The hearing officer shall not substitute the hearing officer's judgment for the academic judgment of a peer review committee or administrative officer, nor shall the hearing officer be empowered to evaluate the academic qualifications or competence of academic appointees.

(4)  The Chancellor shall review the hearing officer's findings and recommendations and issue a final written decision within thirty (30) calendar days of receipt of the hearing officer's findings and recommendation(s). The Chancellor shall provide to the grievant a statement of the reasons if the hearing officer's recommendation(s) is rejected or modified. If a decision is based on facts different from those found by the hearing officer, those findings must be based on materials in the record.

d.  **Fees**

There shall be no cost to the grievant for a University hearing officer. In the case of a grievance heard by a non-University hearing officer, the hearing officer's fees shall be borne equally by the University and the grievant if the Chancellor accepts the hearing officer's recommendation(s). The fee shall be borne entirely by the University if the Chancellor rejects or modifies the recommendation(s) of the non-University hearing officer.

## 140-85  General Provisions

a.  **Representation**

Grievants may represent themselves or may be represented by another person at any stage of the grievance process. The University shall be represented as the Chancellor deems appropriate; representation may be provided by the Office of the General Counsel.

b.  **Time Limits**

Prior to expiration of a time limit, extensions may be granted by the grievance liaison upon written request by either party. If the grievant fails to meet a deadline, the grievance will be considered resolved on the basis of the last University response. If a University official

GENERAL UNIVERSITY POLICY REGARDING                                          APM - 140
ACADEMIC APPOINTEES
Non-Senate Academic Appointees/Grievances

fails to meet a deadline, the grievant may move the grievance to the next step in the process. Time limits that expire on days that are not business days at the location where the grievance is filed shall be automatically extended to the next University business day.

c. **Pay Status**

The grievant and the grievant's representative, if employed by the University, shall be granted leave with pay based on their regular pay status to attend hearings and meetings convened by the University to consider grievances under this policy. Time spent by the grievant and the grievant's representative in investigation and preparation of a grievance shall not be on pay status. Time spent by University employee-witnesses in meetings and hearings convened by the University shall be taken as leave with pay based on their regular pay status.

d. **Remedy**

If the grievance is sustained in whole or in part, the remedy shall not exceed restoring to the grievant the pay, benefits, or rights lost either as a result of the violation of University rules, regulations, or Academic Personnel policies, or as a result of an arbitrary or capricious administrative action, less any income earned from any other employment. If the hearing officer's findings and recommendation(s) include a remedy for back pay, the amount of back pay shall be determined by the administration. Disputes over the amount of back pay due may be referred back to the hearing officer for a separate recommendation. Any claim of back pay by a grievant must be supported by appropriate documentation. Payment of attorney's fees shall not be part of the remedy.  Unless specifically authorized by the grievance liaison, compensation shall not be paid for any period that is the result of extension(s) of time requested by or on behalf of the grievant.

e. **Consolidation of Grievances**

The following may be consolidated in one review: grievances of two or more academic appointees, where the grievances are related and consolidation is appropriate under the circumstances; two or more grievances filed by the same grievant that are based on the same incident, issues, or act; or two or more grievances filed by the same grievant that are based on the same pattern of conduct. The grievance liaison shall decide whether grievances will be consolidated.

**Revision History**

April 18, 2025:
- Technical revisions to remove redundant policy language and add Equal Employment Opportunity Office to the list of campus compliance offices.

April 20, 2022:
- Technical revisions to update references to Regental governing documents.

GENERAL UNIVERSITY POLICY REGARDING                                      APM - 140
ACADEMIC APPOINTEES
Non-Senate Academic Appointees/Grievances

September 23, 2020:
- Technical revision to remove gendered language and to correct minor grammatical errors.

For details on prior revisions, please visit the policy issuance web page.