BRYAN H. HECKENLIVELY (State Bar No. 279140)
bryan.heckenlively@mto.com
MILES W. UNTERREINER (State Bar No. 347959)
miles.unterreiner@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street Twenty-Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000
Facsimile: (415) 512-4077

Attorneys for Defendants The Regents of the University of California, Sam Hawgood, Catherine Lucey, Robert Wachter, Won Ha, and Tracey Tsugawa

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUPA MARYA, M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA; SAM HAWGOOD; CATHERINE LUCEY; ROBERT WACHTER; TRACEY TSUGAWA; BRIAN ALLDREDGE; WON HA; AND DOES 1-20,<br><br>Defendants. | Case No. 3:25-cv-04716-MMC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: October 30, 2026<br>Time: 9:00 a.m.<br>Judge: Hon. Maxine M. Chesney<br>Courtroom: 7 |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 6

A. Marya Continues to Sue The Regents Notwithstanding This Court's Order. ........ 6

B. Marya's Claims Continue to Fail at the Threshold Based on Standing and Preclusion Doctrines. ........ 6

1. The 805 Report Does Not Establish Standing. ........ 7

2. Judicial Preclusion Prevents Marya from Challenging the Letter of Censure. ........ 8

3. Marya's Remaining Claims for Relief Fail. ........ 12

C. Any Personal-Capacity Claims Against Lucey, Tsugawa, and Ha Fail for Lack of Personal Involvement. ........ 14

V. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................6

*Burch v. City of Chubbuck*,
146 F.4th 822 (9th Cir. 2025)....................12

*Cal. Council of Blind v. Weber*,
758 F. Supp. 3d 1054 (N.D. Cal. 2024) ....................8

*Chapman v. Pier 1 Imports (U.S.)*,
631 F.3d 939 (9th Cir. 2011)....................12, 13

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ....................13

*Cobb. v. Howard*,
2022 WL 16710460 (D. Ariz. Oct. 19, 2022) ....................8

*Davis v. FEC*,
554 U.S. 724 (2008) ....................8

*Doe v. Regents of the Univ. of Cal.*,
891 F.3d 1147 (9th Cir. 2018)....................6, 8, 9, 10

*Foretich v. United States*,
351 F.3d 1198 (D.C. Cir. 2003) ....................13

*Fortyune v. Am. Multi-Cinema, Inc.*,
364 F.3d 1075 (9th Cir. 2004)....................12

*Gonzales v. Gorsuch*,
688 F.2d 1263 (9th Cir. 1982)....................8

*Gonzalez v. U.S. ICE*,
975 F.3d 788 (9th Cir. 2020)....................7

*Jones v. Williams*,
297 F.3d 930 (9th Cir. 2002)....................14

*Juliana v. United States*,
947 F.3d 1159 (9th Cir. 2020)....................7, 12, 13

*LeBlanc v. Wu*,
2016 WL 11517361 (C.D. Cal. Oct. 11, 2016) .................... 8

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) .................... 6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................... 7

*Mayfield v. United States*,
599 F.3d 964 (9th Cir. 2010) .................... 12

*Moore v. Garnand*,
83 F.4th 743 (9th Cir. 2023) .................... 15

*Nunez v. City of Los Angeles*,
147 F.3d 867 (9th Cir. 1998) .................... 16

*O'Handley v. Weber*,
62 F.4th 1145 (9th Cir. 2023) .................... 15

*Peck v. Montoya*,
51 F.4th 877 (9th Cir. 2022) .................... 14

*Phillips v. U.S. Customs and Border Prot.*,
74 F.4th 986 (9th Cir. 2023) .................... 12

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .................... 6

*Sweet v. Cardona*,
121 F.4th 32 (9th Cir. 2024) .................... 13

*Thomas v. Cnty. of Humboldt*,
124 F.4th 1179 (9th Cir. 2024) .................... 15

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .................... 3

*Walsh v. Nev. Dep't of Hum. Res.*,
471 F.3d 1033 (9th Cir. 2006) .................... 13

**STATE CASES**

*De Cuir v. Cnty. of Los Angeles*,
64 Cal. App. 4th 75 (1998) .................... 11

*Gupta v. Stanford Univ.*,
124 Cal. App. 4th 407 (2004) .................... 9

*Knight v. S. Orange Cmty. Coll. Dist.*,
60 Cal. App. 5th 854 (2021) .......... 11

*Murray v. Alaska Airlines, Inc.*,
50 Cal. 4th 860 (2010) .......... 10

*O'Brien v. Regents of Univ. of Cal.*,
92 Cal. App. 5th 1099 (2023) .......... 9

*Pomona Coll. v. Superior Court*,
45 Cal. App. 4th 1716 (1996) .......... 10, 11

*Y.K.A. Indus., Inc. v. Redevelopment Agency of San Jose*,
174 Cal. App. 4th 339 (9th Cir. 2009) .......... 10, 11

**STATE STATUTES**

Cal. Bus. & Prof. Code § 805 .......... 4, 8

Cal. Civ. Proc. Code § 1094.5 .......... 8, 9, 10, 11

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(1) .......... 1, 6, 16

Fed. R. Civ. P. 12(b)(6) .......... 1, 6, 16

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, on October 30, 2026, at 9:00 a.m., Defendants will and hereby do move for an order dismissing Plaintiff's Second Amended Complaint ("SAC").

