MARK KLEIMAN (SBN 115919)
KLEIMAN/RAJARAM
12121 Wilshire Blvd., Suite 810
Tel: (310) 392-5455
Fax: (310) 306-8491
Email: mark@krlaw.us

Jonathan Wallace (Admitted Pro Hac Vice)
PO #728
Amagansett, NY 11930
Tel: (917) 359-6234
Email: jonathan.wallace80@gmail.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RUPA MARYA, M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA; SAM HAWGOOD; CATHERINE LUCEY; ROBERT WACHTER; TRACEY TSUGAWA; BRIAN ALLDREDGE; WON HA; AND DOES 1-20<br><br>DefendantS | **Case No.: 3:25-cv-04716-MMC**<br><br>**PLAINTIFF DR. RUPA MARYA'S OPPOSITION TO DEFENDANTS UCSF et al MOTION TO DISMISS**<br><br>**Judge: Honorable Judge Maxine M. Chesney**<br><br>**DATE: September 28, 2026** |

**PLAINTIFF DR. MARYA OPPOSES DEFENDANTS UCSF et al MOTION TO DISMISS**

Dr. Marya asserts she has standing to bring this action on the grounds that her First Amendment claim may be redressed by prospective injunctive relief, and that she was not required to file a 1094.5 mandamus petition in state court before bringing this action.

Dr. Marya's employment with the Defendant U.C.S.F'.'s hospital and medical school system was terminated in retaliation for, and as a consequence of viewpoint discrimination against her controversial but First Amendment- protected advocacy for Palestinian students, faculty and patients and for other protected and vulnerable classes, as specified in the Complaint. Defendants argue that the Complaint should be dismissed on two technicalities, that the harm it did her by issuing the 805 Report was so devastating and final it is not "redressable" for purposes of standing, and that she is precluded from seeking First Amendment relief in federal court because she did not bring a California state Section 11094.5 mandamus action.

**Argument**

**Point One**

**DR. MARYA'S FIRST AMENDMENT CLAIM IS REDRESSABLE BY PROSPECTIVE INJUNCTIVE RELIEF**

Contrary to Defendant's assertions, this Court may redress the harm to Dr. Marya by issuing a prospective injunction requiring withdrawal or cancellation of the letter of censure and the similarly impactful 805 Report. As Plaintiff asserts in her Second Amended Complaint, a letter of censure inserted in her supposedly confidential file would be viewed by all potential future employers in considering job offers to her, because based on the way things medical professional staffing decisions are made, every prospective employer would ask Dr. Marya to sign a release to view the file (Second Amended Complaint (SAC) Document #74

paragraphs 62-64, 74-80). An "805 report" is defined by California Business and Professional Code Section 805(b)(2), which states that notice is required to be given to a licensing body when "A licentiate's membership, staff privileges, or employment is terminated or revoked for a medical disciplinary cause or reason". Dr. Marya asserts that the 805 Report was false when filed, as she was not terminated for a "medical" reason (SAC paragraphs 66, 81-83). 805 Reports and letters of censure have been held to inflict harm sufficient to support standing and injunctive relief. An "805 report...adversely affected [a physician] in his efforts to obtain other employment and staff privileges at other hospital", *Johnson v Riverside Health Care Sys., L.P.*, 2005 US Dist LEXIS 51815, at *4 (CD Cal Sep. 7, 2005, No. ED CV 03-1392 RT (SGLx)) (assertions in complaint raised fact issues sufficient to defeat motion to dismiss); *Kelly v Hegseth,* 2026 US Dist LEXIS 29709, at *36 (DDC Feb. 12, 2026, No. 26-81 (RJL)) (" Senator Kelly has shown, through the Letter of Censure and the Retirement Grade Proceeding, that Defendants' actions have already violated and continue to violate [his] First Amendment rights"; injunction issued); cf.*Micilcavage v Connelie*, 570 F Supp 975, 976 (NDNY 1983) ("[F]ormal letter of censure…. placed in his permanent file" contributed to violation of state trooper's First Amendment rights under unconstitutionally vague regulation); (*Ancheta v Watada*, 135 F Supp 2d 1114, 1124 [D Haw 2001]) (Letter of "censure violated Plaintiff's First Amendment rights to free speech"); *Little v City of N. Miami*, 805 F2d 962, 966 (11th Cir 1986) (Law professor censured by city council; "Although a public censure is not as harsh a sanction as the historical 'pains and penalties' of imprisonment, banishment, punitive confiscation of property or a legislative enactment barring designated individuals or groups from participation in specified employments or vocations,' it is a recognized mode of punishment in certain circumstances"); (*Swilley v Alexander*, 629 F2d 1018, 1021, n 4 (5th Cir 1980) ("Although Swilley's employment was not terminated, it is quite possible for his

property interests to have been affected by both the public reprimand and the reprimand letter"; fact issue raised).

Defendants' arguments that the harm they inflicted on Dr. Marya is so extreme and final as not to be redressable asks this Court to resolve a disputed fact issue on a Rule 12(b) motion, which it cannot do. This Court should deny the motion to dismiss pending fact discovery, or, in the alternative order an evidentiary hearing on standing (Point Two).

Dr. Marya's First Amendment claim is redressable and she has standing to bring this action.

