THOMAS B. HARVEY (SBN 287198)
tbhlegal@proton.me
LAW OFFICES OF THOMAS B. HARVEY
365 E. Avenida de Los Arboles, #226
Thousand Oaks, California 91360
Telephone: (805) 768-4440

Attorney for Amici Curiae
Faisal Chaudhry, Mohammad Fadel, and Ramsi A. Woodcock

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

RUPA MARYA, M.D.,

Plaintiff,

v.

BOARD OF REGENTS OF THE UNIVERSITY OF CALIFORNIA; SAM HAWGOOD; CATHERINE LUCEY; ROBERT WACHTER; TRACEY TSUGAWA; BRIAN ALLDREDGE; WON HA; and DOES 1–20,

Defendants.

Case No. 3:25-cv-04716-MMC

**BRIEF OF AMICI CURIAE LAW PROFESSORS FAISAL CHAUDHRY, MOHAMMAD FADEL, AND RAMSI A. WOODCOCK IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

| | |
|---|---|
| Date: | October 30, 2026 |
| Time: | 9:00 a.m. |
| Courtroom: | 7, 19th Floor |
| Judge: | Hon. Maxine M. Chesney |

**INTEREST OF AMICI CURIAE**

Amici are three law professors who hold, and express in their teaching, scholarship, or public commentary, views supportive of Palestinian rights and critical of the State of Israel and of Zionism.[1] Professors Chaudhry and Woodcock teach at American public universities

[1] Amici are Faisal Chaudhry, Associate Professor of Law, University of Massachusetts School of Law; Mohammad Fadel, Professor of Law, University of Toronto Faculty of Law; and Ramsi A. Woodcock, Edward H. Metcalf Jr. Professor of Law, University of Kentucky J. David Rosenberg College of Law. Institutional affiliations are given for identification only. No party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund preparing or submitting it, and no person other than amici contributed money intended to fund preparing or submitting it. In the interest of full disclosure, amicus Woodcock is the plaintiff in *Woodcock v. Capilouto*, No. 5:25-cv-00424 (E.D. Ky. filed Nov. 13, 2025), a suit challenging his suspension by the University of Kentucky following his speech about Israel and Palestine.

and are subject to their disciplinary procedures. Professor Fadel teaches in Canada, but he was educated and has taught at American universities, is invited from time to time to lecture at them, including on Palestine, and may one day seek an appointment at one. All three amici write legal scholarship that is in dialogue with the work of American colleagues, including, in Professor Fadel's case, scholarship co-authored with American law professors, and that dialogue depends on those colleagues' freedom to say what they think. Amici therefore have an interest in the rules that determine whether a professor disciplined by a public university for protected speech may obtain review in federal court under 42 U.S.C. § 1983, as Congress provided, or must instead first pursue university grievance procedures and state mandamus proceedings.

## INTRODUCTION

Defendants ask the Court to hold that Dr. Marya forfeited federal review of her letter of censure because she did not invoke an optional university grievance procedure and then petition a state court for a writ of administrative mandate. Mot. (Dkt. No. 77) at 8:16–12:3. Federal law imposes no such requirement. A state university employee need not exhaust state administrative remedies before suing under § 1983. *Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982). The "judicial exhaustion" rule applied in *Doe v. Regents of the University of California*, 891 F.3d 1147 (9th Cir. 2018), exists only to prevent a plaintiff from evading the preclusive effect of an agency decision made in a judicial capacity. A censure imposed by letter, without any hearing, has no preclusive effect to evade. *See Jamgotchian v. Ferraro*, 93 F.4th 1150, 1154–57 (9th Cir. 2024). Amici also show that an order requiring defendants to withdraw the censure would redress a continuing injury. *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007).

## ISSUES TO BE DECIDED

Amici address two of the issues raised by the motion: (1) whether Dr. Marya's decision not to grieve her censure under the university's procedures or seek a writ of administrative mandate precludes her § 1983 challenge to it; and (2) whether an order

requiring defendants to withdraw the censure would redress an injury that existed when she filed suit.