This motion seeks dismissal of the SAC pursuant to Federal Rule of Civil Procedure 12(b)(1) for failure to establish jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. It is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities, Defendants' Request for Judicial Notice, the Declaration of Bryan H. Heckenlively in Support of Defendants' Motion to Dismiss the SAC and Request for Judicial Notice ("Heckenlively Decl."), all pleadings and papers on file, and such other matters as may be presented to this Court.

**STATEMENT OF RELIEF SOUGHT**

Defendants seek an order pursuant to Rules 12(b)(1) and/or 12(b)(6) dismissing the SAC and each of its causes of action for lack of subject matter jurisdiction and/or failure to state a claim for relief.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The University of California, San Francisco ("UCSF"), is deeply committed to principles of academic freedom and free expression. At the same time, UCSF is dedicated to ensuring equal opportunity and an environment free from harassment and discrimination based on race, sex, religion, shared ancestry, national origin, and other protected characteristics—as required by state and federal law.

It therefore caused alarm when Plaintiff Dr. Rupa Marya, then a UCSF Professor of Medicine, asked her followers on social media how they would "address[]" the "concern" that one of the newest medical students at UCSF had "just come from Israel." SAC ¶¶ 49, 51. Marya claimed that, solely because this student was from Israel, several UCSF medical students were concerned that he "may have been directly involved in the ongoing genocide of the Palestinian people." *Id.* ¶ 49. And this was not the first time Marya had posted what UCSF viewed as a "racist . . . conspiracy theory" online. *Id.* ¶ 43. In response, UCSF placed her on administrative

leave and initiated a disciplinary proceeding. Ultimately, UCSF dismissed Marya from her faculty position and formally censured her.

Two weeks later, Marya was in federal court, claiming that UCSF violated her First Amendment rights. But her Complaint—which did not even acknowledge her termination—suffered from a slew of deficiencies, and this Court dismissed it in full. Marya then filed the First Amended Complaint ("FAC"), but many of the same problems persisted. Accordingly, the Court dismissed the entire lawsuit once again, holding Marya had not alleged facts sufficient to establish standing. *See* Dkt. No. 69 ("Order on Mot. to Dismiss FAC") (May 22, 2026).

Marya has now filed a complaint for the third time, and the outcome should be the same. She has added a demand for an order directing UC Defendants to withdraw a report they filed with the Medical Board of California. She has also supplemented her allegations related to the letter of censure that UCSF put in her personnel file. But those additions make no difference. Marya cannot establish standing based on the report, because it was submitted after she filed this lawsuit and because UCSF lacks the power to claw it back. And, regardless of any new allegations, Marya's failure to file a writ petition in California state court still precludes this Court from reviewing her censure.

That leaves only the allegations that already appeared in the FAC. But as this Court found before, they are insufficient. Three complaints and multiple rounds of briefing have eliminated any doubt that Marya filed this lawsuit to litigate alleged harms that have already occurred. Those claims of past injury simply cannot support her continued insistence on prospective relief. As a result, this lawsuit must be dismissed in full for the third time—this time, with prejudice.

## II. BACKGROUND

Marya joined the UCSF faculty in 2007. SAC ¶ 19. In addition to her clinical work with UCSF patients and more traditional forms of academic writing, Marya posts actively on social media. *Id.* ¶¶ 25-27.

Marya describes her social media presence as "deeply critical of Israel state policy and Israeli government leadership." SAC ¶ 30. After the attacks against Israel on October 7, 2023, she claims to have regularly taken issue with the "policies, actions, and political ideologies of the

Israeli government" and "sp[oken] out against the genocidal campaign waged by Israel in Gaza." *Id.* ¶¶ 31-32. As a result, Marya allegedly received threats to her UCSF email, *id.* ¶ 33, and was subjected to other "hate mail, defamatory statements, and baseless accusations" by members of the public, *id.* ¶ 43. She also alleges that California State Senator Scott Wiener routinely condemned her social media posts. *Id.* ¶¶ 40, 51.