**Point Two**

**IN THE ALTERNATIVE, THIS COURT SHOULD EXERCISE DISCRETION TO GRANT AN EVIDENTIARY HEARING AS TO STANDING**

Defendant is inviting this Court to resolve disputed factual issues at the pleading stage, which is the only way this Court could conclude that Dr. Marya's claim is not redressable. Resolving disputed fact issues about the nature and impact of the 805 Report and Defendants' ability to cancel or revoke it is inviting this Court to err. . Under these circumstances, the Court should at most exercise discretion to order a live evidentiary hearing on Article III standing, *Hohlbein v Hospitality Ventures LLC*, 248 F App'x 804, 806 (9th Cir 2007) ("[T]he inference that Hohlbein lacks any intent to return to Carson City cannot be made against him on the current state of the record. We note, however, that because the evidentiary burden to demonstrate standing remains on Hohlbein, the district court may revisit the issue of standing in an evidentiary hearing or at trial, where the controverted facts must be supported adequately by the evidence adduced there").

This Court should order an evidentiary hearing rather than make a finding Dr. Maya lacks standing on this record.

**Point Three**

***DOE* IS NO LONGER GOOD LAW IN THE 9TH CIRCUIT; DR. MARYA WAS NOT REQUIRED TO EXHAUST REMEDIES BY BRINGING A CALIFORNIA MANDAMUS**

The Supreme Court has always been absolutely clear that exhaustion of remedies doctrines are inapplicable to Section 1983 claims. "§ 1983 contains no exhaustion requirement beyond what Congress has provided", *Heck v Humphrey*, 512 US 477, 483 (1994); *Knick v Twp. of Scott*, 588 US 180, 202 (2019) ("[B]ecause the violation is complete at the time of the taking, pursuit of a remedy in federal court need not await any subsequent state action");*Pakdel v City & County of San Francisco*, 594 US 474, 480 (2021) ("Whatever policy virtues this doctrine might have, administrative 'exhaustion of state remedies' is not a prerequisite...when the government has reached a conclusive position").

The Ninth Circuit, however, as it has now acknowledged, talked itself into a false position by holding for an exhaustion of remedies requirement under another name. As the Court stated in *Jamgotchian v Ferraro*, 93 F.4th 1150, 1156, 1160 (9th Cir 2024): "In seemingly imposing a judicial exhaustion requirement on a § 1983 plaintiff, *Doe* appears inconsistent with *Knick* and other authorities". The Court noted that "Such an exhaustion requirement springs an improper 'preclusion trap' for § 1983 plaintiffs….The upshot was that a... plaintiff could not go to federal court without going to state court first, but if he went to state court and lost, his claims would be barred in federal court by preclusion doctrines".

Contrary to Defendant's arguments, Dr. Marya was not required to file a 1094.5 petition as a prerequisite to this First Amendment action.

**Point Four**

**AMENDMENT OF THE COMPLAINT TO ALLEGE THE LATER-ISSUED 805 REPORT DID NOT DEPRIVE DR. MARYA OF STANDING**

A party lacking standing may rely on a later-occurring event, or even engage in an intentional later transaction, to cure standing problems, and then file an amended complaint or supplemental pleading, *Northstar Fin. Advisors, Inc. v Schwab Invs.*, 779 F3d 1036, 1047 (9th Cir 2015) ('Amended complaint contained jurisdictional allegations that were based on post-complaint events").

**Point Five**

**DR. MARYA PLAUSIBLY PLEADED THAT THE INDIVIDUAL DEFENDANTS WERE PERSONALLY INVOLVED IN THE CONSTITUTIONAL VIOLATION**

The SAC is replete with plausible, detailed assertions regarding each of the individual defendants, for example, "Over the course of 2025, UCSF acting via the individual defendants including Dr. Wachter and Mr. Hawgood continued to subject Dr. Marya to the ongoing campaign of harassment and retaliation, subjecting her to multiple rounds of baseless investigations and interviews. This campaign has included demanding that Dr. Marya respond to hundreds of pages of accusations with much of the material entirely blacked out so she can neither evaluate what she has been accused of or the credibility of any evidence alleged against her": (SAC paragraph 58); "On Saturday October 28, UCSF Executive Vice Chancellor Catherine Lucey called Dr. Marya on her day off work, interrogating Dr. Marya about her social media posts" (paragraph 32); "In January 2024, an official UCSF statement, was shared on social media by Defendants Won Ha, Lucey and Bob Wachter, which instead of defending Dr. Marya's First Amendment rights and academic freedom, maliciously framed her as a racist

and antisemite" (paragraph 72). Wachter is mentioned 11 times in the SAC and Lucey 13 times.

This more than surpasses the *Twombly/Iqbal* plausibility standard for asserting personal involvement by individual defendants. The line of cases cited by Defendants to the contrary is inapposite, because they are mainly summary judgment and not Rule 12 cases, mainly deal with prisoner actions, but they also generally support the proposition that the individual defendants were personally involved, *Lolli v County of Orange*, 351 F3d 410, 418 (9th Cir 2003) ("Sergeant Toledo's order to use the pepper spray against an allegedly compliant Lolli is sufficient involvement in the alleged unconstitutional violation such that summary judgment in his favor was inappropriate…. Sergeant Meyer admitted that he observed the deputies struggling with Lolli, but he did not become involved or give orders"); *Snow v McDaniel*, 681 F3d 978, 989 (9th Cir 2012) ("Through these orders and grievances, Snow has sufficiently demonstrated that Warden McDaniel and Associate Warden Endel were aware of his serious hip condition"); *Lemire v California Dept. of Corr. & Rehabilitation*, 726 F3d 1062, 1086 [9th Cir 2013]) ("[T]here is a triable issue of fact as to whether Sisto and Neuhring were deliberately indifferent to St. Jovite's safety and welfare when one or both decided to convene two back-to-back staff meetings resulting in a lack of supervision in Building 8 for a period of up to three and a half hours").

## CONCLUSION

The motion to dismiss should be denied.

**DATED: September 28, 2026**

*/s/ Jonathan Wallace*
JONATHAN WALLACE
Attorney for Defendant
Appearance Pro Hac Vice