## BACKGROUND

On April 28, 2025, the Chancellor of the University of California, San Francisco (UCSF) sent Dr. Marya a Notice of Intent to Impose Discipline proposing to dismiss her and to place a letter of censure in her academic personnel file for ten years "to express institutional rebuke" for her social media posts. SAC (Dkt. No. 74) ¶ 62. Her counsel responded in writing and requested review by the Academic Senate. *Id.* ¶ 63. On May 20, 2025, the Chancellor dismissed her and placed the letter in her file. *Id.* ¶ 64. No hearing was held. *Id.*; Mot. at 9:9. According to defendants, the Notice of Intent told Dr. Marya that she "could" grieve the censure under Academic Personnel Manual section 140, and that a failure to respond would be deemed acceptance of the proposed findings and sanctions. Mot. at 9:16–20. Dr. Marya filed this action on June 4, 2025. *Id.* at 4:20. The letter of censure remains in her file, where defendants placed it for ten years. SAC ¶¶ 64, 75, 80.

## ARGUMENT

### I. Dr. Marya Was Not Required to Grieve Her Censure or Seek a Writ of Mandate Before Suing Under § 1983.

#### A. Federal Law Imposes No Exhaustion Requirement on § 1983 Plaintiffs.

"[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." *Patsy*, 457 U.S. at 516. The plaintiff in *Patsy* was an employee of a state university, Florida International University, who alleged that it had denied her employment opportunities because of her race and sex. *Id.* at 498. The Court held that she could sue without first pursuing the university's administrative remedies. *Id.* at 516. And where an agency decision is not entitled to preclusive effect, requiring a § 1983 plaintiff to seek state-court review first "impose[s] an exhaustion-type requirement of the sort that contravenes Supreme Court precedent on § 1983." *Jamgotchian*, 93 F.4th at 1156.

Defendants' lead argument is an exhaustion requirement in all but name. They contend that Dr. Marya "forfeited her right to a hearing on the letter of censure" because she "did not request a hearing" under the university's grievance policy, and that she is therefore barred from challenging the censure here. Mot. at 9:13–10:12. But as the Court observed at the last hearing, the grievance policy is permissive: "It doesn't say you have to . . . . [I]t says that you may." Hr'g Tr. (Dkt. No. 73) at 7:4–7. A rule that a § 1983 plaintiff loses her federal claim by declining an optional administrative procedure is precisely the rule that *Patsy* rejected.

**B. Judicial Exhaustion Applies Only to Decisions Made in a Judicial Capacity, and the Censure Was Not.**

Unreviewed state agency decisions may preclude a later § 1983 suit, but only "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 797–98 (1986) (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). In this circuit, a federal court asks first whether the agency proceeding met those minimum requirements, and only then whether state law would give the decision preclusive effect. *Jamgotchian*, 93 F.4th at 1154. If the proceeding does not meet the federal minimums, "we deny preclusive effect, state law notwithstanding." *Id.*

Judicial exhaustion is a corollary of that preclusion rule, not a freestanding requirement. Because it "is a requirement for avoiding the preclusive effect of agency decisions, it logically is inapplicable where the agency decision would not be given preclusive effect in the first place." *Id.* at 1157. California law is the same. Judicial exhaustion applies only where the agency's "decision is of a sufficiently judicial character to support collateral estoppel." *Murray v. Alaska Airlines, Inc.*, 50 Cal. 4th 860, 867 (2010) (internal quotation marks omitted). The California Supreme Court has identified the "[i]ndicia of [administrative] proceedings undertaken in a judicial capacity" as "a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary

evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision." *Id.* at 867–68 (quoting *Pac. Lumber Co. v. State Water Res. Control Bd.*, 37 Cal. 4th 921, 944 (2006)).

The censure bears almost none of those marks. The Chancellor proposed it by letter, Dr. Marya's counsel responded by letter, and the Chancellor imposed it by letter. SAC ¶¶ 62–64; Mot. at 11:13–17. There was no hearing, no testimony, no witnesses, and no record. Defendants concede that "UCSF did not hold a hearing regarding the letter." Mot. at 9:9. A decision reached that way is not made "in a judicial capacity," *Elliott*, 478 U.S. at 797, and so has no preclusive effect for Dr. Marya to avoid by filing a writ petition.

**C. Defendants' Authorities Do Not Hold Otherwise.**

*Doe* does not support a different result. The student in *Doe* was suspended after an adjudicatory committee held two hearings, 891 F.3d at 1150, and the Ninth Circuit described the suspension as "the sort of 'adjudicatory, quasi-judicial decision' that is subject to the judicial exhaustion requirement," *id.* at 1155. *Doe* did not consider whether a decision reached without a hearing can preclude a later suit, and the Ninth Circuit has since explained that *Doe* "did not, and again could not, reject our case law recognizing that preclusion does not apply when the *Utah Construction* factors are not all met." *Jamgotchian*, 93 F.4th at 1161. The Ninth Circuit has also observed that *Doe*, insofar as it seemingly imposes a judicial exhaustion requirement on § 1983 plaintiffs, "appears inconsistent with *Knick* and other authorities," though it left that question for "another day." *Id.* at 1160. This Court need not reach that question either, because *Doe* by its terms reaches only adjudicatory decisions.