During 2024, two of Marya's social media threads sent shockwaves through the UCSF community. In January 2024, she posted what she describes as a "thread . . . examining the racist and supremacist ideologies embedded in Zionism's project of colonization and its possible negative impacts on health outcomes." SAC ¶ 39. The opening post of the thread called for "examin[ation]" of the "presence of Zionism in US medicine" and accused "Zionist doctors" of "justifying the genocide of Palestinians." Heckenlively Decl., Ex. A.[1] Her thread triggered a significant backlash online. SAC ¶¶ 40-43. At least partly in response, UCSF issued a statement of its own on social media, denouncing the "tired and familiar racist conspiracy theory . . . that 'Zionist' doctors are a threat to Arab, Palestinian, South Asian, Muslim, and Black patients, as well as the US health system." Heckenlively Decl., Exs. C, D, E.

Second, in September 2024, Marya shared a post on social media expressing concern—without any apparent basis—that a UCSF medical student from Israel may have "participated in the genocide of Palestinians." Heckenlively Decl., Ex. B. She alleges that, in August and September 2024, she was approached by UCSF medical students who were "concerned for their safety around a new classmate who told them he had just come from Israel." SAC ¶ 49. Because Israel has mandatory military service, the students allegedly speculated that this individual "may have been directly involved in the ongoing genocide of the Palestinian people." *Id.* On September 21, Marya "posted about the medical students' concern on social media" and asked her followers "how this concern should be addressed." *Id.* ¶ 51; *see* Heckenlively Decl., Ex. B.

---

[1] Exhibits A through G and Exhibit I to the Heckenlively Declaration contain social media posts and disciplinary documents that "form[] the basis of [Marya's] claim[s]" and are therefore incorporated by reference into the SAC. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); Heckenlively Decl., Exs. A-G, I; SAC ¶¶ 39, 43, 51, 62, 64, 66.

The next day, UCSF placed Marya on leave pending an investigation. SAC ¶¶ 52, 54. Several days later, on October 1, 2024, UCSF's Executive Medical Board also suspended Marya's clinical privileges, citing the concern that she posed a "possible imminent danger." *Id.* ¶ 55. Marya's privileges were reinstated two weeks later. *Id.* The disciplinary investigation into Marya's conduct continued into 2025. *Id.* ¶¶ 58, 62. On April 25, 2025, UCSF Chancellor Sam Hawgood sent Marya a notice of intent to impose discipline, which informed her that UCSF had determined that her social media activity ran afoul of the Faculty Code of Conduct. *Id.* ¶ 62. The notice also specified that the University intended to dismiss Marya from the faculty and place a letter of censure in her academic personnel file for a period of ten years. *Id.* On May 20, 2025, her termination took effect, and UCSF added the letter of censure to her file. *Id.* ¶ 64.

In December, UCSF filed what is known as an "805 report" with the Medical Board of California. SAC ¶ 66; Heckenlively Decl., Ex. F. The report takes its title from Section 805 of the California Business and Professions Code, which requires the chief of a medical staff to file a report when a peer review body takes certain actions against a physician. Cal. Bus. & Prof. Code § 805(b), (c), (e). The report noted that Marya had been suspended and terminated. Heckenlively Decl., Ex. F at 2. In an attachment, it also explained that because Marya was no longer employed by UCSF, the University's malpractice insurance no longer covered her, and that because she failed to provide proof of alternate insurance, she could no longer remain a member of the medical staff. *Id.* at 4.

Marya originally filed this lawsuit on June 4, 2025. The action named the "Board of Regents of the University of California"[2] and six UCSF officials: Chancellor Sam Hawgood, Executive Vice Chancellor and Provost Catherine Lucey, Chair of the Department of Medicine Robert Wachter, Vice Chancellor of Communications Won Ha, Associate Vice Chancellor Tracey Tsugawa, and Vice Provost of Academic Affairs Brian Alldredge.[3] Compl. ¶¶ 7-12. Marya

---

[2] Although sued as "Board of Regents of the University of California," the correct name of this Defendant is The Regents of the University of California—the entity that directs and operates the UC system. UCSF is an operating entity of The Regents.

[3] Marya has dropped her claim against Alldredge in the SAC.

brought claims for First Amendment retaliation under § 1983 and conspiracy to violate her constitutional rights under § 1985. She sought nominal damages and declaratory and injunctive relief. Compl. Prayer for Relief ¶¶ 1-4.[4]

Defendants moved to dismiss the Complaint. Dkt. No. 35 ("Mot. to Dismiss Compl."). They argued that Marya's case suffered from a number of threshold defects—improperly sued defendants, sovereign immunity, and a failure to plead standing. On January 12, 2026, this Court agreed and dismissed the Complaint. Dkt. No. 50 ("Order on Mot. to Dismiss Compl.") ¶¶ 1-5. The Court held that The Regents was an improper defendant, leaving only the individual officials. *Id.* ¶ 1. The Court went on to conclude that those individual officials could not be sued in their individual capacities, because Marya had not pleaded they were personally involved in a constitutional violation. *Id.* ¶ 4. And they also could not be sued in their official capacities, because Marya's lack of standing and the doctrine of sovereign immunity respectively barred her requests for prospective relief and nominal damages. *Id.* ¶¶ 2-3. Finally, the Court held that Marya failed to state a claim for conspiracy, *id.* ¶ 5, and dismissed the Complaint in full.