*Murray* is no different. The plaintiff there "voluntarily instituted an action against his former employer" under a federal whistleblower statute that gave him "an absolute right to a full de novo trial-like hearing," and then forfeited that hearing after receiving adverse findings. 50 Cal. 4th at 868–69. The court explained that judicial exhaustion "may arise when a party initiates and takes to decision an administrative process," and even then only if the resulting decision is "of a sufficiently judicial character." *Id.* at 867 (internal quotation marks omitted). Dr. Marya did not initiate the proceeding; the university brought it against her, and

she alleges that UCSF denied her request for a hearing. SAC ¶¶ 63–64. As the Court observed of *Murray* at the last hearing, "[t]hat is where the plaintiff started and didn't finish," but "[o]ur plaintiff didn't start." Hr'g Tr. at 9:20–25. And the decision the university reached was not judicial in character. Answering the university's notice of intent in writing did not turn the Chancellor's letter into an adjudication.

Defendants' remaining authorities address different questions. *Pomona College v. Superior Court*, 45 Cal. App. 4th 1716, 1729 (1996), concerns when a writ of administrative mandate is available in state court, but the availability of state review cannot cure the absence of a judicial-capacity proceeding at the agency level. *Jamgotchian*, 93 F.4th at 1160–61 ("[W]e have never suggested that state court review processes could always be a curative for any *Utah Construction* deficiencies that might exist at the agency level."). And *Knight v. South Orange Community College District*, 60 Cal. App. 5th 854, 858 (2021), on which defendants rely to show that the process was adequate, Mot. at 11:21–12:2, decided how much process a college must provide before placing a written reprimand in a student's record. It did not hold that a reprimand issued without a hearing has preclusive effect. The question under *Utah Construction* is not whether the university gave Dr. Marya as much process as due process requires, but whether it adjudicated anything in a judicial capacity. It did not.

## II. An Order Requiring Withdrawal of the Censure Would Redress a Continuing Injury.

Defendants argue that Dr. Marya lacks standing to seek prospective relief because she no longer works for UCSF and her injuries are past or merely reputational. Mot. at 12:4–14:2. The letter of censure, however, is not a past event. It is a record that defendants placed in Dr. Marya's personnel file on May 20, 2025, two weeks before she filed suit, and that they will keep there for ten years unless ordered to remove it. SAC ¶¶ 64, 75, 80. Dr. Marya alleges that prospective employers of physicians routinely require applicants to release their personnel files, so that the letter will be disclosed to prospective employers. *Id.* ¶¶ 76–79.

The Ninth Circuit has recognized that a disciplinary record maintained by a university is a continuing source of injury that an order of expungement redresses. "When a student's record contains negative information derived from allegedly unconstitutional school regulations, . . . that information may jeopardize the student's future employment or college career." *Flint*, 488 F.3d at 824. The court held that a former student's claim for expungement of a censure from university records remained live after he graduated, because expungement would be meaningful relief. *Id.* And it held that such an injunction is prospective relief that falls within *Ex parte Young*, because it serves "the purpose of preventing present and future harm." *Id.* at 825.

The same is true here. Dr. Marya's injury exists today and will exist for the next decade, and an order requiring defendants to withdraw the letter would end it. That injury existed when she filed suit, so defendants' argument that standing is measured at filing, Mot. at 7:8–21, does not affect her challenge to the censure. And the "lingering effects" on reputation that defendants invoke, *id.* at 13:22–26, are the residue of a completed act; the censure is a document that defendants continue to maintain and could remove.

## CONCLUSION

The Court should reject defendants' judicial-preclusion argument and hold that Dr. Marya has standing to seek withdrawal of the letter of censure.

Dated: October 12, 2026

Respectfully submitted,

/s/ Thomas B. Harvey
Thomas B. Harvey
LAW OFFICES OF THOMAS B. HARVEY

Attorney for Amici Curiae
Faisal Chaudhry, Mohammad Fadel,
and Ramsi A. Woodcock