Marya filed her FAC, which dropped her claim for conspiracy and her request for nominal damages. But she continued to press a claim for First Amendment retaliation under § 1983. FAC ¶¶ 75-81. She acknowledged that she no longer works at UCSF, but continued to seek sweeping declaratory and injunctive relief. FAC Prayer for Relief ¶¶ 1-5.

Defendants moved to dismiss again. Once again, this Court granted the motion, dismissing the FAC for failure to plead that the prospective relief Marya sought would redress the injuries she alleged. *See* Order on Mot. to Dismiss FAC 1.

On August 4, 2026, Marya filed the SAC. She now asserts that the letter of censure and the 805 report have left her unemployable. SAC ¶¶ 75-84. She has also added a request for an order directing Defendants to "withdraw and cancel" the report. SAC Prayer for Relief ¶ 5.

[4] The day before filing this federal action, Marya filed a parallel lawsuit in California state court. *See* Dkt. No. 31 (Notice of Pendency of Other Action or Proceeding). That complaint sought relief against Defendants under the California Fair Employment and Housing Act, the Free Speech Clause of the California Constitution, and the Tom Bane Civil Rights Act. *See* Dkt. No. 31-1 ¶¶ 79-147 (State-Court First Amended Complaint).

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

On a motion to dismiss under Rule 12(b)(1) for failure to allege facts sufficient to support standing, a court must likewise "accept[] the truth of the plaintiff's allegations." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). The complaint must be dismissed if its allegations are "insufficient on their face to invoke federal jurisdiction." *Id.* (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

## IV. ARGUMENT

### A. Marya Continues to Sue The Regents Notwithstanding This Court's Order.

As this Court already held in its order dismissing Marya's Complaint, The Regents cannot be sued under § 1983. Order on Mot. to Dismiss Compl. ¶ 1. Nor can it be the subject of an *Ex parte Young* action. *See Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018). As Defendants have pointed out, these defects from the Complaint remained in the FAC. Dkt. No. 55 ("Mot. to Dismiss FAC") 5. They remain in the SAC as well. SAC at p. 21. Once again, "to the extent" her "claim is brought against [T]he Regents, [it] is subject to dismissal." Order on Mot. to Dismiss Compl. ¶ 1.[5]

### B. Marya's Claims Continue to Fail at the Threshold Based on Standing and Preclusion Doctrines.

Marya has tried to salvage her case by 1) adding a request that Defendants "withdraw and cancel" the 805 report and 2) supplementing the allegations about the letter of censure. Neither

---

[5] To the extent Marya means to bring an *Ex parte Young* action against The Regents, *see* FAC ¶ 74 (stressing that "this case is situated within . . . *Ex parte Young*"), her claim still fails. *Ex parte Young* applies only to suits against individual state officers in their official capacities, *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018), not to suits against a state instrumentality itself.

helps her avoid dismissal. She cannot establish standing based on the 805 report, both because it came after she filed this lawsuit and because it *still* does not solve her redressability problem. And she cannot predicate her case on the letter of censure, because Marya's failure to file a writ petition in California state court precludes this Court from reviewing UCSF's decision to place that letter in her file. As to the other remedies Marya demands, she has added no new allegations to address this Court's redressability ruling. As a result, the SAC must be dismissed in its entirety.

**1. The 805 Report Does Not Establish Standing.**

"[S]ubject-matter jurisdiction depends on the state of things at the time" when the "plaintiff commenced suit." *Gonzalez v. U.S. ICE*, 975 F.3d 788, 803 (9th Cir. 2020) (citation omitted). Accordingly, a plaintiff bears the burden of establishing he or she had Article III standing at the outset of the litigation. *Id.* In evaluating whether the plaintiff has made the necessary showing, a court looks to the "allegations in the operative amended complaint." *Id.* But those allegations must show that the plaintiff had standing when the original complaint was filed. *See id.* ("[W]e assess Gonzalez's standing for prospective injunctive relief as of the time when he commenced suit, relying on the allegations in the operative amended complaint.").

The 805 report cannot establish standing because it was not submitted until after Marya filed this lawsuit. She filed suit on June 4, 2025. She alleges Defendants filed the report six months later, on December 5, 2025. SAC ¶ 66. Accordingly, even if the report establishes a cognizable injury, Marya did not suffer it until after she sued. Her additional allegations about the report and her request for related relief therefore cannot cure the standing problem this Court identified in its prior order. *See* Order on Mot. to Dismiss FAC 1.

The 805 report also cannot establish standing for a second reason: the relief Marya has requested would not redress her purported injuries. As the plaintiff she bears the burden of establishing all three components of the "irreducible constitutional minimum" of standing, namely injury in fact, traceability, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). The redressability prong requires her to demonstrate that the requested remedy is "substantially likely to mitigate" her asserted injuries. *Juliana v. United States*, 947 F.3d 1159, 1170 (9th Cir. 2020). She cannot make that showing if this Court is "unable to grant the relief"

she seeks. *Gonzales v. Gorsuch*, 688 F.2d 1263, 1267 (9th Cir. 1982).

Those principles prevent Marya from seeking an order directing Defendants to "withdraw and cancel the 805 Report." SAC Prayer for Relief ¶ 5. A court cannot order relief directing a defendant to take action the defendant lacks authority to take. *Cal. Council of Blind v. Weber*, 758 F. Supp. 3d 1054, 1057 (N.D. Cal. 2024) (noting that standing does not exist where defendant's "statutorily defined authority d[oes] not include providing the relief sought"); *see also Cobb. v. Howard*, 2022 WL 16710460, at *2 (D. Ariz. Oct. 19, 2022); *LeBlanc v. Wu*, 2016 WL 11517361, at *1 (C.D. Cal. Oct. 11, 2016). And here, Marya has not established that Defendants have any power to claw back the 805 report. She alleges that the report is on file with the California Medical Board. SAC ¶ 66. And the Board is required to maintain any report for a "period of three years after receipt." Cal. Bus. & Prof. Code § 805(i). Defendants are not aware of any authority by which they can withdraw or cancel a report that has already been filed. Accordingly, Marya has not established that Court can order the relief she seeks, and she continues to fail to plead redressability. *See Davis v. FEC*, 554 U.S. 724, 734 (2008) (plaintiff must establish standing "for each form of relief that is sought" (citation modified)).

**2. Judicial Preclusion Prevents Marya from Challenging the Letter of Censure.**

Marya's new allegations related to the letter of censure fail because the doctrine of judicial preclusion bars Marya from challenging that letter.

In the Ninth Circuit, courts "give preclusive effect" to a decision of a California state agency "if the California courts would do so." *Doe*, 891 F.3d at 1155. And under California law, an agency decision is entitled to preclusive effect unless the aggrieved party challenges it via an "exclusive and established process for judicial review"—typically, a petition for a writ of administrative mandamus under § 1094.5 of the California Code of Civil Procedure. *Id.* (citation omitted). When a § 1094.5 petition is available to an aggrieved party, he or she must file one in order to prevent the administrative decision from precluding later legal challenges. *See id.*

Those principles bar Marya from challenging the letter of censure. Administrative mandamus is the appropriate vehicle for challenging UCSF's disciplinary actions. *See Gupta v.*

*Stanford Univ.*, 124 Cal. App. 4th 407, 411 (2004) ("Whether the aggrieved party is seeking redress for termination of employment, denial of tenure or academic discipline is irrelevant to the applicability of section 1094.5."); *Doe*, 891 F.3d at 1155 (§ 1094.5 petition is "the exclusive and established process" for reviewing public university's administrative decision to suspend student (citation omitted)). Indeed, California courts will consider a challenge to a written censure under § 1094.5. *See, e.g.*, *O'Brien v. Regents of Univ. of Cal.*, 92 Cal. App. 5th 1099, 1115 (2023). Accordingly, to avoid judicial preclusion, Marya had to file such a petition. *Doe*, 891 F.3d at 1155. Her failure to do so bars her challenge to the letter of censure.

That remains true even though UCSF did not hold a hearing regarding the letter. Indeed, although Marya has argued previously that preclusion principles do not apply because she was denied a hearing, Dkt. No. 62 ("Opp. to Mot. to Dismiss FAC") 18-20, that contention fails for three separate and independent reasons.

*First*, Marya forfeited her right to a hearing on the letter of censure. California courts take the commonsense view that a litigant cannot leverage his or her own failure to participate in administrative proceedings to evade preclusion.

The SAC and incorporated documents make clear that no hearing occurred because Marya failed to invoke her right to one. Under UCSF's procedures, of which UCSF reminded Marya at the time, Marya had 15 days to respond to the notice of intent or be "deemed to . . . accept the findings and proposed sanctions." Heckenlively Decl., Ex. G at 4. The notice specified that she could also grieve the letter of censure under APM 140. *Id.* Had she done so, she would have been entitled to a full adversarial hearing. *Id.*, Ex. H at 6-8 (specifying that a "written censure" may be appealed for hearing consideration and that, in the hearing, "each party shall have the opportunity to present evidence, cross-examine witnesses, and submit rebuttal evidence"). But while Marya submitted a written response to the notice of intent, SAC ¶ 63; Heckenlively Decl., Ex. I at 3, she did not request a hearing regarding the letter.[6]

---

[6] Marya requested a hearing regarding her dismissal only. That is distinct from challenging the letter of censure. Indeed, the notice of intent provided that to challenge her censure, she had to invoke a different procedure from the one she alleges she used. *See* SAC ¶¶ 63-64 (referencing Marya's alleged requests for a hearing before the "Academic Senate"); Heckenlively Decl., Ex. G

Marya's failure to pursue a hearing confirms that preclusion applies. Under California law, a party who challenges agency action through administrative remedies cannot avoid its preclusive effects by abandoning that administrative process partway through. *Murray v. Alaska Airlines, Inc.*, 50 Cal. 4th 860, 869 (2010). So long as the individual had an "opportunity to litigate" the relevant issues, preclusion applies, whether or not he or she "availed himself or herself of the opportunity." *Id.* at 869. Accordingly, a party who has a "right to . . . a formal adversarial hearing" cannot defeat preclusion by "forfeiting [that] right." *Id.* But that is precisely what Marya seeks to do here. Although she took initial steps to challenge UCSF's decision to issue a letter of censure, SAC ¶ 63, she did not request a hearing. As a result, she cannot avoid preclusion by complaining that a hearing never occurred. *See Murray*, 50 Cal. 4th at 869 ("[A] party to an administrative action who simply refused to meaningfully participate in the proceedings [is] estopped from relitigating" the "same issues.").

*Second*, even if UCSF had denied Marya a hearing on the letter of censure (which did not happen, and which the SAC does not even allege), she still had to pursue state-court judicial remedies before going to federal court. *Doe* provides that a federal plaintiff who seeks to challenge a state agency's action must first file a § 1094.5 petition, the "exclusive and established process for judicial review" of the agency decision. 891 F.3d at 1155. And a § 1094.5 petition was available to Marya whether or not she received a hearing. Indeed, § 1094.5 "expressly provides that it is the *requirement* of a hearing and taking of evidence—not whether a hearing is actually held and evidence actually taken—that triggers the availability of mandamus review." *Pomona Coll. v. Superior Court*, 45 Cal. App. 4th 1716, 1729 (1996); *see also Y.K.A. Indus., Inc. v. Redevelopment Agency of San Jose*, 174 Cal. App. 4th 339, 359, 364 (9th Cir. 2009) (although administrative decisionmaking is not preclusive when there "was no established administrative procedure by which to have a claim heard," when an agency offers procedures that are "reviewable . . . through . . . mandamus," a plaintiff cannot "bypass" filing a petition (citing *De*

---

at 4 (specifying that while Marya could challenge her dismissal by requesting a hearing before the Academic Senate, she must challenge her censure through APM 140).

*Cuir v. Cnty. of Los Angeles*, 64 Cal. App. 4th 75, 83 (1998)).[7] Accordingly, Marya's claim is barred. She cannot dispute that UCSF provides an established, procedurally robust process for adjudicating disciplinary sanctions, including a written censure, that entitled her to a hearing and other protections. Heckenlively Decl., Ex. H at 6-8. As a result, § 1094.5 was her "exclusive remedy" for challenging the letter and "any procedural defects which [she] believes existed in the . . . grievance process[]." *Pomona Coll.*, 45 Cal. App. 4th at 1729.

*Third*, and finally, even if this Court were to overlook the reality that California courts would give preclusive effect to UCSF's decision to censure Marya and scrutinize the procedures she alleges were used, preclusion would still require dismissal of her challenge. Although Marya has insisted she was denied an "'adequate opportunity to litigate' within the UCSF administrative process," Opp. to Mot. to Dismiss FAC 18 (citation omitted), the process alleged in the SAC was more than sufficient in light of the limited nature of the interests that the letter of censure implicated. UCSF provided Marya with a copy of the Ad Hoc Committee's findings that she had violated the Faculty Code of Conduct. Heckenlively Decl., Ex. G at 3. She had—and took—the opportunity to submit a written response, prepared by counsel. *Id.*; SAC ¶ 63. Afterward, UCSF informed her it had decided to impose a letter of censure, reiterating the basis for its decision. SAC ¶ 64. In light of Marya's relatively limited interest in avoiding the letter of censure (as opposed to the broader consequence of dismissal, which, as the Court has now ruled twice, Marya has no standing to challenge)—which, at most, inflicted stigmatic injury, and which Marya does not allege ever was or ever will be publicly distributed by UCSF—those procedures provided ample safeguards. *See Knight v. S. Orange Cmty. Coll. Dist.*, 60 Cal. App. 5th 854, 858 (2021) ("[R]equiring a trial-like hearing before [a college] could issue a written reprimand places too

[7] Verbatim, *Y.K.A. Industries* says that a plaintiff cannot bypass judicial review "without avoiding" preclusion. 174 Cal. App. 4th at 359 (citing *DeCuir*, 64 Cal. App. 4th at 83). It is clear from context and *DeCuir* itself that the court meant "*while* avoiding." *See DeCuir*, 64 Cal. App. 4th at 81 (holding plaintiff's failure to pursue mandamus precluded civil damages action). As the *Y.K.A. Industries* court explained, *DeCuir* and other cases "preclud[e] a party from circumventing the established process for judicial review . . . by failing to file a petition for relief in mandate before resorting to legal action." 174 Cal. App. 4th at 361 (citation and quotation marks omitted).

great a burden on the college when compared to the minor detriment to [the student]."). For this reason, too, Marya cannot elude preclusion by maintaining UCSF's administrative process was procedurally deficient.

**3. Marya's Remaining Claims for Relief Fail.**

Setting the 805 report and the letter of censure to the side, Marya's other requests for relief fail because she still lacks standing. She continues to seek purely prospective relief. And yet she has not added any allegations to establish that she faces a risk of future injury.

Even if a past injury could confer standing to seek damages, it "does not necessarily" allow a plaintiff to "seek prospective relief." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010). Instead, someone who asserts she has suffered a violation of her rights and seeks prospective relief must either allege a "'real and immediate threat of repeated injury' in the future," *Chapman v. Pier 1 Imports (U.S.)*, 631 F.3d 939, 946 (9th Cir. 2011) (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004)), or point to "continu[ing] . . . adverse effects" from the past violation, *Phillips v. U.S. Customs and Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023) (quoting *Mayfield*, 599 F.3d at 970).

Marya has not pleaded that anything she alleges in the FAC has a realistic prospect of recurring. As she has since the original Complaint, Marya once again pleads that she received hate mail and threats from members of the public in the Fall of 2023, January 2024, and October 2024. SAC ¶¶ 32-33, 40, 57. But she does not assert that she continues to receive such messages. Nor can she show that the relief she seeks is "substantially likely to redress" any injury from these messages. *See Juliana*, 947 F.3d at 1170. The messages came from members of the public, not Defendants, and so relief against Defendants could not ameliorate any alleged harm.[8]

Marya's allegations about the disciplinary actions UCSF has taken also still describe purely past events. She continues to allege she was investigated, but does not claim that any

[8] Separately, because the messages were caused not by Defendants' actions but by Marya's own statements, they also cannot give rise to a claim against Defendants on the merits. *See Burch v. City of Chubbuck*, 146 F.4th 822, 837 (9th Cir. 2025) (retaliation plaintiff must show "*the state* took an adverse employment action" against plaintiff (emphasis added)).

investigation remains active. SAC ¶ 47. Marya also pleads that the UCSF Executive Medical Board suspended her clinical privileges in October 2024. *Id.* ¶ 55. But, again, her privileges were "reinstated" just two weeks later. *Id.* These allegations do not permit the inference that Marya faces a "'real and immediate threat of repeated injury' in the future." *Chapman*, 631 F.3d at 946 (citation omitted). To the contrary, her dismissal from UCSF prevents her from showing she will be treated in a similar way going forward. *See* Order on Mot. to Dismiss Compl. ¶ 3 (holding that Marya "failed to allege facts to establish she has standing to seek injunctive relief, as she ceased working for the Regents prior to the filing of the instant action").

The same is true for Marya's allegations about her termination. This Court previously dismissed the FAC for failure to establish redressability. Order on Mot. to Dismiss FAC 1. And Marya has not added any allegations to demonstrate that the "relief [she] seek[s] is . . . substantially likely to redress" any ongoing injury from her dismissal. *Juliana*, 947 F.3d at 1170. She still does not request any of the traditional remedies for termination in this lawsuit. Instead, the relief she seeks—a declaration that her "rights have been violated" and orders enjoining Defendants to refrain from interfering with her clinical privileges in the future, to withdraw or refrain from disseminating the letter or censure, and to "refrain from any further act of retaliation," SAC Prayer ¶¶ 1-3, 6—would not have any effect on the fact that she was fired or otherwise alter her relationship with UCSF. *See Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) ("Some case law in this circuit indicates that a non-employee may have standing to sue for injunctive relief against an employer, but those non-employees were in the process of seeking reinstatement to their former positions, or seeking work from that employer."). Nor do her allegations of reputational harm and emotional distress change the calculus. Neither the "emotional consequences of a prior act," *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983), nor its "'lingering effects' on reputation . . . furnish[es] a basis for Article III standing," *Sweet v. Cardona*, 121 F.4th 32, 43 (9th Cir. 2024) (quoting *Foretich v. United States*, 351 F.3d 1198, 1213-14 (D.C. Cir. 2003)).

In short, Marya's new allegations do not resolve the deficiencies that were present in the FAC. Even after two rounds of amendments, her complaint is still fundamentally a backward-

looking grievance. It cannot support Marya's demands for purely prospective relief, and the SAC must be dismissed with prejudice.

### C. Any Personal-Capacity Claims Against Lucey, Tsugawa, and Ha Fail for Lack of Personal Involvement.

Although the SAC continues to remain unclear about whether Marya brings official-capacity or personal-capacity claims against the individually named Defendants, any personal-capacity claims against Defendants Lucey, Tsugawa, and Ha must be dismissed regardless. The arguments laid out above would defeat those claims too. Moreover, the claims fail for the independent reason that the SAC fails to plead these individuals were personally involved in a constitutional violation.[9]

Section 1983 does not create liability for "mere bystander[s]." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022) (citation and internal quotation marks omitted). To state a claim for relief under § 1983 against a particular defendant in his or her personal capacity, a plaintiff must plead that the individual was personally involved in the alleged constitutional violation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

As this Court recognized in its Order on the original Motion to Dismiss, nothing in Marya's Complaint came anywhere close to suggesting that any named official personally retaliated against Marya or was an "integral participant" in the same. *Peck*, 51 F.4th at 889; Order on Mot. to Dismiss Compl. ¶ 4. The FAC suffered from the same problem, and the SAC does as well. With respect to Defendant Tsugawa, Marya has not added a single allegation since the Complaint. Any personal-capacity claims against Tsugawa must be dismissed once again.

The SAC does add an allegation about Defendant Ha, but to no avail. The addition relates to the January 2024 social media thread that questioned the competence of "'Zionist' doctors." Several days after Marya posted that thread, UCSF issued its statement criticizing the "tired and familiar racist conspiracy theory" that "'Zionist' doctors" are a threat to their patients and the U.S. healthcare system. Heckenlively Decl., Exs. C, D, E; SAC ¶ 43. The SAC now alleges that Ha

[9] Any personal-capacity claim against Defendants Wachter and Hawgood fail for the reasons described above, *see supra*, at pp. 6-14, but not for lack of alleged personal participation.

was one of the individuals who "shared" UCSF's response on social media. SAC ¶ 72. But Ha's criticism of Marya does not qualify as an adverse employment action. A state official's own speech cannot be "construe[d] as 'adverse action'" for retaliation purposes. *O'Handley v. Weber*, 62 F.4th 1145, 1163 (9th Cir. 2023). Indeed, this Court already implicitly held as much when it dismissed the original Complaint's individual-capacity claims against Defendant Wachter notwithstanding the allegation that he played a role in issuing the same statement. *See* Order on Mot. to Dismiss Compl. ¶ 4 (dismissing claims against individual Defendants for failure to plead personal involvement); Compl. ¶ 42 (intimating Wachter had a hand in issuing the responsive statement); Mot. to Dismiss Compl. 18 (arguing Wachter's speech was not an adverse action).[10]

Any claim against Defendant Lucey remains deficient as well despite the two new allegations Marya has added since the original Complaint. First, Marya levels the baseless accusation that Lucey falsely told Marya that Alan Dershowitz planned to sue her to discourage Marya from participating in a speaking event. SAC ¶ 70. Separately, the SAC also asserts that Lucey called Marya to ask her questions about her social media activity. *Id.* ¶ 71. But both allegations are about events in 2023—months before Marya's January and September 2024 social media posts. As a result, neither amounts to actionable retaliation. *Moore v. Garnand*, 83 F.4th 743, 747 n.4 (9th Cir. 2023) (plaintiff cannot establish protected activity motivated retaliation when adverse action predated protected activity).

The problems do not stop there. Marya's allegation about the manufactured Alan Dershowitz lawsuit is also untimely. Those events allegedly occurred in February 2023, more than two years before Marya filed suit in June 2025, and outside the limitations period. *See Thomas v. Cnty. of Humboldt*, 124 F.4th 1179, 1191 (9th Cir. 2024) (two-year statute of limitations applies to § 1983 claims in California). Meanwhile, Marya's allegation that Lucey called to discuss Marya's social media activity fails on the merits. A tense conversation with a supervisor is not sufficiently adverse to give rise to a First Amendment claim. *See Nunez v. City*

[10] The same paragraph of the FAC also alleges that, like Ha, Lucey "shared" UCSF's response on social media. FAC ¶ 72. The allegation is just as lacking as to Lucey as it is as to Ha.

*of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998) ("Mere threats and harsh words are insufficient [for a retaliation claim].") This Court dismissed Marya's claim against Lucey in the first round of briefing, notwithstanding the fact that a nearly identical allegation about Lucey appeared in the original Complaint. *See* Compl. ¶ 31.

In short, the SAC offers nothing to alter this Court's previous conclusion that Marya has failed to allege that any of Defendants Lucey, Tsugawa, or Ha was personally involved in retaliating against her for her protected speech. Accordingly, any personal-capacity claim against these Defendants must once again be dismissed.

## V. CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion to dismiss the Second Amended Complaint under Rules 12(b)(1) and 12(b)(6).

DATED: September 1, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Bryan H. Heckenlively*
BRYAN H. HECKENLIVELY
Attorneys for Defendants